UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MISH INT'L MONETARY INC., on behalf of itself and all others similarly situated, *v.* VEGA CAPITAL LONDON, LTD. and JOHN DOES 1-100 | : : : : : : : : : : x |

No.

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Mish International Monetary, Inc. ("Mish") complains, upon knowledge as to itself and its own acts set forth in paragraph 21 below, and upon information[1] and belief as to all other matters, as follows:

### SUMMARY OF ALLEGATIONS

1. On April 20, 2020, the price of the New York Mercantile Exchange ("NYMEX") West Texas Intermediate ("WTI") light sweet crude oil futures contract expiring in May 2020 traded at a **negative** price and settled at a price of **negative** -$37.63 a barrel.

2. This was the **first time in history** that any NYMEX WTI crude oil futures contract traded at a negative price. A negative price meant that **sellers** of NYMEX WTI crude oil futures had to **pay** other market participants to take oil off their hands.

3. The largest trading range on any day of the last three days of trading in a WTI light sweet crude oil futures contracts ("NYMEX WTI crude oil futures") from 2000-2019 was approximately $26.65 per barrel. The trading range on April 20, 2020 of approximately $58.17 a barrel corresponds to almost a **40 standard deviation event**.

---

[1] Plaintiffs' information includes prices for NYMEX WTI crude oil futures contracts, NYMEX rules, news articles, and other publicly available information.

4. **The WTI Crude Oil Futures Contract**. The CME Group, located in this District, owns and operates the NYMEX futures exchange. The NYMEX WTI crude oil futures contract is the world's largest-volume physically delivered futures contract and was utilized by Plaintiff and other persons and entities throughout the United States.

5. The price signals sent by NYMEX WTI crude oil futures trading are used to price and allocate oil and its refined products, including gasoline, among consumers and others. These price decisions are very important. They have a direct and immediate impact on the overall strength of the economy and the economic health of individual citizens.

6. Provided that these signals are the result of non-manipulated NYMEX WTI crude oil futures prices, economic theory holds that such signals will value, allocate and ration these energy resources more efficiently than commissars or other centralized planners in a command economy.

7. **Summary of Defendants' Manipulation.** Between at least April 20, 2020 and at least until April 21, 2020, Defendant Vega Capital London, Ltd. ("Vega Capital") and John Does 1-100 (collectively, "Defendants") acted to intentionally manipulate the prices of NYMEX crude oil futures contracts in violation of the Commodity Exchange Act, 7 U.S.C. §1 *et seq.* ("CEA"), and the Sherman Antitrust Act, 15 U.S.C. §1 *et seq.* ("Sherman Act").

8. On April 20, 2020, at least a dozen traders associated with Defendant Vega Capital worked together to aggressively sell May 2020 WTI futures contracts and other related instruments for the purpose of depressing the price (including the settlement price) of the May 2020 WTI futures contract. This concerted selling effort put downward pressure on the price of the May 2020 WTI futures contract.

9. Prior to the foregoing aggressive selling on April 20, 2020, numerous traders associated with Defendant Vega Capital purchased a large volume of Trading at Settlement ("TAS") contracts. These contracts gave Defendant Vega Capital the right to purchase May 2020 contracts at

2

a price that would later be determined by the settlement price of the May 2020 contract at the close of trading on April 20, 2020.

10. The lower the price of the May 2020 contract on April 20, the lower the price that Defendant Vega Capital's traders were obligated to pay to purchase the TAS contracts. In other words, Defendant Vega had a large financial incentive for the May 2020 contract to trade and ultimately settle at the lowest possible price on April 20, 2020.

11. Standard and rational practice among market participants is to seek to sell for the highest price available. However, pursuant to their manipulative scheme, Defendants repeatedly engaged in a highly unusual violation of this standard practice by seeking to uneconomically sell May 2020 WTI crude oil futures contracts at the lowest possible price so as to register the lowest possible prices and settlement price for the May 2020 contract.

12. The financial press has reported that Defendant Vega Capital's trading on April 20, 2020 profited by as much as $500 million. Because commodity futures trading is a "zero-sum game," this means that other participants **lost** as much as $500 million on April 20, 2020.

13. **Effects.** The price action of the May 2020 contract on April 20, 2020 was highly unusual in multiple respects. On April 20, 2020, the price of May 2020 WTI crude oil futures contract (a) declined approximately $55.90 per barrel from the previous trading day's settlement price; (b) traded at negative prices for the first time in history of the NYMEX, including as low as negative -$40 a barrel; (c) declined more than $25 a barrel during the last two minutes of trading; and (d) exhibited a trading range of $58.17 a barrel, which was a 40 standard deviation event.

14. On April 21, 2020, the last trading day for the May 2020 contract, the May 2020 contract closed at $10.01 a barrel, *i.e.*, a more than $47 a barrel increase from the prior day's settlement price on April 20, 2020.

15. As a direct and foreseeable result of Defendants' manipulation, Plaintiff and members of the Class (*see* below) transacted in May 2020 NYMEX WTI crude oil futures contracts at artificial prices and were deprived of a lawful market.

## JURISDICTION AND VENUE

16. WTI crude oil is a "commodity" and is the "commodity underlying" the WTI crude oil futures contracts traded on the NYMEX, as those terms are defined and used in Sections 1a(4) and 22 of the CEA, 7 U.S.C. §§ 1a(4) and 25(a)(1)(D), respectively.

17. The Court has subject matter jurisdiction over this action pursuant to 7 U.S.C. §25, Section 4 of the Clayton Act, 15 U.S.C. §15 and 28 U.S.C. §§1331 and 1337.

18. The Court has personal jurisdiction over Defendants pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22. Defendants transact business in this District, including by placing trades in NYMEX WTI crude oil futures contracts.

19. Venue is proper in the Northern District of Illinois pursuant to 7 U.S.C. §25(c), 15 U.S.C. §22 and 28 U.S.C. §1391(b), (c), and (d). The CME Group's global headquarters are located in this District at 20 South Wacker Drive, Chicago, Illinois 60606. The NYMEX WTI crude oil futures contracts trade on the CME Group's electronic trading platforms Globex and ClearPort. The CME Group's electronic Globex trading platform is housed approximately thirty-five miles from the CME Group's headquarters in Aurora, Illinois. The claims arose in the Northern District of Illinois and/or a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Illinois.

20. Defendants made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails in connection with the unlawful acts and practices and courses of business alleged in this complaint.

## THE PARTIES

4

21. Plaintiff Mish International Monetary, Inc. is California corporation with its principal place of business in Menlo Park, California. On the afternoon of April 20, 2020, Plaintiff Mish sold ten (10) May 2020 NYMEX WTI crude oil futures contracts at negative prices in order to liquidate a long position in such contract. Plaintiff Mish incurred a net loss of approximately $92,490 in connection with the foregoing transaction. Plaintiff Mish transacted at the artificial prices caused by Defendants' manipulation alleged herein, which caused or contributed to his net losses, and is entitled to recover his actual damages.

22. Defendant Vega Capital London, Ltd. is a corporation organized and existing under the laws of the United Kingdom, incorporated on May 13, 2016 with a registered office in Essex, England and a principal place of business in London, England. Mr. Adrian Spires is the company's sole director. Defendant Vega Capital's traders shared a trading account held in the name "Vega Capital London Ltd."

23. John Doe Defendants 1-100 are persons or entities who worked with Defendants or on whose behalf Defendant Vega Capital worked to manipulate and fix prices of NYMEX crude oil futures contracts.

## BACKGROUND

**The Commodity Futures Market**

24. A person may act as a futures contract exchange or board of trade only if that person is approved and designated to do so by the Commodity Futures Trading Commission ("CFTC"). The CFTC approves such a designation only if the proposed exchange sufficiently demonstrates (a) that it has rules, such as position limit rules, to prevent price manipulation, and (b) that it has procedures to enforce such anti-manipulation rules.

25. The NYMEX is designated by the CFTC as a board of trade. NYMEX is the world's largest physical commodity futures exchange.

5

26. The NYMEX applies to the CFTC for permission to trade each commodity in which the NYMEX offers a contract. The NYMEX must establish, among other things, that the proposed contract is not prone to price manipulation in order to win approval to trade such contract. NYMEX members and clearing members have to follow the rules of the NYMEX. This includes the most important rules, the rules prohibiting manipulation.

27. Also, commodity futures professionals licensed as associated persons, futures commissions merchants, commodity trading advisors, and commodity pool operators are required to be familiar with CFTC and exchange requirements. This includes the most important requirements, those prohibiting price manipulation.

28. A commodity futures contract is an agreement to buy or sell a commodity, such as WTI, at a date in the future. Every aspect of a futures contract traded on the NYMEX – including the contract for crude oil – is standardized, except the price and quantity. Futures markets are specifically designed to facilitate and ease trading in one central market place for traders who are located throughout the United States and the world.

29. Futures contracts have two sides. The "long" side is the buyer of the contract who is obligated to take delivery and pay for the commodity if the buyer holds the contract until the specified delivery date. Buyers are referred to as "longs." The "short" side is the seller of the contract who is obligated to make delivery of the commodity on the delivery date. Sellers are referred to as "shorts."

30. One of the many differences between stock and commodity futures trading is that the commodity exchange (here, the NYMEX) publishes the amount of the open interest of "longs" and "shorts" at the end of each trading day.

31. Open interest is defined as the total number of futures contracts in a delivery month or market that has been entered into and not yet offset or cancelled. Each open transaction has a

6

buyer (a long) and a seller (a short). The open interest in commodity futures contracts tend to fluctuate from day to day.

32. As a general rule, buying pressure in a commodity futures contract (or the commodity underlying such contract) will increase prices and selling pressure will decrease prices.

33. Because the prices are publicly reported, the increased or decreased prices resulting from buying pressure or selling pressure may encourage others to act accordingly. For example, selling pressure may decrease prices and induce members of the public to sell as well.

**NYMEX WTI Crude Oil Futures**

34. One of the futures contracts created by the NYMEX and approved by the CFTC is the NYMEX light sweet crude oil (WTI) futures contract.

35. NYMEX light sweet crude oil (WTI) futures contracts are transacted electronically on the Chicago Mercantile Exchange ("CME") Globex and CME ClearPort trading platforms. Globex is an electronic trading platform owned by the NYMEX's parent company, the CME Group.

36. The size of a NYMEX WTI crude oil futures contract is 1,000 barrels.

37. The NYMEX WTI crude oil futures contracts call for settlement by physical delivery at a variety of pipelines or storage facilities in or around Cushing, Oklahoma.

38. During each calendar month, the NYMEX will make available for trading contracts that provide for delivery of WTI crude oil in consecutive months for the current year, the next ten calendar years and two additional contract months.

39. Trading in NYMEX WTI crude oil futures contracts terminates on the third business day prior to the twenty-fifth calendar day of the month preceding the delivery month. If the twenty-fifth calendar day is not a business day, trading terminates four business days prior to the twenty-fifth calendar day of the month prior to the contract month.

40. Daily settlement prices of NYMEX WTI crude oil futures are settled at the volume-weighted average price ("VWAP") of trades occurring on Globex between 2:28 and 2:30 p.m. eastern time. The settlement price for the active month contract is determined by trades in the active month and trades in other contract expirations are determined by calendar spread transactions.

41. Trading in NYMEX WTI crude oil futures contracts is subject to the rules and regulations of the NYMEX and prices are quoted in U.S. dollars and cents per barrel.

42. **Trading at Settlement**. Trading at settlement (or "TAS") is when a market participant agrees to purchase or sell a NYMEX WTI futures contract at a price that is to be determined by the end of day settlement price of a particular NYMEX WTI futures contract.

**WTI Crude Oil and Cushing, Oklahoma**

43. The crude oil marketing hub in Cushing, Oklahoma is the most significant marketing and trading hub for crude oil in North America. Cushing serves as the delivery point for light sweet crude oil futures contracts traded on the NYMEX.

44. WTI crude oil is one of the most actively traded domestic crude oils, operates as the United States benchmark grade and is the primary deliverable grade under the NYMEX WTI crude oil futures contracts.

**SUBSTANTIVE ALLEGATIONS**

45. On April 20, 2020, at least a dozen traders associated with Defendant Vega Capital worked together to aggressively sell May 2020 WTI futures contracts and other related instruments for the purpose of depressing the price (including the settlement price) of the May 2020 WTI futures contract. This concerted selling effort put downward pressure on the price of the May 2020 WTI futures contract.

8

46. Prior to the foregoing aggressive selling on April 20, 2020, numerous traders associated with Defendant Vega Capital purchased a large volume of Trading at Settlement ("TAS") contracts. These contracts gave Defendant Vega Capital the right to purchase May 2020 contracts at a price that would later be determined by the settlement price of the May 2020 contract at the close of trading on April 20, 2020.

47. The lower the settlement price of the May 2020 contract on April 20, the lower the price that Defendant Vega Capital's traders were obligated to pay to purchase those contracts. In other words, Defendant Vega had a large financial incentive for the May 2020 contract to settle at the lowest possible price on April 20, 2020.

48. Standard and rational practice among market participants is to seek to sell for the highest price available. However, pursuant to their manipulative scheme, Defendants repeatedly engaged in a highly unusual violation of this standard practice by seeking to uneconomically sell May 2020 WTI crude oil futures contracts at the lowest possible price so as to register the lowest possible settlement price for the May 2020 contract.

49. Although Defendants' conduct was highly uneconomic (absent manipulation), it was precisely the type of conduct that would allow Defendants to reap supra-competitive profits on their large TAS contracts that were to be determined by the May 2020 contract's settlement price. The financial press has reported that Defendant Vega Capital's trading on April 20, 2020 profited by as much as $500 million.

50. The price action of the May 2020 contract on April 20, 2020 was highly unusual. On April 20, 2020, the price of May 2020 WTI crude oil futures contract (a) declined approximately $55.90 per barrel from the previous trading day's settlement price, (b) traded at negative prices for the first time in history of the NYMEX, including as low as negative -$40 a barrel; (c) declined more

9

than $25 a barrel during the last two minutes of trading; and (d) exhibited a trading range of $58.17 a barrel, which was a 40 standard deviation event.

51. On April 21, 2020, the last trading day for the May 2020 contract, the May 2020 contract closed at $10.01 a barrel, *i.e.*, a more than $47 a barrel increase from the settlement price on April 20, 2020. There are no fundamental supply or demand factors that can explain the foregoing highly unusual price movements.

## CLASS ALLEGATIONS

52. Plaintiff brings this action on behalf of itself, and all others similarly situated, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and entities that purchased and/or sold during the period from at least April 20, 2020 through at least April 21, 2020 a May 2020 light sweet crude oil (WTI) futures contract traded on the NYMEX. Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates and all federal governmental entities.[2]

53. The Class is so numerous that joinder of all members is impracticable. Due to the nature of the commerce involved, the members of the Class are geographically dispersed throughout the United States. Plaintiff believes there are hundreds of members of the Class.

54. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether Defendants manipulated NYMEX WTI crude oil futures contracts in violation of the CEA;

---

[2] Plaintiff reserves the right to amend the definition of the Class in the class motion or otherwise.

    b. Whether Defendants combined, conspired, and agreed to manipulate and fix the prices of NYMEX WTI crude oil futures contracts in violation of the Sherman Act;

    c. whether such manipulation caused NYMEX WTI crude oil futures contracts to be artificial;

    d. whether such manipulation caused cognizable legal injury under the CEA;

    e. whether such injury or the extent of such artificiality may be established by common, class-wide means, including, for example, by regression analysis, econometric formula, or other economic tests; and

    f. the operative time period and extent of Defendants' foregoing violations.

55. Plaintiff's claims are typical of the claims of the other members of the Class he seeks to represent. Plaintiff and members of the Class all sustained damages arising out of Defendant's same course of unlawful conduct alleged herein.

56. Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel experienced in complex commodity futures manipulation and antitrust class actions. Plaintiff has no interests that are adverse to or in conflict with other members of the Class.

57. The questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members.

58. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would also create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial

11

economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated. It would do so without sacrificing procedural fairness or bringing about other undesirable results.

59. The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. Plaintiff anticipates no difficulty in the management of this action as a class action.

## INJURY TO PLAINTIFF AND CLASS MEMBERS

60. During the Class Period, Plaintiff and Class members transacted in WTI crude oil futures contracts at artificial prices and were deprived of a lawfully operating market.

61. Further, by reason of the alleged violations of the CEA and Sherman Act, Plaintiff and Class members paid prices that were not what they would have paid in the absence of the extensive unlawful conduct alleged herein. As a result, Plaintiff and Class members have suffered a legally cognizable injury due to Defendants' alleged violations of the CEA and Sherman Act.

62. Defendants' manipulation caused fluctuating amounts of artificiality in the prices of NYMEX WTI crude oil futures contracts beginning at least as early as April 20, 2020 and continuing until at least until April 21, 2020.

63. The specific amounts of actual damages under the CEA and damages under the Sherman Act have not yet been determined because such determination will require discovery of the conduct of Defendants, the NYMEX, and other non-parties.

## AS AND FOR A FIRST CLAIM
## AGAINST ALL DEFENDANTS
**(Manipulation In Violation Of The Commodity Exchange Act 7 U.S.C. §1 *et seq.*)**

64. Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

65. Plaintiff and members of the Class purchased and/or sold one or more NYMEX WTI crude oil futures contracts during the Class Period and were injured as a result of Defendants' manipulation of the prices of those contracts in violation of the CEA, 7 U.S.C. §1 *et seq.*

66. Defendants' conduct and trading activity alleged herein constituted a manipulation of NYMEX WTI crude oil futures contract prices in violation of Sections 9(a) and 22(a) of the CEA, 7 U.S.C. §§ 13(a), 25(a).

67. As result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered actual damages due to artificial prices to which they would not have been subject but for the unlawful conduct of Defendants as alleged herein.

68. Plaintiff and members of the Class are each entitled to damages for the violations of the CEA alleged herein.

## AS AND FOR A SECOND CLAIM
## <u>AGAINST ALL DEFENDANTS</u>
### (Manipulation In Violation of the Commodity Exchange Act,
### 7 U.S.C. §§1, *et seq.* and Regulation 180.1(a))

69. Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

70. Defendants intended to affect or acted recklessly with regards to affecting the prices of the May 2020 NYMEX WTI crude oil futures contract and engaged in overt acts in furtherance of such intent.

71. By the foregoing conduct, Defendants intentionally or recklessly used or employed a manipulative device or artifice to defraud and engaged in any act, practice or course of business which operated or would operate as a fraud or deceit upon any person, in violation of the 6(c)(1) of

the CEA, as amended, codified at 7 U.S.C. §9, and Section 22 of the CEA, as amended, 7 U.S.C. §25, and Regulation 180.1, 17 C.F.R. §180.1.

72. Defendants' conduct proximately caused injury to Plaintiff and other members of the Class who transacted in an artificial and manipulated market at manipulated prices during the Class Period.

73. Plaintiff and members of the Class are each entitled to damages for the violations of the CEA alleged herein.

**AS AND FOR A THIRD CLAIM**

**<u>AGAINST ALL DEFENDANTS</u>**

**(Principal-Agent Liability In Violation Of The Commodity Exchange Act**

**7 U.S.C. §1 *et seq.*)**

74. Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

75. Traders associated with Defendant Vega Capital acted on behalf of and as agents for Defendants Vega Capital and, as agents or other persons acting on its behalf, engaged in the manipulative scheme alleged herein on its behalf and with its authorization.

76. Under Section 2(a)(1)(B) of the CEA, 7 U.S.C. §2(a)(1)(B) Defendant Vega Capital is liable for the acts of its agents.

77. Plaintiff and members of the Class are each entitled to damages for the violations of the CEA alleged herein.

**AS AND FOR A FOURTH CLAIM**

**<u>AGAINST ALL DEFENDANTS</u>**

**(Aiding and Abetting Liability In Violation Of The Commodity Exchange Act**

**7 U.S.C. §1 *et seq.*)**

78. Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

79. Defendants each played their component role and each knowingly aided, abetted, counseled, induced, and/or procured the violations of the CEA alleged herein.

80. Under Section 13c(a) of the CEA, 7 U.S.C. §13, Defendants are liable for willfully intending to assist the manipulation.

81. Plaintiff and members of the Class are each entitled to damages for the violations of the CEA alleged herein.

## AS AND FOR A FIFTH CLAIM
## AGAINST ALL DEFENDANTS
### (Violation Of The Section 1 of the Sherman Antitrust Act
### 15 U.S.C. §1 *et seq.*)

82. Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

83. Defendants combined, conspired, and agreed to manipulate and fix NYMEX WTI crude oil futures prices during at least the Class Period.

84. Defendants' conspiracy to fix and manipulate prices was spectacularly successful and allowed Defendants to profit from their violation of Section 1 of the Sherman Act.

85. Defendants used the instrumentalities of interstate commerce and adversely affected trade and commerce through their conspiracy and effects on prices.

86. As a direct and proximate result of Defendants' violation of Section 1 of the Sherman Act, Plaintiff and members of the Class suffered damages in their property including, but not limited to, by having to transact at the artificial and fixed prices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. for a declaratory judgment that Defendants manipulated NYMEX WTI crude oil futures prices in violation of the CEA;

B. for a declaratory judgment that Defendant Vega Capital is liable for the acts of their agents pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. §2(a)(1)(B);

C. for a declaratory judgment that Defendants aided and abetted the manipulation alleged herein in violation of Section 13c(a) of the CEA, 7 U.S.C. Section 13;

D. for a declaratory judgment that Defendants combined, conspired and agreed to manipulate and fix prices of NYMEX WTI crude oil futures contracts in violation of Section 1 of the Sherman Act;

E. for an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designating Plaintiff as the Class representative and his counsel as Class counsel;

F. for a judgment awarding Plaintiff and the Class damages against Defendants for their violations of the CEA, together with prejudgment interest at the maximum rate allowable by law;

G. for an award to Plaintiff and the Class for their costs of suit, including reasonable attorneys' fees and expert fees and expenses; and

H. for such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Dated: August 4, 2020
      Chicago, Illinois

                              Respectfully submitted,

                              */s/ Marvin A. Miller*
                              Marvin A. Miller
                              Andy Szot
                              **MILLER LAW LLC**
                              115 S. LaSalle Street, Suite 2910

Chicago, Illinois 60603
Telephone: (312) 332.3400

Christopher Lovell
Christopher M. McGrath
**LOVELL STEWART HALEBIAN JACOBSON LLP**
500 Fifth Avenue, Suite 2440
New York, New York 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4775

*Counsel for Plaintiff*

17