## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

MISH INTERNATIONAL MONETARY INC., on behalf of itself and all others similarly situated,

*Plaintiff*,

v.

VEGA CAPITAL LONDON, LTD., ██████
████████████████████████████
██████████████████████████████
█████████████████████████████
███████████████████ JOHN DOES 17-100,

*Defendants.*

Case No. 1:20-cv-04577

## AMENDED CLASS ACTION COMPLAINT

**Table of Contents**

I.   **SUMMARY OF ALLEGATIONS**

II.  **JURISDICTION AND VENUE**

III. **PARTIES**

    **A.** Plaintiff

    **B.** Defendants

    ██ ████████████████████████

V.   **BACKGROUND**

    **A.**   **Commodity Futures; How Futures Contract Trading Profits Or Losses Are Determined Using The May Contract As An Example.**
    **B.**   **The WTI Contract**
    **C.**   **Buying Pressure, Selling Pressure, Cumulative Net Sales And Cumulative Selling Pressure**
    ██ ████████████████████████████
        ██████████████████████████
        █████████████████████████

VI.  **UNDERLYING ALLEGATIONS**

    ██ ██████████████████
    ██ ███████████████████████████
        ██████████████
    ██ ████████████████████████
    ██ ██████████████████████████████
        ████████████
    ██ █████████████████████████████
    ██ █████████████████████████████████
        ████████
    ██ ████████████████████████████████
        ████████████████

VII. **CLASS ALLEGATIONS**

VIII. **INJURY TO PLAINTIFF AND CLASS MEMBERS**

IX.  **CLAIMS**

X.   **PRAYER FOR RELIEF**



**Errata**

| Paragraph | Change |
|---|---|
| passim | Generate Table of Contents and make conforming changes in text to headings |
| Passim | Corrected internal citations |
| Passim | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ |
| Passim | ▆▆▆▆▆▆▆▆▆▆▆▆ |
| Paragraph 2 | ▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆ |
| Paragraph 27 | ▆▆▆▆▆▆▆▆ |
| Paragraph 36 | ▆▆▆▆▆▆▆ |
| Paragraph 39 | ▆▆▆▆▆▆▆ |
| Paragraph 43 | ▆▆▆▆▆▆▆ |
| Paragraph 56 and 58 | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆ |
|  | ▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆ |
| Paragraph 94 | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆ |
| Paragraph 115 | ▆▆▆▆▆▆▆▆▆ |
| Paragraph 141 | ▆▆▆▆▆▆▆▆ |
| Paragraph 146 | ▆▆▆▆▆▆▆▆▆▆▆ |
| Paragraph 147 | ▆▆▆▆▆▆ |
| Paragraph 153 | ▆▆▆▆ |
| Paragraph 157-158 | ▆▆▆▆▆▆ |
| Paragraph 162 | ▆▆▆▆▆ |
| Paragraph 167 | ▆▆▆▆▆ |
| Paragraph 168 | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ |
| Paragraph 171 | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆ |
| Paragraph 175 | ▆▆▆▆▆▆ |
| Paragraph 178 | ▆▆▆▆▆▆▆▆▆▆ |
| Paragraph 183, 185 | ▆▆▆▆▆ |
| 184 | ▆▆▆▆▆▆ |
| Paragraph 196 | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ |
| Paragraph 199-203 | ▆▆▆▆▆▆▆▆ |
| Between 203 and 204 | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ |
| Paragraph 205 | ▆▆▆▆ |
| Paragraph 206 | ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ |
| Paragraph 207 | ▆▆▆▆ |

| | |
|---|---|
| Paragraph 209 | ███████████████████████ |
| Paragraph 218 | ████ |
| Paragraph 220 | █████ |
| Paragraph 221 | █████████████ |
| Paragraph 229 | ██████ |
| Paragraph 252 | ███████ |

Plaintiff complains[1] of Defendants as follows:

## I. SUMMARY OF ALLEGATIONS





## II. JURISDICTION AND VENUE

18. The CME Group's global headquarters are located in this District at 20 South Wacker Drive, Chicago, Illinois 60606. The May Contracts traded on the CME Group's electronic trading platforms Globex and ClearPort. The CME Group's electronic Globex trading platform is housed approximately thirty-five miles from the CME Group's headquarters in Aurora, Illinois. All May Contract transactions, including Plaintiff's and Defendants' May Contract transactions, were entered and executed in this District.

19.     WTI crude oil is a "commodity" and is the "commodity underlying" the WTI crude oil futures contracts traded on the CME Globex, as those terms are defined and used in Sections 1a(4) and 22 of the CEA, 7 U.S.C. §§ 1a(4) and 25(a)(1)(D), respectively.

20.     Defendants made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails in connection with the unlawful acts and practices and courses of business alleged in this complaint.

21.     The Court has subject matter jurisdiction over this action pursuant to 7 U.S.C. §25, Section 4 of the Clayton Act, 15 U.S.C. §15 and 28 U.S.C. §§1331 and 1337.

22.     The Court has personal jurisdiction over Defendants pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22.  Defendants have minimum contacts with the United States, transacting business in this District, including by electronically placing trades in NYMEX WTI crude oil futures contracts on the Chicago Mercantile Exchange ("CME") Globex and CME ClearPort trading platforms.

23.     General venue is proper in the Northern District of Illinois pursuant to 7 U.S.C. §25(c), 15 U.S.C. §22 and 28 U.S.C. §1391(b), (c), and (d).

24.     The Court also has personal jurisdiction over Defendants and venue is proper pursuant to Section 22 of Commodity Exchange Act, 7 U.S.C. § 22. Defendants transact business in this judicial district and the CEA violations occurred in this District.



███  ███████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████

28.     The ICE has a colocation data center in this District as well as in Mahwah, New Jersey and Basildon, United Kingdom. https://www.theice.com/connectivity-and-feeds/icecolocation

### III.     PARTIES

#### A.  Plaintiff

29.     Plaintiff Mish International Monetary, Inc. is a California corporation with its principal place of business in Menlo Park, California. On the afternoon of April 20, 2020, Plaintiff Mish sold, through his brokers located in this District, ten (10) May Contracts at negative prices in order to liquidate a long position in such contract. Plaintiff Mish incurred a net loss of approximately $92,490 in connection with the foregoing transactions executed in this District. Plaintiff sold at the artificially low May Contract prices registered which occurred in this District due to Defendants' manipulative impact on the trading executed and the order book maintained for May Contracts in this District. As alleged hereafter, Plaintiff is entitled to recover damages from Defendants, including actual damages, treble damages and other relief.

#### B.  Defendants

███     Defendant Vega Capital London, Ltd. ("Vega") is a corporation organized and existing under the laws of the United Kingdom, incorporated on May 13, 2016, with a registered office in Essex, England and a principal place of business in London, England. ███████████████

███████████████████████████████████████████



















## V. BACKGROUND

**A.    Commodity Futures; How Futures Contract Trading Profits Or Losses Are Determined Using The May Contract As An Example.**

70.    A person may act as a futures contract exchange or board of trade only if that person is approved and designated to do so by the Commodity Futures Trading Commission.  The CFTC approves such a designation only if the proposed exchange sufficiently demonstrates (a) that it has rules, such as position limit rules, to prevent price manipulation, and (b) that it has procedures to enforce such anti-manipulation rules.

71.    The NYMEX is designated by the CFTC as a board of trade.  NYMEX is the world's largest physical commodity futures exchange. The NYMEX applies to the CFTC for permission to trade each commodity in which the NYMEX offers a contract.  The NYMEX must establish, among other things, that the proposed contract is not prone to price manipulation in order to win approval to trade such contract.  NYMEX members and clearing members have to follow the rules of the NYMEX.  This includes the most important rules, the rules prohibiting manipulation.

72.     Also, commodity futures professionals licensed as associated persons, futures commissions merchants, commodity trading advisors, and commodity pool operators are required to be familiar with CFTC and exchange requirements.  This includes the most important requirements, those prohibiting price manipulation.

73.     A commodity futures contract is an agreement to buy or sell a commodity, such as WTI, at a date in the future.  Futures contracts are bilateral contracts with two sides.  The "long" side is the buyer of the contract. The buyer is obligated to take delivery and pay for the commodity if the buyer holds the contract until the specified delivery dates.  Buyers are referred to as "longs." The "short" side of the futures contract is the seller of the contract. The seller is obligated to make delivery of the commodity on the delivery dates.  Sellers are referred to as "shorts."

74.     Almost every aspect of a futures contract is standardized, except the price and quantity.  Futures markets are specifically designed to facilitate and ease trading in one central marketplace for traders who are located throughout the United States and the world.

75.     In practice, very few deliveries occur and most futures contracts are satisfied or "liquidated" in the trading market. For example, significantly less than 1% of all WTI futures contracts traded result in deliveries. Well over 99% of the WTI futures contracts which are traded are satisfied through liquidation trading.

76.     In order to satisfy a futures contract through trading in the futures market, a trader who holds a long position of one contract **sells** one contract. That creates one long position and one short position in such futures contract for the trader. These offsetting positions cancel out or liquidate the trader's obligations to purchase a commodity and make delivery of a commodity under the contracts. Likewise, a trader who holds a short position of one contract **buys** one contract in order to trade out of the position. This, again, creates one long position and one short position for

such trader. And this, again, cancels and liquidates the trader's original obligation to deliver the commodity by creating a separate obligation to purchase the commodity.

77.     The difference between the price at which a trader buys the contract and the price at which the trader sells the contract establishes the profit or loss on the contract.

78.     For example, suppose a trader sold one May Contract to establish a short position. Suppose the trader purchased back such May Contract later on the same day. Suppose that the sales price was $2.50 per barrel. Suppose that the purchase price was minus $37.50 per barrel. In this example, the profit (exclusive of trading commissions) would be $40.00 per barrel. Each May Contract consists of 1,000 barrels of WTI crude oil.  The profit on that one contract (exclusive of commissions) would be $40,000.00.

79.     Open interest is defined as the total number of futures contracts in a delivery month or market that has been entered into and not yet offset or cancelled.  Each open transaction has a buyer (a long) and a seller (a short).  The open interest in commodity futures contracts tends to fluctuate from day to day. The open interest and trading volumes in a futures contract begin to decrease very substantially during the last month of trading in a futures contract. As such contract approaches its final expiration date and all trading must cease, the last few days of trading the volume and open interest continue to their lowest levels.

**B.      The WTI Contract**

80.     One of the futures contracts traded on the CME is the light sweet crude oil (WTI) futures contract. The size of a WTI crude oil futures contract is 1,000 barrels. The WTI crude oil futures contracts call for settlement by physical delivery at a variety of pipelines or storage facilities in or around Cushing, Oklahoma.

81.     Pursuant to NYMEX and CME rules, trading is conducted in WTI futures contracts expiring in each calendar month from the current month and continuing for the next ten calendar

years plus two additional contract months. Trading in WTI crude oil futures contracts terminates on the third business day prior to the twenty-fifth calendar day of the month preceding the delivery month. If the twenty-fifth calendar day is not a business day, trading terminates four business days prior to the twenty-fifth calendar day of the month prior to the contract month.

82.    Daily settlement prices of WTI crude oil futures are settled at the volume-weighted average price ("VWAP") of trades occurring on CME Globex between 1:28 and 1:30 p.m. Midwest time. The settlement price for the active month contract is determined by trades in the active month and trades in other contract expirations are determined by calendar spread transactions.

83.    Trading in WTI crude oil futures contracts is subject to the rules and regulations of the NYMEX and CME, and prices are quoted in U.S. dollars and cents per barrel.

84.    The crude oil marketing hub in Cushing, Oklahoma is the most significant marketing and trading hub for crude oil in North America. Cushing serves as the delivery point for light sweet crude oil futures contracts traded on the CME.

85.    WTI crude oil is one of the most actively traded domestic crude oils, operates as the United States benchmark grade and is the primary deliverable grade under the WTI crude oil futures contracts.

86.    Like other commodity futures contracts which call for physical delivery, the open interest (see ¶79) and the daily trading volume in a WTI futures contract tend to decline dramatically as the last days of trading and the beginning of deliveries approach.

87.    In Trading at Settlement (or "TAS") for WTI contracts, a market participant agrees to purchase or sell a WTI futures contract at a price that is to be determined by the end of day settlement price of a particular WTI futures contract.

88.    Trade at Settlement is a capability that allows a commodities trader to execute an order to buy or sell an eligible futures contract at the settlement price or at a spread to the settlement

price. The spread may be at a price up to a specified number of ticks (minimum price fluctuations) above or below the settlement price for that particular type of commodity contract. See e.g., www.theice.com/publicdocs/futures_us/TAS_FAQ.pdf

89.     Similarly, traders who buy TAS contacts as they sell May Contracts have a motive to depress prices in order to make the prices approaching and at the end of the day as low as possible. Again, the cost band for TAS contracts is from minus ten cents to plus ten cents on the outright contracts, and minus twenty cents to plus twenty cents on the spreads. The NYMEX Rulebook provides: "Unless otherwise specified by the Exchange, a TAS transaction may be executed at the current day's settlement price or at any valid price increment ten ticks higher or lower than the settlement price." Chapter 5, Section 524.A.3 (TAS Transactions), available at:

https://www.cmegroup.com/content/dam/cmegroup/rulebook/NYMEX/1/5.pdf

90.     There are separate bids and offers for TAS contracts than for WTI contracts. TAS contracts are bought and sold at a price differential from the daily settlement price, so the final price of the TAS contract is the settlement plus or minus a premium or discount. The allowable price increments and differential are defined by NYMEX. See *Interim Staff Report; Trading in NYMEX WTI Crude Oil Futures Contract Leading up to, on, and around April 20, 2020* (CFTC Nov. 23, 2020). In the TAS contract market, the price may range ten ticks higher or lower than the settlement price. NYMEX Rule 524.

91.     TAS contracts may serve valuable functions in physical delivery markets, including by allowing institutions and others to pay a small sum in order to lock in a trade at the settlement price determined between 1:28 and 1:30 pm Chicago time for a given WTI contract. However, even in well-designed and well-regulated futures contracts such as the WTI futures contract, the use of TAS contracts is subject to abuse when certain constraints exist in the market.   See ¶¶107-112 below.

92.     As recently stated by CFTC Commissioner Dan Berkovitz on November 24, 2020:
"The potential for TAS trading to artificially affect the settlement price of a contract is well known;
indeed, the CFTC has brought two enforcement cases based on the use of TAS to manipulate the
price of futures contracts." See
https://www.cftc.gov/PressRoom/SpeechesTestimony/berkovitzstatement112320a. Commissioner
Berkovitz also expressed his view that the CFTC should look into the TAS trading activity in its
investigation of the precipitous drop and rebound of WTI oil trading prices on April 20-21.

### C.      Buying Pressure, Selling Pressure, Cumulative Net Sales And Cumulative Selling Pressure

93.     All else equal, sales of futures contracts exert downward pressure on prices, and the
larger the number of sales, the greater the downward pressure on prices. All else equal, purchases of
futures contracts exert upward pressure on prices, and the greater the number of purchases, the
greater the upward pressure on prices.

94.     All else equal, the more that a market participant (or a group of market participants)
sells a commodity futures contract and the less that they purchase a commodity futures contract
during a trade day, the more cumulative net sales they will make and the greater downward pressure
on prices they exert.

95.     All other things equal, buying pressure in a commodity futures contract will tend to
make prices higher than they otherwise would have been. Selling pressure in a commodity futures
contract will tend to make prices lower than they otherwise would have been.

96.     Bids are orders to buy a futures contract. Offers are orders to sell a futures contract.
When the highest bid equals or exceeds the lowest offer, an agreement to purchase and sell a futures
contract is made. Because the prices in the futures market are determined by the lowest offer and
the highest bid, the futures markets are sometimes referred to as a dual auction market.  After the

match creating an execution, the bid and offer are removed from the order book to the extent of the match. The remaining bids and offers determine the prices.

97.     Orders to purchase or sell may be submitted in two general types. One is a "limit" order, which is an order to sell or buy at a price limit. A bid for $10 per barrel or better, is a bid to buy at a maximum of $10 and less than $10 if possible. An offer to sell at $10 per barrel is an offer to sell at $10 per barrel or higher, but not less than $10 per barrel.

98.     A market order is an order to buy at or above the available offer, or to sell at or below the available bid in the market. Limit orders which seek to buy at or above the lowest offer or sell at or below the highest bid are, in effect, market orders to that extent.[4] A market order to sell 10 contracts is an offer to sell 10 contracts at whatever the bid is in the market. If there are three contracts bid at $10 per barrel, three contracts bid at $9.95 per barrel, three contracts bid at $9.90 per barrel, and one contract bid at $9.85 per barrel, the 10 contract market offer will, all other things equal, remove all of those from the order book and execute with the last price of $9.85 per barrel. The bid after that transaction will be whatever the highest bid is below $9.85 per barrel.

99.     All other things equal, market order sells exert downward pressure on prices and market order buys exert upward pressure on prices.

100.    Making offers to sell below the highest bid in a volume greater than the highest bid causes prices to decline and "sells through the market". This removes from the order book the bids at the higher level. This is a sufficient, but not necessary condition to cause prices to decline.

101.    This can also execute the next bids and, depending on the size of the marketable offers and the size of the bids, take them out of the order book. If a trader adds marginal (*i.e.,* extra) offers to a market which exceed the bids in the market at a given price, then the trader or traders will cause prices to move down.

---

[4] These are sometimes referred to as "marketable limit orders".

102. If a trader is able to add marginal offers at a given price that cause the total offers to exceed the total bids, then there will be downward pressure on prices and prices will move down. This is a significant but not a necessary condition to depress prices.

██  ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

## VI. UNDERLYING ALLEGATIONS

████████████████████████████████████████████████████

██  ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████

██  ████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████

██  ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████

_____

█

████████████████████████████████████████████████████████████████████

██████████████████████████







































## VII. CLASS ALLEGATIONS

210.    Plaintiff brings this action on behalf of itself, and all others similarly situated,

pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the

following Class:

All persons and entities that purchased and/or sold during the period from at least April 20, 2020 through at least April 21, 2020 a May 2020 light sweet crude oil (WTI) futures contract traded on the NYMEX and/or the ICE. Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates and all federal governmental entities.[12]

211. The Class is so numerous that joinder of all members is impracticable. Due to the nature of the commerce involved, the members of the Class are geographically dispersed throughout the United States. Plaintiff believes there are hundreds of members of the Class.

212. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   a. Whether Defendants combined, conspired, and agreed to manipulate and fix the prices of NYMEX and/or ICE WTI crude oil futures contracts in violation of the Sherman Act;

   b. whether Defendants manipulated NYMEX and/or ICE WTI crude oil futures contracts in violation of the CEA;

   c. whether such manipulation caused NYMEX and/or ICE WTI crude oil futures contracts to be artificial;

   d. whether such manipulation caused cognizable legal injury under the CEA;

   e. whether such injury or the extent of such artificiality may be established by common, class-wide means, including, for example, by regression analysis, econometric formula, or other economic tests;

   f. whether Defendants were unjustly enriched to the detriment of Plaintiff and the Class; and

   g. the operative time period and extent of Defendants' foregoing violations.

---

[12] Plaintiff reserves the right to amend the definition of the Class in the class motion or otherwise.

213.     Plaintiff's claims are typical of the claims of the other members of the Class he seeks to represent.  Plaintiff and members of the Class all sustained damages arising out of Defendant's same course of unlawful conduct alleged herein.

214.     Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel experienced in complex commodity futures manipulation and antitrust class actions.  Plaintiff has no interests that are adverse to or in conflict with other members of the Class.

215.     The questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members.

216.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable.  The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would also create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated.  It would do so without sacrificing procedural fairness or bringing about other undesirable results.

217.     The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical.  The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable.  Plaintiff anticipates no difficulty in the management of this action as a class action.

## VIII. INJURY TO PLAINTIFF AND CLASS MEMBERS

218.     During the Class Period, Plaintiff and Class members transacted in crude oil futures contracts at artificial prices and were deprived of a lawfully operating market.

219.     Further, by reason of the alleged violations of the CEA and Sherman Act, Plaintiff and Class members sold at prices that were not what they would have paid in the absence of the extensive unlawful conduct alleged herein.  As a result, Plaintiff and Class members have suffered a legally cognizable injury due to Defendants' alleged violations of the CEA and Sherman Act.

220.     Defendants' manipulation caused fluctuating amounts of artificiality in the prices of NYMEX and ICE WTI crude oil futures contracts beginning at least as early as April 20, 2020 and continuing until at least until April 21, 2020.

221.     The specific amounts of actual damages under the CEA and damages under the Sherman Act have not yet been determined because such determination will require discovery of the conduct of Defendants, the CME, NYMEX, GH Financials, and other non-parties.

## IX. CLAIMS

### AS AND FOR A FIRST CLAIM

### AGAINST ALL DEFENDANTS

**(Violation of Section 1 of the Sherman Antitrust Act 15 U.S.C. §1 *et seq.*)**

222.     Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.



**AS AND FOR A SECOND CLAIM**

**AGAINST ALL DEFENDANTS**

**(Manipulation In Violation Of The Commodity Exchange Act 7 U.S.C. §1 *et seq.*)**

231.    Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

66





### AS AND FOR A THIRD CLAIM

### <u>AGAINST ALL DEFENDANTS</u>

**(Principal-Agent Liability In Violation Of The Commodity Exchange Act 7 U.S.C. §1 *et seq.*)**

241.    Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

██     ████████████████████████████████████████

████████████████████

██     ████████████████████████████████████████

██████████████████

### AS AND FOR A FOURTH CLAIM

### <u>AGAINST ALL DEFENDANTS</u>

**(Aiding and Abetting Liability In Violation Of The Commodity Exchange Act**

**7    U.S.C. §1 *et seq.*)**

245.    Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

██     ████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████

██     ████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

██    ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████

██    ██████████████████████████████████████

█████████████████████████

██    ██████████████████████████████████████

██████████████████

## AS AND FOR A FIFTH CLAIM

## <u>AGAINST ALL DEFENDANTS</u>

**(Manipulation In Violation of the Commodity Exchange Act,**

**7    U.S.C. §§1, *et seq*. and Regulation 180.1(a))**

251.    Plaintiff incorporates by reference and re-alleges all the allegations in this complaint,

as though fully set forth herein.

██    ██████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

███ ████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███ ██████████████████████████

████████████████████████████████

███████████████

███ ██████████████████████████

███████████████

### AS AND FOR A SIXTH CLAIM

### <u>AGAINST ALL DEFENDANTS</u>

### (Principal-Agent Liability In Violation Of The Commodity Exchange Act 7 U.S.C. §1 *et seq.* and Regulation 180.1(a))

256.    Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

███ ██████████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████████████

███████████████████████████████

███████████████████████████████

█████████████████████

71



**AS AND FOR A SEVENTH CLAIM**

**AGAINST ALL DEFENDANTS**

**(Aiding and Abetting Liability In Violation Of The Commodity Exchange Act 7 U.S.C. §1 *et***

***seq.* and Regulation 180.1(a))**

260.　Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████

████    █████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

████    ██████████████████████████████████████

███████████████████████

████    ██████████████████████████████████████

███████████████

## AS AND FOR AN EIGHTH CLAIM

## <u>AGAINST ALL DEFENDANTS</u>

### (Common Law Unjust Enrichment and Restitution/Disgorgement)

266.    Plaintiff incorporates by reference and re-alleges all the allegations in this complaint, as though fully set forth herein.

████    ██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████



## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. for a declaratory judgment that Defendants combined, conspired and agreed to manipulate and fix prices of NYMEX and ICE WTI crude oil futures contracts in violation of the Sherman Act, 15 U.S.C. §1 *et seq.*;

B. for a declaratory judgment that Defendants intentionally manipulated and conspired to manipulate NYMEX and ICE WTI crude oil futures prices, and caused such prices to become artificial, in violation of the CEA, 7 U.S.C. §1 *et seq.*;

C. for a declaratory judgment that Defendants are liable for the acts of their agents for their manipulation and conspiracy to manipulate in violation of Section 2(a)(1)(B) of the CEA, 7 U.S.C. §2(a)(1)(B);

D. for a declaratory judgment that Defendants aided and abetted the manipulation and conspired to manipulate in violation of Section 13 of the CEA, 7 U.S.C. §13c(a);

E. for a declaratory judgment that Defendants intentionally or recklessly employed one or more manipulative devices, schemes or artifices to defraud and/or engaged in one or more acts,

practices, or courses of business, which operated or would operate as a fraud or deceit in violation of section 6(c)(1) of the CEA, as amended, codified at 7 U.S.C. §9, and Section 22 of the CEA, as amended, 7 U.S.C. §25, and Regulation 180.1, 17 C.F.R. §180.1;

F. for a declaratory judgment that Defendants are liable for the acts of their agents for their intentional or reckless employment of one or more manipulative devices, schemes or artifices to defraud and/or engagement in one or more acts, practices, or courses of business, which operated or would operate as a fraud or deceit in violation of Section 2(a)(1)(B) of the CEA, 7 U.S.C. §2(a)(1)(B);

G. for a declaratory judgment that Defendants aided and abetted the intentional or reckless employment of one or more manipulative devices, schemes or artifices to defraud and/or engagement in one or more acts, practices, or courses of business, which operated or would operate as a fraud or deceit in violation of Section 13 of the CEA, 7 U.S.C. §13c(a);

H. for an order impressing a constructive trust temporarily, preliminarily, permanently or otherwise on the full amount of each Defendant's unjust enrichment, including the portions thereof that were obtained at the expense of Plaintiff and the Class;

I. for an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designating Plaintiff as the Class representative and his undersigned counsel as Class counsel;

J. for a judgment awarding Plaintiff and the Class damages against Defendants for their violations of the Sherman Act, including treble damages, with prejudgment interest at the maximum rate allowable by law;

K. for a judgment awarding Plaintiff and the Class damages against Defendants for each of their violations of the CEA, together with prejudgment interest at the maximum rate allowable by law;

L.   for a judgment awarding Plaintiff and the Class damages equal to each Defendant's unjust enrichment, including the portions thereof that were obtained at the expense of Plaintiff and the Class;

M.   for an award to Plaintiff and the Class for their costs of suit, including reasonable attorneys' fees and expert fees and expenses; and

N.   for such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Dated: _____
        Chicago, Illinois

                                        Respectfully submitted,

                                        */s/ Christopher Lovell*
                                        Christopher Lovell
                                        Christopher M. McGrath
                                        **LOVELL STEWART HALEBIAN
                                        JACOBSON LLP**
                                        500 Fifth Avenue, Suite 2440
                                        New York, New York 10110
                                        Telephone:      (212) 608-1900
                                        Facsimile:      (212) 719-4775

                                        Marvin A. Miller
                                        Andy Szot
                                        **MILLER LAW LLC**
                                        115 S. LaSalle Street, Suite 2910
                                        Chicago, Illinois 60603
                                        Telephone:      (312) 332.3400

                                        *Counsel for Plaintiff*