IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MISH INT'L MONETARY INC., on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VEGA CAPITAL LONDON, LTD., *et al.*, <br><br> Defendants. | Case No. 20-cv-04577 <br><br> Hon. Manish S. Shah <br><br> Magistrate Judge Jeffrey T. Gilbert |

## JOINT INITIAL STATUS REPORT

The parties respectfully submit this joint status report pursuant to the Court's January 9, 2023 Order directing the parties to file an initial status report by January 20, 2023. ECF No. 191.

1. **The Nature of the Case**

    a. **Attorneys of Record**

The attorneys of record for Plaintiff Mish International Monetary Inc. ("Plaintiff") are Christopher Lovell and Christopher McGrath, from the law firm Lovell Stewart Halebian Jacobson LLP; and Marvin A. Miller and Andy Szot, from the law firm Miller Law LLC. The lead trial attorney for Plaintiff is Christopher Lovell.

The attorneys of record for Defendants Vega Capital London Ltd. ("Vega") and Adrian Spires are Amy Graham Doehring, Elpitha B. Lambros, Michael P. Kelly, and Joel S. Forman, from the law firm Akerman LLP. The lead trial attorney for Defendants Vega and Adrian Spires is Michael P. Kelly.

The attorneys of record for Defendants Traders Paul Commins, George Commins, Christopher Roase, Elliott Pickering, Aristos Demetriou, Connor Younger, James Biagioni,

Henry Lunn, Paul Sutton, and Matthew Rhys Thompson (the "Trader Defendants") are Steven E. Bizar, Roger A. Burlingame, Julia Chapman, and Matthew L. Mazur from the law firm Dechert LLP. The lead trial attorney for the Trader Defendants is Matthew L. Mazur.

### b. Basis for Federal Jurisdiction

The bases for federal jurisdiction over this action include Section 22 of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25, and Section 4 of the Clayton Act, 15 U.S.C. § 15, and 28 U.S.C. §§ 1331 and 1337.

### c. Nature of the Claims

**Plaintiff's Position**. Plaintiff alleges that Defendants combined, conspired and agreed to intentionally manipulate and depress the prices of New York Mercantile Exchange ("NYMEX") and Intercontinental Exchange ("ICE") West Texas Intermediate ("WTI") crude oil futures contracts in violation of Sherman Antitrust Act, 15 U.S.C. §1 *et seq.* ("Sherman Act"), the CEA and the common law. On April 20, 2020, the price of the NYMEX WTI crude oil futures contract traded at a negative price for the first time in history. The price of the May 2020 WTI futures contract—the contract that traded negative and is alleged to have been artificially depressed by Defendants—declined by an extreme amount (138 standard deviations) relative to the price of the June 2020 WTI futures contract—the next expiring WTI futures contract that is not alleged to have been manipulated. At the same time as these highly unusual price movements on April 20, Plaintiff alleges Defendants communicated, coordinated and otherwise worked together to aggressively sell large volumes of May 2020 WTI crude oil futures contracts and other related instruments for the purpose of depressing the price (including the settlement price) of the May 2020 WTI futures contract. In total, Defendants sold the equivalent of more than 16.2 million barrels of WTI crude oil in a very highly correlated manner. Defendants'

aggressive selling so as to register the lowest possible prices for the May 2020 WTI futures contract was uneconomic and contrary to standard and rational practice to seek to sell for the highest possible price. Prior to Defendants' foregoing aggressive selling on April 20, Defendants purchased a large volume of Trading at Settlement ("TAS") contracts. These TAS contracts gave Defendants the right to buy the May 2020 contract at the settlement price, which would be determined at the close of trading on April 20. The lower the price of the May 2020 contract on April 20, the lower the price that Defendants were obligated to pay to purchase such contracts. *Id*. On April 20, the price of the May 2020 WTI crude oil futures contract settled at an all-time record low price of *negative* $37.63 a barrel. After Defendants' aggressive selling had ceased on April 20, the price of the May 2020 contract relative to the June 2020 contract snapped back to above where such price had closed the trading day immediately preceding April 20. Defendants profited by as much as $705 million in connection with their trading on April 20. Plaintiff further alleges that Defendants engaged in substantially similar manipulative behavior involving aggressive selling and TAS contracts prior to April 20.

The Court has sustained the following claims asserted by Plaintiff: a claim for an unlawful combination, conspiracy or agreement in violation of Section 1 of the Sherman Act, two claims for manipulation in violation of Sections 9(a)(2) and 6(c)(1) of the CEA, a claim for aiding and abetting in violation of Section 13 of the CEA and a claim for unjust enrichment. ECF No. 189.

**Defendants' Position**. This case arises out of the events of April 20, 2020, when the WTI crude oil futures contract traded at negative prices for the first time since its listing on the NYMEX. Plaintiff accuses the Defendants of conspiring to artificially depress the settlement price of the May Contract and causing $92,490 in losses when Plaintiff sold the May Contract at

negative prices in order to liquidate a long position.

Defendants dispute both the factual and legal bases for these claims. They deny that they had any agreement to depress the settlement price of the May Contract, which the CME Group had warned prior to April 20, 2020, could experience negative pricing. At that time, the world was in the early months of the global Covid-19 pandemic that was severely disrupting economic activity, demand for oil had evaporated, and yet oil-rich countries continued to flood an already oversupplied market. April 20, 2020, was also the day before the expiry of the May Contract, and the low demand and huge supply of oil resulted in a shortage of storage capacity at Cushing, Oklahoma, where the WTI contract had to be physically settled. These unprecedented conditions caused holders of the May Contract who could not take delivery of WTI crude oil to sell at negative prices—meaning that they were willing to pay buyers to take the contracts off of their hands. The 10 Trader Defendants—professional independent oil traders based in the United Kingdom—maintain that they traded (and profited) lawfully, when they bought the May Contract at the eventual settlement price and sold the same contract at higher prices prior to the settlement.

### d. Major Legal and Factual Issues

**Plaintiff's Position.** The major legal and factual issues include whether Defendants intentionally caused WTI crude oil futures prices to be artificial, whether Defendants combined, conspired and agreed to manipulate or fix WTI crude oil futures prices and whether this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23. *See* also "c" above.

**Defendants' Position**. The principal legal and factual issues include whether any of the Defendants conspired to depress the price of the May Contract, whether any of the Defendants aided and abetted anyone else's manipulation, whether the Trader Defendants had the ability to

influence prices, whether prices were in fact artificial, and whether Plaintiff suffered any damages that were caused by Defendants.

In addition, Defendants expect to challenge Plaintiff's attempt to prosecute its claims in a class action. Defendants will dispute, among other things, whether questions of law or fact common to class members predominate over any questions affecting individual members, whether a single formula or methodology that could be used to calculate alleged damages on a class-wide basis in the global WTI crude oil futures market, whether Plaintiff—who did not transact at the settlement price on April 20, 2020—is an appropriate representative of the putative class, and whether Plaintiff's claims must be pursued in an arbitration in accordance with the CME's rules.

### e. Relief Sought by Plaintiff

The relief sought by Plaintiff includes: declaratory judgments that Defendants violated the Sherman Act and CEA and that Defendants were unjustly enriched in connection with their alleged misconduct, an order certifying this action as a class action pursuant to Rule 23 that designates Plaintiff as the Class representative and its counsel as Class counsel, a judgment awarding Plaintiff and the Class damages against Defendants for their violations of the Sherman Act (including treble damages) and the CEA and disgorgement of Defendants' unlawful profits, prejudgment interest at the maximum rate allowable by law, an award to Plaintiff and the Class for their costs of suit, including reasonable attorneys' fees, expert fees and expenses, and such other and further relief as the Court may deem just and proper.

## 2. Pending Motions and Case Plan

### a. Pending Motions

There are no pending motions.

### b. Proposal for a Discovery Plan

Counsel for Plaintiff and Vega held a Rule 26(f) conference in 2020 following the filing of the initial Complaint. Subsequently, Judge Feinerman allowed Plaintiff to "serve Civil Rule 34 requests seeking the production of documents that Defendant [*i.e.*, Vega] previously produced to the CFTC, the CME, the NYMEX, or other regulators," but stayed "[a]ll other discovery." ECF No. 21. The Court lifted the stay of the discovery on January 17, 2023. ECF No. 195. The parties previously exchanged Rule 26(a)(1) disclosures. ECF No. 21.

The parties anticipate that discovery will include a substantial amount of electronically stored information ("ESI"), including electronic communications, trading data and other documents from the parties, market participants around the world, and market data from the CME and the Intercontinental Exchange ("ICE"); party and non-party depositions; and substantial expert discovery.

The parties have conferred about a discovery schedule and believe that the nature and complexity of this case requires a longer discovery schedule than in a typical case. The allegations in the Second Amended Complaint concern trading and prices on a worldwide market. The Defendants are all overseas, and the parties also expect to seek discovery from other companies and individuals outside of the United States. Because of the nature and complexity of the issues, experts will also need time to analyze the data and other information that the parties collect, which will further lengthen the amount of time needed by the parties.

*Proposed Schedules*. The parties are proposing competing schedules. A chart reflecting the parties' proposals is attached as Exhibit A. The areas of disagreement are detailed below.

**Plaintiff's Position Concerning Schedule**

Plaintiff respectfully submits that the Court should reject bifurcation and adopt a reasonable case schedule similar to Plaintiff's proposal.

**The Reasonableness of Plaintiff's Proposal**. Plaintiff's proposal of a 24-month fact discovery period is the **same proposal** Defendant Vega previously made to the Court. ECF No. 20, pp. 3-4. Moreover, since Defendant Vega made that proposal, the Court has denied the motions to dismiss by **eleven** additional named Defendants and the respective amount of discovery in the action has increased commensurately or very substantially. ECF No. 189.

**Bifurcation**. Nor did Vega earlier propose the dispute-generating, inefficient and judicially disfavored device of bifurcation. *Compare* ECF No. 20, pp. 3-4 *with e.g., Morgan Kukovec v. The Estee Lauder Companies, Inc.*, 22-cv-01988, ECF No. 52 (N.D. Ill. Dec. 28, 2022) (Shah, J.) ("*Estee Lauder*") ("Discovery is not bifurcated and the parties should proceed with discovery on both merits and class certification issues. The [C]ourt will set class certification expert discovery and motion deadlines when the parties get closer to completing fact discovery."); *Abramson v. Gohealth LLC*, No. 19-cv-6318, 2020 WL 5209817 at *2, (N.D. Ill. Sept. 1, 2020) (denying motion to bifurcate and holding that "…court after court denies these motions, questioning the proposition that they lead to expediency or judicial economy") (collecting cases denying bifurcation). Bifurcation of discovery is not contemplated by the Federal Rules and Defendants (not Plaintiff) have the burden to demonstrate "good cause" for bifurcation.

**The Discovery Appropriate for Plaintiff to Develop an Economic Model and Evidence to Support Plaintiff's Other Class Certification Submissions.** Extensive foreign non-party discovery, full discovery of the twelve defendants (who are all foreign but failed to

contest personal jurisdiction and are subject to Fed. R. Civ. P. discovery), and substantial discovery of the Chicago Mercantile Exchange ("CME"), NYMEX and other domestic non-parties are all appropriate for Plaintiff to have the opportunity to develop an appropriate class certification economic model and evidence to satisfy Fed. Civ. P. 23. Plaintiff respectfully submits that the reduction by Vega (ECF No. 20, pp. 3-4) and the other Defendants in their proposal for the time for Plaintiff to file a class certification motion from **20 months** after the start of fact discovery to **7 months** after the start of fact discovery, simply does not fit the facts and circumstances here. Document discovery and depositions from the numerous Defendants, foreign discovery, other domestic discovery, and other complexities and details involved in preparing and supporting a class motion is going to require much closer to 20 months than to 7 months. In much less complicated class actions, this Court has routinely ordered fact discovery be substantially completed before even setting a class certification briefing schedule. *See, e.g.*, *Estee Lauder, supra; Wordlaw v. Enterprise Leasing Company of Chicago, LLC*, 20-cv-03200, ECF No. 41 (N.D. Ill. Feb. 3, 2021) (Shah, J.) ("…all fact discovery (on both merits and class certification issues) shall be noticed in time for completion by 10/21/21. The [C]ourt will set an expert discovery, class certification, and dispositive motion schedule when the parties get closer to completing fact discovery.").

To date, Plaintiff has received discovery of one category of documents from one Defendant: documents Vega produced to the CME. Plaintiff has not yet received any discovery from the eleven other Defendants, including production of any of the documents which numerous Defendants have been compelled (over their objections) to produce to the Commodity Futures Trading Commission ("CFTC"). *See*

https://www.cftc.gov/PressRoom/PressReleases/8619-22; https://www.fca.org.uk/news/press-releases/decision-court-appeal-r-sutton-v-financial-conduct-authority.

Finally, and most important, the CME and CFTC do not have the burden to show conspiracy, the amount of artificial impact or damages. In order to prepare and submit the class motion and economic model, Plaintiff needs qualitative and quantitative discovery sufficient to meet the class certification movant's burden in these areas as well.

Plaintiff is prepared to further explain their need for additional discovery at a status conference.

## Defendants' Position Concerning Schedule

Defendants respectfully request that the Court adopt their proposed case schedule which will allow for fair and efficient resolution of this action.

*First*, Plaintiff has made no showing that would justify a ***two-year*** discovery period in this action. Of course, this multi-defendant action is complex, but a fifteen-month discovery period reflects ample time to conduct the party and non-party discovery Plaintiff references, while adhering to the principles of efficiency enshrined in the Federal Rules. An unnecessarily long discovery period does nothing more than incentivize delay and risk disproportional discovery. Further, Plaintiff has already received substantial discovery in this action: In November 2020 Defendant Vega produced more than 42,712 of pages of material previously produced to CME Group, Inc., including but not limited to trading data from and communications among the Vega Trading Defendants (notwithstanding Plaintiff's representation that it does not have discovery from the Vega Trading Defendants). These productions have been supplemented with an additional 679 pages produced to the CME after November 2020. In short, Plaintiff is far from starting discovery in this action on a blank slate.

*Second*, Defendants' proposal that discovery in this action be bifurcated (or that Plaintiff be required to move for class certification within nine months such that discovery necessary for class certification precedes other discovery) further promotes efficient resolution of this action. Bifurcation is appropriate where it would result in "savings in time and cost with regard to discovery and discovery management [that] would benefit both the parties and the Court." *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,* No. 02 C 2523, 2004 U.S. Dist. LEXIS 4698, at *6 (N.D. Ill. March 23, 2004). Here, in a complaint which seeks to certify a class of virtually every entity or individual who purchased or sold while trading on a worldwide oil futures contract market on April 20, 2020, bifurcation—or at the very least phasing—of class and merits discovery will potentially accelerate resolution of this action. Further, bifurcation (or phasing) is easily administrable given the concrete questions that will be posed at class certification. Specifically, discovery relevant to class certification in this action will focus on the prerequisites for class actions provided by Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *See* Fed. R. Civ. P. 23(a). Plaintiff has made no showing that discovery from the Vega Trading Defendants specifically will be necessary to support its motion for class certification, nor has it made any showing as to why the discovery necessary to support its motion for class certification cannot be completed by August 2023.

Notably, the Advisory Committee Notes to the 2003 amendments of Rule 23 acknowledge the role of bifurcation and observe that it is appropriate "to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis."

Defendants anticipate filing a motion to bifurcate (or phase) discovery in this action shortly and will be prepared to further address their scheduling proposal during the Court's scheduling

conference

## The Parties' Scheduling Proposals

*Date to issue written discovery.* Plaintiff believes that the parties may begin to serve written discovery given that the Court lifted the stay of discovery on January 17, 2023. ECF No. 195.

Defendants propose that the parties begin to serve written discovery 14 days after the lifting of the discovery stay, *i.e.*, January 31, 2023.

The parties agree that the deadline for issuing written discovery should be thirty (30) days prior to the close of fact discovery.

*Fact discovery completion date.* Plaintiff proposes that fact discovery, except for foreign discovery, be completed by December 30, 2024, *i.e.*, twenty-four months after the Court's December 28, 2022 Memorandum Opinion and Order substantially denying Defendants' motions to dismiss. ECF No. 189. With respect to foreign discovery, Plaintiff proposes that, provided any party seeking to take a foreign deposition or other foreign discovery undertakes to commence the process to take such discovery no later than sixty days prior to the close of fact discovery, such foreign depositions or other foreign discovery may be completed after the close of fact discovery.

Defendants propose that all fact discovery be completed by April 1, 2024, *i.e.*, fifteen months after the Court's Order on Defendants' motions to dismiss. ECF No. 189. It is Defendants' position that a fifteen-month fact discovery period is sufficient time for all factual discovery in this matter, including any "foreign discovery" contemplated by Plaintiff.

*Bifurcation.* Plaintiff opposes Defendants' request for "bifurcated" discovery and reserves the right to oppose any motion for bifurcation.

Defendants propose that discovery be bifurcated, or at a minimum that Plaintiff be required to move for class certification within nine months, such that discovery necessary for class certification precedes other discovery.

*Amendments to the Pleadings*. The parties agree that the deadline to seek to amend the pleadings should be sixty (60) days before the close of fact discovery.

*Class Certification*. Plaintiff proposes its class certification motion be briefed as follows: Plaintiff files its motion for class certification, including any expert reports, by August 30, 2024; Defendants file their opposition to class certification, including any expert reports, by October 29, 2024; and Plaintiff files its reply in further support of class certification, including any rebuttal expert reports, by December 30, 2024.

Defendants propose that fact discovery necessary for class certification be completed no later than August 18, 2023 and that class certification be briefed as follows: Plaintiff should file a motion for class certification, including any expert reports supporting its motion no later than September 18, 2023; Defendants should file their opposition, including any expert reports in opposition to Plaintiff's motion, no later than November 17, 2023; Plaintiff should file its reply, including any rebuttal expert reports, no later than January 16, 2024. Defendants further propose that the parties turn over materials relied on by their class certification experts pursuant to a stipulated protocol to be agreed upon by the parties, and the parties should depose the opposing party's experts within 30 days thereafter.

*Expert Discovery.* The parties agree that merits expert discovery should be conducted following the completion of fact discovery. However, the parties disagree about the timing of merits expert discovery.

Plaintiff proposes that merits expert discovery proceed as follows: merits expert reports

served by February 28, 2025; responsive merits expert reports served by April 29, 2025; rebuttal merits expert reports served by June 30, 2025; and merits expert discovery completed by July 30, 2025.

Defendants propose that merits expert discovery proceed as follows: Plaintiff's expert reports to be served no later than May 1, 2024; Defendants' expert reports to be served no later than July 1, 2024; Plaintiff's rebuttal expert reports to be served no later than August 2, 2024; and expert discovery to be completed no later than October 14, 2024. Defendants also propose that the parties should turn over materials relied upon by their experts pursuant to a stipulated protocol to be agreed upon by the parties, and the parties should depose the opposing party's experts within 30 days thereafter.

*Summary Judgment*. The parties agree that summary judgment should be briefed following the completion of merits expert discovery. However, the parties disagree about the timing of summary judgment briefing.

Plaintiff proposes that summary judgment motions be briefed as follows: the parties file any motions for summary judgment by August 29, 2025; the parties file oppositions to any motions for summary judgment by October 28, 2025; and the parties file replies in further support of any motions for summary judgment by December 12, 2025.

Defendants propose that summary judgment motions be briefed as follows: the parties file any motion for summary judgment no later than November 18, 2024; the parties file any opposition to summary judgment no later than January 13, 2025; replies in support of summary judgment to be filed no later than February 12, 2025.

*Jury Trial*. Plaintiff has requested a trial by jury. The parties estimate that the trial will take 3 to 4 weeks.

*Unredacted Second Amended Complaint.* Pursuant to the Court's January 17, 2023 Order, Plaintiff proposes to file an unredacted, public version of the Second Amended Complaint identifying the defendants Traders 1-6, 8-9, and 11-12, and Individual A by February 3, 2023. ECF No. 195.

### 3. Consent to Proceed Before a Magistrate Judge

The parties do not consent to proceed before a Magistrate Judge for all purposes. No matters have been referred to a Magistrate Judge.

### 4. Status of Settlement Discussions

Plaintiff made a settlement proposal to Defendants Vega Capital London and Adrian Spires, but no agreement was reached. Plaintiff has not made a settlement proposal to the Trader Defendants. The parties do not believe that any further settlement discussions would be fruitful at this time.

Dated: January 20, 2023

Respectfully submitted,

*/s/ Christopher M. McGrath*
Christopher Lovell
Christopher M. McGrath
**LOVELL STEWART HALEBIAN JACOBSON LLP**
500 Fifth Avenue, Suite 2440
New York, New York 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4775

Marvin A. Miller
Andy Szot
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, Illinois 60603
Telephone: (312) 332.3400

*Attorneys for Plaintiff Mish International Monetary Inc.*

*/s/ Michael P. Kelly*
Michael P. Kelly
**AKERMAN LLP**
750 Ninth Street, N.W., Suite 750
Washington, DC 20001
(202) 393-6222
michael.kelly@akerman.com

Joel S. Forman
**AKERMAN LLP**
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
(212) 880-3800
joel.forman@akerman.com

Amy Graham Doehring
Elpitha B. Lambros
**AKERMAN LLP**
71 S. Wacker Drive, 47th Floor

Chicago, IL 60606
(312) 634-5700
amy.doehring@akerman.com
elpitha.lambros@akerman.com
*Attorneys for Defendants Vega Capital London Ltd. And Adrian Spires*

*/s/ Matthew L. Mazur*
Roger A. Burlingame
Matthew L. Mazur
**DECHERT LLP**
160 Queen Victoria Street
London EC4V 4QQ, United Kingdom
Telephone: +44 20 7184 7000
Roger.Burlingame@dechert.com
Matthew.Mazur@dechert.com

Steven E. Bizar
Julia Chapman
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2222
Steven.Bizar@dechert.com
Julia.Chapman@dechert.com

*Attorneys for Defendants Paul Commins, George Commins, Christopher Roase, Elliott Pickering, Aristos Demetriou, Connor Younger, James Biagioni, Henry Lunn, Paul Sutton, and Matthew Rhys Thompson*


Chicago, IL 60606
(312) 634-5700
amy.doehring@akerman.com
elpitha.lambros@akerman.com
*Attorneys for Defendants Vega Capital London Ltd. And Adrian Spires*

*/s/ Matthew L. Mazur*
Roger A. Burlingame
Matthew L. Mazur
**DECHERT LLP**
160 Queen Victoria Street
London EC4V 4QQ, United Kingdom
Telephone: +44 20 7184 7000
Roger.Burlingame@dechert.com
Matthew.Mazur@dechert.com

Steven E. Bizar
Julia Chapman
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2222
Steven.Bizar@dechert.com
Julia.Chapman@dechert.com

*Attorneys for Defendants Paul Commins, George Commins, Christopher Roase, Elliott Pickering, Aristos Demetriou, Connor Younger, James Biagioni, Henry Lunn, Paul Sutton, and Matthew Rhys Thompson*