## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MISH INTERNATIONAL MONETARY, INC., on behalf of itself and all others similarly situated, | |
| *v.* | Case No. 1:20-cv-04577 |
| VEGA CAPITAL LONDON, LTD., *et al.* | Judge Manish S. Shah |

## PLAINTIFF'S OPPOSITION TO THE TRADER DEFENDANTS' RULE 26(c) MOTION TO STAY ALL REMAINING FACT DISCOVERY

## TABLE OF CONTENTS

I. THE REMAINING DISCOVERY OF THE DEFENDANTS AND CERTAIN NON-PARTY DISCOVERY ARE "CENTRAL TO THE MERITS OF AN INDIVIDUAL CLAIM" AND WILL OCCUR "NO MATTER WHAT" ……………………….…………..1

    A.    In Order To Prove The Elements Of Its Claims Against The Named Defendants, Plaintiff Needs At Least The Depositions Of The Named Defendants Themselves, And Other Discovery………………………………………...…………………1

        1.    Plaintiff Needs The Depositions Of The Named Defendants In Order To Prove The Scienter And Conduct Elements Of Its Claims Against Such Defendants…………………………………………………………….……1

        2.    Plaintiff Needs To Complete Non-Party Discovery Relating To Deliverable Supply……………………………………………………………….4

        3.    Certain Of Plaintiff's Non-Party Discovery Is Not Directly Related to Plaintiff's Individual Claims……………………………………………………4

        4.    Defendants Themselves Say That They Would Pursue Their Outstanding Non-Party Discovery Regardless Of Whether They Face Plaintiff Or The Entire Class…………………………………………………………………4

II. REINFORCING THE COURT'S ANALYSIS DURING THE SEPTEMBER 26 STATUS CONFERENCE, THERE ARE MANY ADDITIONAL REASONS WHY A STAY OF DISCOVERY SHOULD BE DENIED …………………………………………...………5

    A.    Defendants Have Not Satisfied Their Movant's Burden to Demonstrate The "Good Cause" Required for a Stay…………………………………………………………5

    B.    Defendants' Motion Does Not Cite A Single Decision That Stayed Discovery Pending Resolution of a Rule 23 Class Motion, Whereas Numerous Decisions In this Circuit Have Denied Stays …………………...………………….…………..7

    C.    Plaintiff Will Be Prejudiced by A Stay of the Remaining Fact Discovery That Will Occur "No Matter What"…………………………………………………………..8

    D.    Defendants' Opposition To Class Certification Is Far From "Compelling"..………11

CONCLUSION………………………………………………………………………....12

Pursuant to the Court's instructions during the September 26, 2024 Status Conference and the Court's Order dated September 26, 2024 (ECF No. 393), Plaintiff Mish International Monetary, Inc. ("Plaintiff") respectfully submits this response to the Trader Defendants' Rule 26(c) motion requesting a protective order that stays all remaining fact discovery until after Plaintiff's Rule 23(b)(3) class certification motion is resolved.  ECF No. 387 ("Motion").

The Court stated as follows during the September 26 Status Conference:

> I would like a brief from the plaintiff laying out what discovery you think, on behalf of plaintiff, is going to be central to [the] merits of an individual claim, no matter what, in addition to whatever other arguments you want to make about why it doesn't make any sense to stay discovery at this point in the case.

ECF No. 395 (September 26, 2024 Transcript of Proceedings) at 14:15-20.  Accordingly, Plaintiff sets forth below (1) discovery central to the merits of Plaintiff's claims that will occur "no matter what" (*see* "I" below) and (2) additional reasons why it does not make sense to stay (and Defendants have woefully failed their burden to show that there should be a stay of) the remaining fact discovery.  *See* "II" below.

## I.      THE REMAINING DISCOVERY OF THE DEFENDANTS AND CERTAIN NON-PARTY DISCOVERY ARE "CENTRAL TO THE MERITS OF AN INDIVIDUAL CLAIM" AND WILL OCCUR "NO MATTER WHAT"

### A.  In Order To Prove The Elements Of Its Claims Against The Named Defendants, Plaintiff Needs At Least The Depositions Of The Named Defendants Themselves, And Other Discovery

#### 1.  Plaintiff Needs The Depositions Of The Named Defendants In Order To Prove The Scienter And Conduct Elements Of Its Claims Against Such Defendants

"Central" to the merits, and necessary to prove the elements of Plaintiff's individual claims are the depositions of the named Defendants. Pursuant to the indication or order of the Court dated July 15, 2024 (ECF No. 368), the Trader Defendants proposed a series of dates for the remaining depositions of the Trading Defendants during the weeks of November 4 and November 18,

respectively. Declaration of Christopher McGrath, Esq. ("McGrath Decl."), at ¶4. On September 19, Plaintiff agreed to the dates for the three depositions during the week of November 4. *Id.* ¶5. On September 25, Plaintiff also agreed to the dates for the three depositions during the week of November 18. *Id.* ¶8.

Plaintiff respectfully submits that those depositions should go forward on the dates offered by Defendants (or very soon thereafter on mutually agreed upon dates).

In order to prove its claims, Plaintiff also needs the depositions of the remaining two named Defendants: Vega Capital London, Ltd., ("Vega") and Defendant Adrian Spires ("Spires"). *See infra.* After the Court's ruling on Defendants' stay motion, Plaintiff will promptly negotiate appropriate dates with counsel for Vega and Spires.

During the September 26, 2024 Status Conference, Defendants conceded Plaintiff would have a "right" to take depositions of each Defendant if this were an individual action, and further seemed to concede that such depositions thus would occur regardless of the outcome of the class motion. ECF No. 395 at 12:15-16.

> "The Court:…why wouldn't plaintiff still need some information from Vega, say, in the form of a 30(b)(6) deposition, to prove plaintiff's individual case?...
> Mr. Kelly: Well, they might need something along those lines…that's just one deposition…That may be necessary…There may be a few depositions."

*Id.* at 7:24-9:5.

> "The Court:…Let me turn to the trader defendants and ask them whether their depositions…would have to happen anyway, even if this were a single-plaintiff case as opposed to a class action?...
> Mr. Mazur:…if there was a $30,000 or $90,000 claim, it's been my experience that there may not be as many depositions taken even, if as a formal matter, you might have the right to depose every defendant for a full day."

*Id.* at 11:25-12:16

Consistent with the Court's analysis and questions at the September 26 hearing, the Court previously recognized in January 2023 that depositions of the individual defendants "would be the

merits discovery that would take place whether or not a class is certified." ECF No. 203 (Transcript of Proceedings January 26, 2023) at 18:8-21. The Trader Defendants, who were seeking to bifurcate class and merits discovery at the time, appeared to agree with the Court. *Id.* at 19:6-21.

Plaintiff needs Defendants' depositions to prove on the merits the **elements** of Plaintiff's "eminently plausible"[1] claims under the Sherman Antitrust Act, 15 U.S.C. §1, *et seq.* ("Sherman Act"), the Commodity Exchange Act, 7 U.S.C. §1, *et seq.* ("CEA"), and common law unjust enrichment. These elements include (1) a contract, combination, or conspiracy to fix or depress prices;[2] or (2) specific intent to manipulate prices;[3] or (3) aided and abetted the violations by others.[4]

Plaintiff needs the depositions of Defendants to obtain facts from which the foregoing liability-sufficient scienter and liability-sufficient conduct may be inferred. Thus, the depositions of the named Defendants are both "central to the merits of an individual claim" by Plaintiff, and must occur "no matter what". ECF 395 at 14:5-14:20.

Plaintiff must make (when permitted by the Court) a motion to compel Defendants Vega and Spires to produce certain documents responsive to requests to which such Defendants have consistently objected. ECF No. 395. Despite approximately ten separate productions and scores of meet and confers, Plaintiff has reached impasse with Vega and Spires regarding certain categories of documents. Plaintiff's counsel believe the unresolved objections relate to the documents which are potentially the most probative of conspiracy, manipulative intent, and knowledge, *i.e.*, the

---

[1] *Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*, 596 F. Supp. 3d 1076, 1093 (N.D. Ill. 2022) ("*Mish I*"). Proof of Plaintiff's individual claims will prove the claims of all Class members. *See, e.g.*, ECF No. 311 at 13-14; ECF No. 390 at 13-14, 21-22.
[2] *Mish I*, 596 F. Supp. 3d at 1092-93.
[3] *Id.* at 1095.
[4] *Id.* at 1097-98.

unproduced documents are potentially the most inculpatory documents. *See* ECF No. 395 at 9:1-3; 9:17-20; 11:14-17.[5]

### 2. Plaintiff Needs To Complete Non-Party Discovery Relating To Deliverable Supply

Plaintiff is continuing its meet and confers to negotiate a very small number of Rule 45 document subpoenas previously issued to entities that operated pipeline and storage facilities in Cushing, Oklahoma—the physical delivery point for the New York Mercantile Exchange ("NYMEX") WTI crude oil futures contract. These subpoenas seek information concerning certain crude oil supply and demand factors and, accordingly, relate to Defendants' defenses and/or to Plaintiff's individual claim.

### 3. Certain Of Plaintiff's Non-Party Discovery Is Not Directly Related to Plaintiff's Individual Claims

Certain non-party subpoenas issued by Plaintiff in August 2024 were motivated primarily by class certification and document preservation purposes, and not the merits of Plaintiff's individual claims. In their joint opposition to class certification, Defendants (incorrectly) argued Plaintiff supposedly must identify all Class members, identify all Class member trades, and calculate damages for all Class members to satisfy Rule 23(b)(3). ECF No. 390 (class certification reply brief) at 33-36. Although this is not the law and no prior CEA manipulation case granting certification has ever required such proof, Plaintiff nevertheless undertook to obtain and preserve this information from fifty-two NYMEX clearing firms. *Id.* at 49-51. If the Court is inclined to stay discovery that may not be directly related to Plaintiff's individual claims, enforcement of these subpoenas may be stayed provided that the subpoenaed non-parties ensure preservation of the requested documents and data.

### 4. Defendants Themselves Say That They Would Pursue Their Outstanding Non-Party Discovery Regardless Of Whether They Face Plaintiff Or The Entire Class.

---

[5] Plaintiff may also seek to use other discovery devices (*e.g.,* requests for admissions or interrogatories) to help establish Plaintiff's individual as well as the Class' claims before the end of merits discovery.

Defendants have outstanding Rule 45 document and deposition subpoenas and have identified additional non-party discovery they may wish to pursue. Motion, ¶¶1-3. During the September 26 Status Conference, Defendants indicated that at least some of the non-party discovery they are currently seeking would occur regardless of how the Court rules on Plaintiff's class motion. ECF No. 395 at 14:5-12 ("The Court: And why wouldn't you be pursuing the CME and clearinghouse subpoenas no matter what happens with class certification? Mr. Mazur: We might, we might…**I think we probably would pursue those two**.") [emphasis added]. Plaintiff respectfully submits that Defendants' intention to complete their outstanding discovery even if they face only Plaintiff's individual claim, severely undercuts Defendants' premise for a stay pending the outcome of the class motion.

****

For the foregoing reasons, the remaining discovery Plaintiff must take from the Defendants, and even certain non-party discovery currently underway, will need to occur regardless of the outcome of Plaintiff's class motion. *See* "1", "2", and "4" above. And Defendants themselves admit that their outstanding discovery will occur regardless of whether the case proceeds as a class or individual action. Accordingly, based upon the statements of both Plaintiff and Defendants, there is no "good cause" for staying this inevitable discovery because it will not result in any cost savings and, moreover, continued delay risks prejudice to Plaintiff. *See* "II" below. If the Court is inclined to entertain a stay while it considers Plaintiff's class motion, Plaintiff respectfully submits that any such stay should be limited to non-party discovery that is not directly related to the merits of Plaintiff's individual claims nor to Defendants' defenses to Plaintiff's claims. *See* "3" above.

## II.     REINFORCING THE COURT'S ANALYSIS DURING THE SEPTEMBER 26 STATUS CONFERENCE, THERE ARE MANY ADDITIONAL REASONS WHY A STAY OF DISCOVERY SHOULD BE DENIED

In addition to the fact that the currently outstanding discovery of both Plaintiff *and* Defendants concerning the merits of Plaintiff's claims is inevitable, there are numerous additional reasons which strongly militate against a stay.

## A. Defendants Have Not Satisfied Their Movant's Burden to Demonstrate The "Good Cause" Required for a Stay

The Trader Defendants have not satisfied their movant's burden to demonstrate "good cause" for their requested Rule 26(c) protective order that would stay all fact discovery and require modification of the Court's Rule 16 scheduling order (ECF No. 201). Fed. R. Civ. P. 26 (protective order requires a showing of "good cause"); *see also Nicholson v. Nationstar Mortg. LLC of Delaware*, 17-cv-1373, 2018 WL 3344408, at *4 (N.D. Ill. July 6, 2018) ("'if there is even a fair possibility that the stay…will work damage to someone else,'" the movant "'must make out a clear case of hardship or inequity in being required to go forward.'"); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").[6]

The Trader Defendants have attempted to show good cause in only one way: by asserting that the "significant expense" of the remaining discovery will be "entirely wasted" if the Court denies Plaintiff's Rule 23 class motion. Motion at ¶¶1, 3. But this is incorrect. As demonstrated above, the remaining party discovery and even certain non-party discovery (including that sought by Defendants themselves) will occur regardless of whether the class is certified because all such discovery relates directly to Plaintiff's sustained individual claims against Defendants. *See* "I" above. Moreover, the Trader Defendants have not even attempted to estimate or otherwise substantiate the "significant expenses" that are the sole justification for the Rule 26(c) protective order they seek. *Compare Harper v. Cent. Wire, Inc.*, 19-cv-50287, 2020 WL 5230746, at *4 (N.D. Ill. Sept. 2, 2020)

---

[6] The Trader Defendants' Motion was filed pursuant to Rule 26(c) and required compliance with Local Rule 37.2. Motion at 1. However, the only consultation the Trader Defendants attempted was an e-mail request for Plaintiff's "position" a few hours before they filed their Rule 26(c) Motion.

("Defendants do not provide any estimate of the cost associated with responding to the discovery, nor do they provide an affidavit or other support for their allegation of undue burden. Courts in this circuit find that broadly decrying the time and expense that is expected to be associated with responding to discovery, without any substantiation, does not establish good cause for staying discovery."); Federal Practice and Procedure, Wright & Miller (3d ed.), § 2035 ("courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause").

In stark contrast, Plaintiff has submitted a declaration demonstrating that the Trading Defendants offered dates for all of their remaining depositions. McGrath Decl. ¶4. Only after the Plaintiff had locked in Defendants' first proposed week of depositions (and shortly before Plaintiff locked in Defendants' proposed second week of depositions), did the Trading Defendants announce that they were going to move for a stay. Specifically, at 5:47 am EDT on September 25, Defendant asked Plaintiffs position on a stay of discovery. McGrath Decl. ¶7 (Defendants letter first raising a stay was sent at 5:47 am EDT on September 25, *i.e.,* only a few hours after Plaintiff had submitted its reply and rebuttal papers).

### B. Defendants' Motion Does Not Cite A Single Decision That Stayed Discovery Pending Resolution of a Rule 23 Class Motion, Whereas Numerous Decisions In this Circuit Have Denied Stays

In addition to the absence of the required factual showing, Defendants also fail to cite a single decision that stayed discovery pending resolution of a Rule 23 class motion. Motion, *passim.*[7] Defendants' failure to cite cases is reminiscent of their "time capsule" brief of their motion to stay discovery in 2023 which cited to no case decided after 2013. ECF No. 203 at 10:6-11.

---

[7] The Trader Defendants Motion cites three cases, only one of which involved a motion to stay discovery. Motion at ¶¶3, 4, 7. However, the requested stay in *Rao v. JPMorgan Chase Bank, N.A.,* concerned a Rule 12(b)(6) motion to dismiss an individual action, and did not concern a stay pending a Rule 23 class certification motion. *Rao*, 21-cv-1361, 2021 WL 4927415, at *1 (N.D. Ill. May 12, 2021).

Courts, including this one, have repeatedly denied stays of discovery pending class

certification.  First, this Court denied a request by Defendants for a stay of merits discovery pending

resolution of Plaintiff's class motion in January 2023.  *Compare* ECF No. 198 at 1 *with* ECF No. 201

(setting schedule that did not include any stay).[8]  Also, other district courts in this Circuit have

repeatedly denied requests for stays of discovery pending resolution of Rule 23 motions.  *E.g.*, *Fillipo*

*v. Anthem Companies, Inc.*, 22-cv-00926, 2023 WL 3563627, at *2, 4 (S.D. Ind. Feb. 21, 2023) (denying

motion to stay discovery pending rulings on class certification motions and observing that,

regardless of type of claim brought forward, "substantially similar materials will have to be

addressed"); *Barker v. Kapsch Trafficcom USA, Inc.*, 19-cv-00987, 2019 WL 2524247, at *1, 2 (S.D. Ind.

June 18, 2019) (observing that "[c]ourts disfavor stays of discovery because they bring resolution of

the dispute to a standstill" and denying request to bifurcate and stay class-wide merits discovery

pending resolution of motion to dismiss and motion for class certification) (internal citations and

quotations omitted).

Plaintiff respectfully submits that this Court's analysis during the September 26, 2024

conference is strongly reinforced by Defendants' failures to cite any pertinent cases granting similar

relief to that requested by Defendants, and Defendants' failure to submit any facts that would carry

their burden to obtain the relief of a stay.

### C.  Plaintiff Will Be Prejudiced by A Stay of the Remaining Fact Discovery That Will Occur "No Matter What"

In this Circuit, the passage of time resulting from a stay has repeatedly been recognized as

prejudicial to the non-moving party.  *See, e.g., Solly Ringo's LLC v. Soc'y Ins.*, 22-cv-50054, 2022 WL

16961447, at *2, *4 (N.D. Ill. Nov. 16, 2022) ("Plaintiff argues that [a stay of discovery] 'would

---

[8] The Trader Defendants try to suggest they sought only bifurcation of class and merits discovery in January 2023.  Motion at ¶7(a).  But the very first sentence of their January 2023 motion specifically requests "staying merits discovery until class certification is decided."  ECF No. 198 at 1.

require substantial duplication of attorney effort as memories fade'… there is… a fair possibility that a stay will prejudice Plaintiff in light of the parties' ongoing meet and confer efforts [and] the Court finds that Defendant has not shown good cause for a stay… Defendant's motion to stay discovery is denied.") (internal citations omitted); *Cobbs v. Watson*, 18-cv-03205, 2020 WL 6173474, at *1 (C.D. Ill. Oct. 21, 2020)("*Watson*") ("Plaintiff argues that… delaying merits discovery will prejudice the Plaintiff by making…witnesses more difficult to locate and further removing potential witnesses' memories from the events which precipitated the Complaint [and] the Defendants cannot meet their burden of establishing good cause for a stay because they make no argument aside from their reliance on [inapplicable legal precedent], which this Court has already rejected… For the reasons stated above, the motion to stay discovery is denied."); *AOT Holding AG v. Archer Daniels Midland Co.*, 19-cv-2240, 2020 WL 1472266, at *1 (C.D. Ill. Jan. 22, 2020) ("There is some evidence that a stay will unduly prejudice or tactically disadvantage the non-moving party (*i.e.* AOT) in this matter… A stay of discovery could cause evidence to be lost at the expense of AOT. Specifically, the memories of witnesses might fade before they are deposed…).

Continuing to try to temporize and run the clock against Plaintiff, Defendants suggest that Plaintiff can simply restart all the stayed discovery after resolution of the class motion without any additional costs, burdens, or disadvantages. Motion, ¶¶6-7. But, four and a half years will very soon have passed since April 20, 2020. The class certification portion of the case has now been fully prioritized. Plaintiff now needs to take the depositions of the named Defendants in order to avoid (or mitigate to the greatest extent feasible) any "I don't recall" responses from Defendants Vega Capital and Spires. The Trading Defendants' implication during the hearing that the Court should wait until more than five years after the events at issue for the Trading Defendants' depositions to go forward, serves no proper purpose. On the contrary, it only further greatly increases the risk of "I don't recall" responses to questions.

Separately, courts have also recognized that the burden of restarting discovery after delays is itself a prejudice. *Compare e.g., Watson*, 2020 WL 6173474 at *1 ("further removing potential witnesses' memories from the events which precipitated" the claim is one type of prejudice) *with Solly Ringo's*, 2022 WL 16961447, at *2, *4 ("Plaintiff argues that [a stay of discovery] 'would require substantial duplication of attorney effort as memories fade').

Second, Defendants' assurances that the duration of the stay will supposedly be "short" and "for a limited period" collide with Defendants' statements indicating that they may or will seek to prolong the class certification briefing. Motion, ¶3.[9]

Third, in Plaintiff's experience, every single time that a defendant loses the class motion, they proceed to file a petition for interlocutory review under Fed.R.Civ.P. 23(f).[10] Such petitions may take

---

[9] Defendants have the reserved the right to respond to "new material" or "strike" portions of Plaintiffs' class certification reply submissions and rebuttal expert reports. Motion, ¶3, n. 2; ECF No. 395 at 18:10-19:11. Defendants are focused on the number of pages and experts at issue. *Id.* However, those are not the correct standards for evaluating whether a reply brief or rebuttal report are proper. Plaintiff will respond to any motions Defendants make in this regard if, as, and when they are made.

[10] *In re Term Commodities Cotton Futures Litig.*, 12-cv-5126, 2022 WL 485005 (S.D.N.Y. Feb. 17, 2022), (certified CEA and Sherman Act class included two cotton futures contracts and "cotton on call" contracts involving physical cotton during a non-consecutive, 66-day class period and where class included intraday traders, spread traders, cotton merchants, hedgers, and speculators, as well as cash market participants), *petition for review denied*, 22-472 (2d Cir. 2022); *Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003 (N.D. Ill. 2020) (certified CEA and Sherman Act class included two wheat futures contracts and dozens of different option contracts on such wheat futures contracts during 43-day class period and where class included intraday traders, spread traders, hedgers, wheat millers, and speculators) *petition for review denied*, No. 20-8001 (7th Cir. 2020); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469 (N.D. Ill. 2007) (certified CEA class included persons and entities who purchased a U.S. Treasury note futures contract to liquidate a short position in such contract during 55-day class period), *aff'd*, 571 F.3d 672 (7th Cir. 2009); *In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366 (S.D.N.Y. 2010) (certified CEA class included persons and entities who purchased and sold at least 14 natural gas futures contracts during 224 day class period and where plaintiffs alleged defendants artificially inflated natural gas spread prices through dominant positions and also artificially depressed the settlement prices of three different natural gas contracts by "slamming the close") *petition for review denied*, 10-4110-mv (2d Cir. 2010); *In re Nat. Gas Commodities Litig.*, 231 F.R.D. 171 (S.D.N.Y. 2005) (certified CEA class included persons and entities who purchased and sold dozens of different natural gas futures contracts during a three-year class period where defendants were alleged to have manipulated prices both up and down and where the class included numerous types of traders, including purchasers, sellers, speculators and hedgers), *petition for review denied*, (2d Cir. 2006); *In re Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998) (certified CEA class of purchasers of approximately 36 copper futures contracts during a two-year class period and also included both a "long subclass" and a "short subclass" in action where defendants were alleged to have engaged in a rolling manipulation); and *In re Sumitomo Copper Litig.*, 194 F.R.D. 480 (S.D.N.Y. 2000) (certified CEA class included purchasers of approximately 30 copper futures contracts traded over a non-consecutive, two and

from a few months to a few years to resolve. *Compare Kohen v. Pac. Inv. Mgmt. Co. LLC*, 05-cv-4681, ECF Nos. 290, 454, 456 (Rule 23(f) review resolved after more than 2.5 years) *with Ploss v. Kraft Foods Grp., Inc.*, 15-cv-2937, ECF Nos. 332, 345 (Rule 23(f) review resolved after 50 days).

For all the foregoing reasons, Plaintiff respectfully submits that the Court's analysis during the September 26 conference is correct. The depositions of the named Defendants and Plaintiff's very limited pursuit of subpoenas to pipeline and storage facilities should continue to proceed without any stay.

### D.  Defendants' Opposition To Class Certification Is Far From "Compelling"

Another disputed premise for Defendants' stay motion is that their opposition to class certification and their FRE 702 motion (ECF Nos. 353, 369 and 377) supposedly make "compelling" arguments. However, Defendants rely heavily on opinions of their expert, Dr. Hendershott, which Plaintiff has now demonstrated are flawed.  For example, Dr. Benjamin Goodrich opines that Dr. Pirrong correctly executed the TVP-VAR model whereas Dr. Hendershott failed to execute correctly Dr. Pirrong's TVP-VAR model. ECF 386, Ex. 4 (Goodrich Rebuttal) *e.g.,* ¶¶15-16, 18 and *passim* [emphasis added]. Similarly, Dr. Talis Putnins opines that Dr. Pirrong's work in his TVP-VAR model is reasonable and reliable but Dr. Hendershott's work in criticizing such model is not. *See* ECF 386, Ex. 3 (Rebuttal Expert Report of Dr. Talis Putnins) *e.g.,* ¶¶15-16, 19-24, 27, 113 and *passim*.

Next, Defendants' supposedly "compelling" opposition to class certification actually concedes the ascertainability, numerosity, commonality, and counsel adequacy showings by Plaintiff. ECF 369, 377 *passim.* As to those elements which Defendants do contest, they repeatedly rely upon the wrong legal standard.  *Compare* ECF No. 390 pp. 27, 31-39, 54 (demonstrating that Defendants

---

one-half-year class period where defendants were alleged to have engaged in a rolling manipulation) *petition for review denied*, 262 F.3d 134 (2d Cir. 2001).

rely upon the wrong standard). Further, Defendants' opposition to class certification is repeatedly handicapped by Dr. Hendershott's numerous failures to contest Dr. Pirrong's opinions. *Compare* ECF 391, ¶¶45-68 *with* ECF 390, pp. 6-7 (Dr. Hendershott failed to respond to Dr. Pirrong's statistical probability analysis showing that, absent manipulation, there was a near zero chance that the all-time record WTI price decrease on April 20 followed by the all-time record WTI price increase on April 21) and pp. 6-11 (Dr. Hendershott did not analyze whether supply and demand could explain the all-time record increase in WTI prices on April 21); *Mish I* at 1091 (the extreme bounce back in prices on April 21 plausibly indicates that prices were manipulated on April 20).

## CONCLUSION

Plaintiff should be permitted to go forward promptly with the depositions of the named Defendants, the non-party discovery with the remaining tank and pipeline owners, and discovery generally.

Dated: October 4, 2024

Respectfully submitted,

*/s/ Christopher M. McGrath*
Christopher Lovell
Christopher M. McGrath
Benjamin Jaccarino
Travis H. Carter
**LOVELL STEWART HALEBIAN**
**JACOBSON LLP**
500 5th Avenue, Suite 2440
New York, New York 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

Marvin A. Miller
Andy Szot
**MILLER LAW LLC**
53 W. Jackson Boulevard, Suite 1320
Chicago, Illinois 60604
Telephone: (312) 332-3400

*Counsel for Plaintiff and Proposed Class Counsel*