UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MISH INTERNATIONAL MONETARY INC., on behalf of itself and all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>VEGA CAPITAL LONDON, LTD., *et al.*,<br><br>*Defendants.* | Case No. 1:20-cv-04577<br><br>Judge: Hon. Manish S. Shah |

**Plaintiff's Motion To Compel Defendants Vega Capital And Adrian Spires To Produce Documents**

**FILED UNDER SEAL**

CORRECTED COPY

## Errata

| Page or Paragraph No. | Change |
|---|---|
| Page 1 | Inserted "and among the parties, including" before "Defendants Spires" and inserted "allegedly" before "caused the" |
| Page 1 | Moved ")" from after footnote 1 to before footnote 2. |
| Page 3, paragraph 2 | Deleted comma after "has ammo'" and moved "to which" to be before "the response" |
| Page 4, paragraph 2 | Removed quotations from "flexing" to eliminate any inference that this was stated by the VTDs |
| Page 6, heading "B" | Changed "Limitation" to "Limitations" and inserted "Including The Limitation" before "Solely To" |
| Page 8, footnote 10 | Deleted "Demetriou" and changed "four" to "three" |
| Page 11, paragraph 20 | Inserted "Plaintiff plausibly alleged that" before "Vega, Spires," |
| Page 14, paragraph 24(b) | Changed "ownership and voting" to "ownership of voting" |
| Page 14, paragraph 26 | Moved "without explanation" from after "are not relevant" to after "simply argued" |
| Page 14, paragraph 26 | Changed "not only" to say "also" and inserted "and" between "how what" |
| Page 14, paragraph 26 | Inserted final sentence to paragraph. |

**TABLE OF CONTENTS**

A.  Request #1 Of Plaintiff's Third Request Seeks Highly Relevant Documents Which (i) Relate To Futures Trading, And (ii) Use Any Of The Following Terms: "ammo" or "ammunition", "late!", "blitz!", "keep selling", "every 5 points", "thin", "don't tell", "push! each other", "are you /3 add!", "smash!",  "every 5 ticks", "trad! alert", "trade together", "manipulat!", or "aggress!"……………………………………..…………………………………………2

B.  Request 1. The Court Should Overrule Defendants' Limitations On Their Search For Documents Responsive To Request 1, Including The Limitation Solely To Documents Relating To The April 2020 And May 2020 Contract……………………………………...6

C.  Requests 13 and 14 Seek Highly Relevant Documents Which Reflect, Relate to, Or Explain Financial Transactions Between Or Among Vega/Spires, And The Vega Traders Or Related Parties………………………………………..………………………………………………….11

D.  Conclusion………………………………………………………………..…………………14

**Table of Authorities**

Page(s)

Cases

*Cange v. Stotler & Co.*,
  826 F.2d 581 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In The Matter of Indiana Farm Bureau Cooperative Ass'n, Inc.*,
  1982 WL 30249 (CFTC Dec. 17, 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mish Int'l Monetary Inc v. Vega Cap. London Ltd*,
  596 F.Supp.3d 1076 (N.D. Ill. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 11

*Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*,
  648 F. Supp. 3d 980 (N.D. Ill. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

*Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*,
  2025 WL 1744895 (N.D. Ill. June 24, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 11

**Statutes**

7 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Rules**

Fed R. Civ. P. 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

Fed R. Civ. P. 37(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff Mish International Monetary, Inc. ("Plaintiff") respectfully moves this Court for an order directing defendants Vega Capital London Ltd. ("Vega") and Adrian Spires ("Spires") to produce two categories of documents (including but not limited to WhatsApp communications and emails): 1) documents containing the manipulative terminology used by the Trader Defendants (many of these search terms have already been relied on by this Court in its two immediately prior rulings (see ¶¶1-2 below and Exhibit A hereto listing the search terms and the amount of hits)), and 2) documents reflecting financial transfers between and among the parties, including Defendants Spires (the sole owner of Vega) and Defendant Paul Commins (Commins was the self-described leader of the group of Vega Trader Defendants ("VTDs")[1] whose cumulative trading allegedly caused the all-time record price decline in the May 2020 NYMEX West Texas Intermediate ("WTI") Light Sweet Crude Oil futures contracts ("May Contract") on April 20, 2020).[2]

These documents are responsive to Requests 1, 13, and 14 in Plaintiff's Third Request For Production Of Documents And Electronically Stored Information Directed To Defendants dated February 17, 2023 ("Third Request").

The Parties have engaged in numerous meet and confers, but reached impasse on the issues in this motion. *See* Declaration of Benjamin M. Jaccarino, Esq., ("Jaccarino Decl.") Ex. A

---

[1] Defendant Spires and Vega Capital admitted to the Chicago Mercantile Exchange ("CME") during the CME's investigation into the events on April 20, in response to the question " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CF371-1 *passim*.

(Local Rule 37.2 certification); Ex. B (Third Request); *See also* Ex. C (Defendants' objections to Plaintiffs' Third Request).

Although Plaintiff certifies that the parties have negotiated in good faith and reached impasse on these issues, Class Counsel believe that the categories of withheld documents subject to this motion are not just relevant but, by far, the most important documents in Plaintiffs' proof of the claims herein.

- A. **Request #1 Of Plaintiff's Third Request Seeks Highly Relevant Documents Which (i) Relate To Futures Trading, And (ii) Use Any Of The Following Terms: "ammo" or "ammunition", "late!", "blitz!", "keep selling", "every 5 points", "thin", "don't tell", "push! each other", "are you /3 add!", "smash!", "every 5 ticks", "trad! alert", "trade together", "manipulat!", or "aggress!".**

1.  Except for the last five search terms, **all** of the other above search terms encompass words that were expressly used by the Trader Defendants in their communications to coordinate, execute, and conceal their alleged manipulation of the May Contract on April 20, 2020. *Compare* Exhibit A hereto (providing cites to the SAC, ECF 130) *with* Jaccarino Decl. Ex. B (Plaintiffs Third Request). Moreover, except for the last six search terms, all of the above search terms encompass words which this Court expressly relied upon in its prior decisions denying the motions to dismiss and certifying the Class. For example, in *Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*, No. 20 CV 4577, 2025 WL 1744895 (N.D. Ill. June 24, 2025), *petition denied,* No. 25-8013 (7th Cir. August 20, 2025) ("*Mish III*"):

> Evidence of communication between the traders also serves as **common evidence to prove the existence of a conspiracy, "uneconomic" motive, or manipulative intent**. *See Mish I*, 596 F.Supp.3d at 1092–95, 96–98. The traders exchanged messages during and shortly after the class period, [129] ¶¶ 166–79, 311:
> • "Just **keep selling** it every 5 points"
> • "I've got 300 left for **late**"
> • "Fucking mental. I wanna see negative WTI"
> • Lunn asked, "I'm short 160 spreads and 40 wti... **Are you boys adding** to this?" and Younger responded, "I'm short 1250 and 500 not doing anymore until **late**"

2

> • Demetriou asked, "is everyone short ti front" and Paul Commins responded, "Yep but not loads"
> • "We **pushed each other** so hard for years for this one moment... And we fucking **blitzed** it boys"
> • "Please **don't tell** anybody what happened today lads x"
> • "Do **not tel** [*sic*] a fucking soul what's happened"
> …
> ["You've got to think [e]veryone is going to have **ammo**"]

*Id.* at *12-13. [Emphasis supplied to those terms quoted by the Court which are included as search terms in Plaintiffs' Request #1.] Likewise, in denying the motions to dismiss, this Court again reasoned that six of the above specified terms are probative of "real time trade coordination", and manipulative intent, and that some terms were "strongly indicative of coordination".[3]

    2.    Regarding Defendants' statements that "you've got to think everyone has ammo" to which the response was "I've got 300 left for late" (*see* SAC ¶215; Exhibit A hereto), regulators in the United Kingdom and United States[4] have explicitly warned that traders

---

[3] In *Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*, 596 F. Supp. 3d 1076, 1086, 1088, 1094 (N.D. Ill. 2022) ("*Mish I*"), this Court, in denying the motion to dismiss, characterized Defendants' statements as "reflecting real-time trade coordination and others strongly indicative of coordination, such as
>  [j]ust **keep selling** it **every 5 points**," "[y]ou've just got to **keep selling**," "I'm short 160 spreads and 40 wti .... **Are you boys adding** to this," "is everyone short ti front," to which the reply was "[y]ep but not loads," "[f][******] mental. I wanna see negative WTI prices," "[w]e **pushed each other** so hard for years for this one moment ... And we f[******] **blitzed it** boys," and "[p]lease **don't tell** anyone what happened today lads x." Doc. 40 at ¶¶ 165-180, 192.

[Emphasis supplied].

[4] In ISDAFix, the CFTC stated that "…traders would use limited "ammo" and timing techniques to attempt to manipulate…".
https://www.cftc.gov/sites/default/files/idc/groups/public/@lrenforcementactions/documents/legalpleading/enfroyalorder020317.pdf. The CFTC, in providing "Examples of Misconduct in Private Chat Rooms", discusses the use of the word "ammo". In an example under the heading, "Traders Share 'Ammo'", the CFTC quotes a conversation where traders at different banks discuss "more ammo for you…."
https://www.cftc.gov/sites/default/files/idc/groups/public/@newsroom/documents/file/hsbcmisco

3

sometimes use the phrase "ammo" or "ammunition" to mean the trades / trading power to move prices. Consistent with the reasoning in this Court's above mentioned law of the case, and such government warnings about traders' use of "ammo" to move prices, all of the search terms listed in Heading "A" are probative of the coordinated scheme the VTDs executed through Vega on April 20, and many times before, albeit in smaller quantities. *See e.g.*, ¶4. Additional search terms (reflecting statements by VTDs that they " ▮▮▮▮ it or " ▮▮▮▮ it in the May Contract), are also indicative of flexing, i.e., stating that they had succeeded in causing (extreme) May Contract price declines. The totality of Defendants' statements plus the economic analysis of the VTDs' trading records supplied by Plaintiffs' expert on class certification[5] are strongly supportive of Plaintiffs' claim that Defendants manipulatively ramped up the amounts, frequency, and aggressivity of their selling in the May Contract during the last 30 minutes of trading. ECF 312-1, Pirrong Rep. ¶¶ 228-232, 240-243, 249-259, and 384-386; *see also* fn. 13 *infra*.

3. Specific intent to manipulate has been called the "*sine qua non* of manipulation." *In The Matter of Indiana Farm Bureau Cooperative Ass'n, Inc.*, No. 75-14, 1982 WL 30249, at *6 (CFTC Dec. 17, 1982). The use of words by the VTDs betraying an intent to manipulate, and or their success in manipulating prices, have been very helpful (and likely the

---

nduct111114; *See also* pdfhttps://fcalegacy. videomarketingplatform.co/secret//62508029/a45a0407be96952c359daa5be8158bcc (video presentation showing multiple firms using the phrase "leaving you with the ammo" as part of the collusive conversation in an attempt to fix and move rates); see also FCA Final Notice against UBS, https://www.fca.org.uk/publication/final-notices/final-notice-ubs.pdf ; https://www.ft.com/content/47c32ec4-6a34-11e4-8fca-00144feabdc0 (same)

[5] ECF 312, Exhibit 1 Class Certification Report of Professor Craig Pirrong, par 249-256, 258-259 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.)

4

key element) in Plaintiffs' evidence and allegations thus far.[6] Thus, documents responsive to the search terms in Heading "A" are (under the implications of this Court's prior opinions) important to the outcome of this case. *See* FRCP 26(b)(1).

4. Moreover, Plaintiff contends that Defendants' April 20, 2020 manipulation of the **May Contract** is merely **the last** in a very long line of manipulations which the VTDs undertook through Vega and Spires. *Compare* SAC ¶¶262-275 (manipulation of the April Contract) *with Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*, 648 F. Supp. 3d 980, 991 (N.D. Ill. 2022) ("*Mish II*") (finding that Plaintiff plausibly alleged that the VTDs manipulated prices on the penultimate day of trading in the April 2020 WTI Contract, through essentially the same methodology that the VTDs used to manipulate May Contract prices on its penultimate day trading) *and* SAC ¶¶255-258, 282.[7] See also Request 37 of Plaintiffs Third Request which specifies ten (10) other dates and futures contracts. Jaccarino Decl. Ex. B.

5. In the foregoing context, Defendants do not raise any relevance objection to any search term reflected in Request 1.[8] Instead --- objecting on grounds of proportionality, burden,

---

[6] Intent to manipulate and success in manipulating prices are the key elements of Plaintiffs' claims for manipulation and aiding and abetting manipulation under the Commodity Exchange Act, 7 U.S.C. § 1 *et seq*. *See Mish I* at p. 1095-1098. Making an agreement to coordinate to depress prices, along with actual success in depressing prices, are the key elements of Plaintiffs' civil claim for damages under Section 1 of the Sherman Antitrust Act. *See Mish I* at 1092.

[7] SAC ¶¶255-258, 282 cite to and quote from two British Crime Journalism award winning articles reporting, among other things, that, prior to April 20, 2020, the Vega Traders "regularly" engaged in trading "in unison" in order to move prices, and that Defendant Paul Commins and other VTDs traded as floor brokers on the International Petroleum Exchange where TAS manipulation was reportedly common; these statements were attributed to sources who had either seen the trading records at Vega, or had personal knowledge, and, in one instance, the source was named in the article. Jaccarino Decl. Exs. I and J.

[8] **REQUEST 1:** All Documents sent, generated, or received by any Defendant to or from another Defendant or other Person relating to Futures Trading which contain any of the following Search Terms: "ammo" or "ammunition", "late!", "blitz!", "trade together", "keep selling", "every 5 points", "every 5 ticks", "thin", "don't tell", "push! each other", "smash!", "aggress!", "are you /3 add!", "trad! alert", or "manipulat!".

5

and overbreadth --- Defendants seek to limit their search (and hence their production) solely to documents (a) relating to the April 2020 or May 2020 Contract, (b) which were sent to or from Vega, Spires or the VTDs, (c) between January 1, 2020 and April 30, 2020, and (d) which are in the "possession" (but not custody or control) of Vega. Jaccarino Decl. Ex. C, p. 3. Defendants' above-described search objections/limitations should each be overruled because they would exclude key evidence of Vega/Spires knowledge, intent, and repeated red flags indicating that Defendants' sought to cause self-fulfilling prophecy movements in prices which improved the financial outcome of their trades.

> **B. Request 1. The Court Should Overrule Defendants' Limitations On Their Search For Documents Responsive To Request 1, Including The Limitation Solely To Documents Relating To The April 2020 And May 2020 Contract.**

6. Responsive documents indicating ammo, manipulative, or other questionable trading by Vega in futures contracts other than the April 2020 or May 2020 futures contract are highly probative of the knowledge and intent of Vega and Spires. These Defendants had a duty to identify any potential manipulation resulting from Defendants' trades. To satisfy their duty, they had to be aware of the character and nature of the VTDs' trades through Vega prior to the April 2020 and May 2020 Contracts. In fact, they should have had a file pertaining to all such documents.

7. Accordingly, Defendants' proposal to limit their search solely to the May Contract and April Contract, would eliminate all of the other tip offs of the manipulative character of the VTDs' trading in unison to move futures contract prices. *See e.g.,* ¶¶4, 9-10.[9]

---

[9] For example, Documents reflecting that the VTDs engaged in the type of trading described in the search terms in heading "A" are highly relevant to the issues of intent to manipulate, agreement to manipulate, knowledge of the manipulative character of the manipulative trading of the VTDs, willful assistance in such manipulative trading, and other elements of the claims. *E.g., Mish II* at *991 (because Vega/Spires had observed facts indicating a manipulation of one

8. Vega/Spires should be directed to search for and produce documents responsive to Request 1. This especially includes documents which relate to (a) trading by VTDs in any futures contract, or (b) the types of trading which the VTDs engaged in even if such documents do not specifically reference the VTDs. *See infra* and fn. 7, 9.

9. Likewise, Defendants' objection limiting the responsive documents to those sent to or from Vega, Spires, or the VTDs, excludes documents sent to ▓▓▓▓▓▓▓▓, Vega's risk officer. It also excludes documents sent to numerous persons who had email accounts with Vega over which Vega has custody and control. These documents/email accounts include all of the VTDs, the accounts who were supervised by or associated with the VTDs, accounts of the dismissed Defendants (▓▓▓▓▓▓▓▓▓▓▓▓), traders with whom the VTDs shared money, and traders who were on Zoom, Facetime, or other calls with various VTDs during the April 20 trading day. See Jaccarino Decl. ¶15. The use of the manipulative probative terms in such emails by such persons is at least relevant evidence to the claims against the VTDs, Vega, and Spires. Discovery of responsive documents sent to or from these additional custodians are more than reasonably calculated to obtain even more candid descriptions of the VTDs manipulation recipe, including its adverse consequences for others and creation of profits for the VTDs and their acolytes. And, concomitantly, the legal risks for Vega and Spires.

10. The controlling agreement between Vega and the VTDs is the Vega-FTF Group Trade Agreement, which was dated "2017". Given the importance of tip offs to Vega of the manipulative character of the VTDs' trading, Plaintiff respectfully requests that the Court order

---

contract, the April 2020 WTI Contract, Vega/Spires' affirmative acts of increasing credit limits for one VTD and Vega in connection with the May Contract, along with their financial interest and numerous other circumstances, gives rise to reasonable inferences, among other things, that Vega/Spires aided and abetted the manipulation and agreed with the VTDs to manipulate).

Defendants to search for and produce responsive documents generated, sent or received at any time between January 1, 2018 and April 30, 2020.

11. **Rule 26(b)(1) Proportionality**. Both "importance" factors of Rule 26(b)(1) strongly favor ordering Vega/Spires to search for and produce documents generated, sent, or received at any time between January 1, 2018 and April 30, 2020. Documents showing that the VTDs engaged in ammo or other manipulative trading prior to the events in the April Contract are very "important" to key disputed issues in this action, including the knowledge of Vega and Spires (including tip offs) that the VTDs method of ammo ramp ups or other conduct constituted or could be manipulative conduct.[10]

12. **Amount in Controversy**. The controversy exceeds $1 billion. *Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.,* No. 20 CV 4577, 2025 WL 1744895, at *18 (N.D. Ill. June 24, 2025) (citing to the calculations of Defendants' experts). This extraordinarily high amount and the "importance" of the documents to the litigation support an Order compelling compliance with Request 1.

---

[10] The information in the SAC supports the inference that VTDs Commins, Pickering, and Roase have engaged in the same type of ammo trading to move TAS prices since the last century on the International Petroleum Exchange ("IPE"). These three persons, especially Defendant Paul Commins, helped train and guide the other VTDs who continued that course of action. See fn. 7. As this Court has previously found or indicated, the use of these terms by the VTDs portrays the manipulative character of their trading. *Compare Mish I* at 1092–95, 96–98 *with Mish II*, at 991 *and Mish III* at *12-13. The more such documents that are produced, the greater the importance this discovery will have to a resolution of the issues and the entire action. Likely, the more documents that are produced, and the more progress made by Plaintiff in this Action, the more likely that TAS abuse manipulations will be reduced. *Cange v. Stotler & Co.,* 826 F.2d 581, 594–95 (7th Cir. 1987) (the Court of Appeals explicitly held that the private right of action under the CEA is "critical" to the integrity of futures market).

13. **Defendants' Resources**. (a) The resources of the Vega Trader Defendants[11] ("VTDs") include their $632 million of profits from their alleged manipulation of the May Contract, and also include very substantial additional monies and real properties. Vega withheld large sums of money from the VTDs' profits and/or otherwise reflected large amounts of cash (£426,020,241) or (£56,865,421) as of its May 31, 2020 and May 31, 2021 financial statement. But then a series of transactions happened between and among Spires, Paul Commins, Paul's wife, ▓▓▓▓▓▓▓▓ and the Paul ▓▓▓▓▓▓▓▓ owned company, Futures Trading Facilities Ltd. ("FTF"). *See* ¶¶20, 24 *infra*. After and as a result of those transactions, Spires owned all voting control of FTF, Spires called FTF no longer to be a reporting company, and Vega reflected only £2,077,957 in cash (but a £4,634,871 trade credit) in its May 31, 2022 financial statement. *See* ¶24 *infra*.

(b) Vega's resources also include funds received pursuant to its "oral" agreement to share in the trading profits of at least two specified VTDs as well as the profits of *any* other Vega traders in which FTF had an interest. SAC ¶¶36, 122, 214, 217-222. FTF was the company which made the original contract with Vega pursuant to which the Vega traders conducted their trading with and through Vega. SAC ¶¶210-214. Plaintiff does not know Mr. Spires' personal finances, but has reason to believe he has ownership interest in a crypto trading firm, Onix Capital. In all events neither Vega nor Spires has asserted they do not have the resources to respond to Request 1 (and Plaintiff believes that any such assertion made on this motion should not be believed). See *infra*.

---

[11] The Trader Defendants include Paul Commins, Aristos Demetriou, Christopher Roase, George Commins, Henry Lunn, Connor Younger, Matthew Thompson, James Biagioni, Elliot Pickering and Paul Sutton.

14. **Relative Access.** The requested discovery is in the sole possession of Vega and Spires and Plaintiff has no custody or control over Vega/Spires documents.

15. **Number of Hits.** Vega/Spires have informed Plaintiff of the number of hits each search term produces: "ammo": 799; "ammunition": 2,118; "blitz!": 428; "trade together": 93; "keep selling": 124; "every 5 points": 40; "every 5 ticks": 24; "thin": 7,376; "don't tell": 144; "push! each other": 85; "smash!": 2,077; "aggress!": 34,229; "are you /3 add!": 497; "trad! alert": 896; "manipulat!": 14,673. See Ex. A hereto.

16. Four terms have hit counts of less than 100. Eight terms have hit counts of less than 500. Ten terms have hit counts of less than 1,000. 15 of the 16 identified search terms resulted in a total of 63,603 "hits" for the entire 2018-2019 period and also without the April and May 2020 contract limitation imposed by Vega and Spires. *Id*. It is highly likely the foregoing number of "hits" is substantially inflated because of the duplication of communications across numerous email accounts, *e.g.*, an email sent to each of the ten Vega Trading Defendants would be ten hits even though it is one email.

17. The sixteenth search term is the word/term "late*". It generated approximately 205,000 hits. Vega and Spires negotiated in good faith through multiple meet and confers (*see* Jaccarino Decl. Ex. A, Local Rule 37.2 Certification), but impasse was reached. As part of the impasse, Vega and Spires refused to provide Plaintiff with additional hit counts for variations in the search terms for "late." As a result, Plaintiff cannot provide the number of hits for their following proposal. Specifically, Plaintiff proposes Defendants produce documents in which the search term "late*" appears within 7 words of "sav*" or "have" or "for" or "trade*" or "add*" or "buy" or "sell" or "spread" or "WTI" or "crude" or "NYMEX" or "CME" or "gas" or "Brent" or "CL" or "TAS" or "until".

18. Other than the word "late", almost one half of the hits are on the search phrase "aggress!". Although the word "aggress!" is not one of the words used by the VTDs, it has been used by regulators, including in connection with the VTDs' conduct.[12]

19. Aggressive trades move prices. This is a trade manipulation case. Thus, Plaintiff's economist and the Court's prior decisions have focused on aggressive trades.[13] See accompanying Mem. of Law pp. 3-4 (collecting cases in which many more hits than here have been ordered to be produced).

### C. Requests 13 and 14 Seek Highly Relevant Documents Which Reflect, Relate to, Or Explain Financial Transactions Between Or Among Vega/Spires, And The Vega Traders Or Related Parties.

20. This Court held that Plaintiff plausibly alleged that Vega, Spires, Defendant Paul Commins, and the other VTDs combined, conspired, and agreed to depress May Contract prices and work together specifically intending to manipulate May Contract prices, all in violation of the Sherman Antitrust Act and the Commodity Exchange Act. *Mish I* at 1089. Plaintiffs' Requests 13 and 14 (*see* Jaccarino Decl. Ex. B) seek documents relating to (a) Defendant Spires' acquisition of voting control of FTF, (b) any transactions between Vega Capital or Spires and FTF, Defendant Paul Commins, ▮▮▮▮▮ or ▮▮▮▮▮ including relating to Spires' acquisition of voting control of FTF, and (c) any related agreements or understandings, as

---

[12] *E.g.*, the CME stated: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Jaccarino Decl. Ex. K, p.4.
[13] Plaintiffs' economist focuses on Defendants' aggressive, extremely aggressive, and also their large extremely aggressive trading. ECF 312-1 at 10, 13, 14, 21, 154-161, 228-232, 237-243, 250-259, 281, 289, 292, 298, 301-314, 351; ECF 386-1 at 5-6, 8-13, 35, 41, 59, 61, 62, 154, 177, 309, 364, 374, 469, 473, 581-584; *see also Mish*, 2025 WL 1744895, at *9-12 *with Mish I*, 596 F. Supp. 3d at 1089, 1095-1096, *and Mish II*, 648 F. Supp. 3d at 987.

11

well as documents relating to sharing of profits, or other financial transfers between Vega Capital or Spires and Defendant Paul Commins or others relating to this transaction.

21. Plaintiff alleges substantial financial interests of Vega/Spires in the trading profits of specific Trader Defendants and **also** in any Vega Trader in whose trading profits FTF had an interest. SAC ¶¶36, 122, 210-223. Plaintiff plausibly alleges facts indicating large financial transactions among the Defendants, prominently including, but not limited to Paul Commins, Adrian Spires, and Vega. SAC ¶¶122, 124, 210-223.

22. In this context, the documents sought by Requests 13 and 14 are highly relevant and even may show a pay off or other consideration paid by the conspirators who made substantial trading profits from the manipulation to the conspirators (Spires and Vega Capital) who made less profits (according to the records so far).

23. The foregoing financial transactions among conspirators are highly relevant. Among other things, they may tend to confirm there was an agreement and reveal further terms of the agreement. Likewise, they may show whether payoffs were made. And they may otherwise show why consideration was being exchanged among the alleged conspirators.

24. (a) As of May 31, 2020, Vega publicly reported that it was holding £426,020,241 in cash/funds as an asset, but also reflected a trade credit owed for a comparable amount. *See* Jaccarino Decl. Ex. E (Companies House Filing on May 31, 2020 reflecting the £426,020,241). It is extremely likely that these funds were being withheld from the Vega Traders by Vega pursuant to its agreement with FTF. Jaccarino Decl. Ex. D (Vega Capital–FTF agreement provision 5.8 █████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████ and 20.3 ████████████████████████████████████

████████████████████████████████████████████████████████████

██████████ [emphasis supplied].)

(b) But then, eleven months later, on April 1, 2021, a series of transactions occurred between and among Spires, FTF, Paul Commins, and the other two owners of FTF (Commins' wife ██████ and ████████████ a former and perhaps also a then current trader at Vega who was on a Facetime call with Paul Commins during the trading on April 20, 2020). SAC ¶¶210-211; Jaccarino Decl. ¶15. This series of transactions provided Spires with 100% ownership of voting control over FTF. *Id*. On December 2, 2021, Defendant Spires filed an application to strike FTF from the Companies House register and the dissolution became effective on March 1, 2022. SAC ¶212. *As a result, there was no future reporting of the assets which FTF held.*

(c) Next, approximately two months later, Defendant Vega reflected, as of May 31, 2021, that its cash held had plummeted to £56,865,421 with a trade credit of £56,348,757. Jaccarino Decl. Ex. F.

(d) But, on May 31, 2022, Vega Capital reflected cash on hand £2,077,957.00 with a trade credit of £4,634,871. Jaccarino Decl. Ex. G.

25. Plaintiff's inferences from the above series of transactions are (1) Vega Capital and Spires should not be believed if they say they can't afford to search for documents; (2) FTF has control over money, and Spires is the sole owner of FTF, which has ceased to be a public reporting company; (3) the alleged conspirators are beginning to alienate and remove assets from public scrutiny in order to provide some benefits which further the alleged conspirators' interest in avoiding an adverse judgment and any successful collection against them.

26. Defendants object on the grounds of "relevance" and "overbreadth". First, the above recitation is based solely on steps that made their way into a public filing. Compelling Defendants to produce all responsive documents would be very likely to reveal further transactions between and among the alleged conspirators post April 20, 2020. Second, even the (likely tiny) portion of the financial transfers among Defendants are highly relevant. First, they show financial transfers after the alleged manipulation involving two alleged conspirators. Second, they show that the original company (FTF) that made the contract with Vega to which most or all Trader Defendants subscribed and signed in order to embody the agreement of each of them with Vega, is now in the hands of Defendant Spires. Third, Defendants have declined to give any reasons for these transfers and, instead, have simply argued without explanation that the transfers are not relevant. Fourth, in light of the suggestive quid pro quo conduct some portion of which appears in the public record, production of responsive documents may also shed light on the alleged conspiracy based on how and what the alleged conspirators are now paying and receiving from one another. See also accompanying Memorandum of Law pp. 4-6 (financial transactions among alleged conspirators are relevant). The above showings in this Motion clearly demonstrate that the highly relevant discovery sought by Requests 13-14 are proportionate to the needs of this important case and that the specified financial transaction information would not be unduly burdensome for Vega and Spires to produce.

### D. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion.

Dated: September 12, 2025

Respectfully submitted,

*/s/ Christopher Lovell*
Christopher Lovell
Christopher M. McGrath
Benjamin M. Jaccarino
**LOVELL STEWART HALEBIAN JACOBSON LLP**
500 Fifth Avenue, Suite 2440
New York, New York 10110
Telephone:  (212) 608-1900
Facsimile:  (212) 719-4775

Marvin A. Miller
Andy Szot
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, Illinois 60603
Telephone:  (312) 332.3400

*Counsel for Plaintiff*