**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MISH INTERNATIONAL MONETARY INC., on behalf of itself and all others similarly situated, *Plaintiff*, v. VEGA CAPITAL LONDON, LTD., et al., *Defendants*. | Case No. 1:20-cv-04577 Hon. Manish S. Shah Magistrate Judge Jeffrey T. Gilbert |

## VEGA CAPITAL LONDON LIMITED AND ADRIAN SPIRES' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendants Vega Capital London Limited ("Vega") and Adrian Spires ("Spires") respectfully submit this Opposition to the Motion to Compel the Production of Documents filed by Plaintiff Mish International Monetary Inc. ("Mish").

## INTRODUCTION

Mish seeks the production of (i) communications regarding any futures contract for three years from a large group of individuals and companies (including communications not to or from Defendants) so long as the communications include one of Mish's fifteen search terms; and (ii) records of any financial transactions involving Vega or Spires and three individuals and one company or any agreement at any time between Spires and one of Defendants, Paul Commins, relating to any business matter. Mish's production demands are overbroad, seeking documents not relevant to a claim or a defense and seeking documents that are not proportional to the needs of the case. Mish's motion to compel ignores the substantial productions that Vega and Spires have made, including documents that undercut Mish's allegations and show why its overbroad demands are not proportional to the needs of the case.

1

**BACKGROUND**

Two points should be considered as context in determining Mish's motion to compel. First, Mish has already received substantial discovery showing that its claims against Vega and Spires are without merit, which should limit Mish's demands to obtain even more far-reaching discovery. Second, Vega and Spires made substantial document productions to Mish and made significant offers to compromise Mish's demands for additional documents, though those offers were rejected by Mish.

**I.    Mish Has Already Received Evidence Contradicting the Theory of Its Case Against Vega and Spires**

The Court previously permitted Mish to survive Vega and Spires' motion to dismiss the Second Amended Complaint based on the "critical" allegation that Vega raised its position limits on April 20, 2020 for its master account and for one trader. ECF 189 at 12 (Feinerman, J.). At the time, the Court acknowledged Vega's defense that it raised its position limits for its master account to ease the transition for traders to a new trading platform, but stated it could not consider that defense on a motion to dismiss. *Id.* at 13. Vega has since produced evidence to Mish that Vega ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. For instance, Vega produced the following emails and text messages to Mish:

- ▓▓▓▓▓▓▓[1] Trader Paul Sutton informs Vega's Risk Manager, ▓▓▓▓▓▓ Ex. 1.   Here, Sutton was referring to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1]    British Summer Time ("BST") is one hour ahead of the Coordinated Universal Time (UTC), the time zone used as the default standard in the printout of the chats in Exhibits 1 and 3.



The "critical" inference relied upon by Mish to survive the motion to dismiss – and to impose extensive discovery obligations on Vega – was simply untrue.[2]

---

[2]   The same was true for the request by one trader for an increase in position limits. Vega and Spires produced the relevant email in discovery, which shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 4. There is no evidence to suggest that this request by one trader for an increase in position limits should have been perceived as anything other than the ordinary course of business.

3

Vega also produced documents to Mish reflecting that Vega and Spires were not on notice of any alleged concern about trading on the days alleged by Mish. Vega produced trading alerts generated by G.H. Financials' trade surveillance system that it received for the time period from January 1, 2020 through April 30, 2020 regarding the Trader Defendants or the April or May Contract. That production allowed Mish to see that Vega and Spires did *not* receive trading alerts on March 19 for the April Contract or on April 20 for the May Contract – *i.e.*, the only specific contracts alleged by Mish in its Second Amended Complaint.

Moreover, the trading alerts that were produced demonstrated that Vega and Spires were not on notice of any improper trading on April 20. For instance, ████████████

████████████████████████████████████████████████████████████████████████████████████ *Id.*

It was not just discovery about trading alerts and position limits that undercut Mish's allegations. On ████████████████████████████████████████████████████████████████

████████████████████ Ex. 6. That article was authored by Owain Johnson, CME's Global Head of Research. There was no warning to Vega or Spires that they should not permit trading by traders who were shorting the May WTI Contract based on macroeconomic factors. *Cf. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) (observing that "short selling—even in high volumes—is not, by itself, manipulative" and "[t]o be actionable as

4

a manipulative act, short selling must be willfully combined with something more to create a false impression of how market participants value a security").

II.     **Vega and Spires Have Offered to Compromise with Mish about Its Discovery Demands Without Success**

Over the course of this case, Vega and Spires have produced over 57,000 pages of documents to Mish, responding to four different requests for document production by Mish. Vega produced, among other things, (i) communications sent to or from any of the Defendants and anyone else concerning the April or May WTI Contract from January 1, 2020 through April 30, 2020 and that also hit one of Mish's proposed 15 search terms; (ii) trading records for each of the Defendants from January 1, 2020 through April 30, 2020; (iii) trading alerts sent to Vega concerning either the Trader Defendants <u>or</u> the April or May WTI Contract between January 1, 2020 and April 30, 2020; (iv) Adrian Spires' mobile telephone records for the time period including April 20, 2020; (v) financial records reflecting the initial funding of the Trader Defendant accounts; (vi) records reflecting the transfer of funds from Vega's accounts at G.H. Financials to accounts at another financial institution; and (vii) correspondence sent to the CME following the trading on April 20, 2020.

Mish has obtained additional extensive records from third parties, including from G.H. Financials and Trading Technologies. While Vega and Spires objected to the production of trading records before 2020, Mish obtained those trading records from G.H. Financials for *all* products and *all* Vega traders from the Vega master account between January 1, 2019 and June 30, 2020. That production would allow Mish to make arguments about any of the traders trading the April or May Contract or any other product through the Vega account with G.H. Financials. The production also allowed Mish to corroborate that G.H. Financials did not send trading alerts

5

to Vega or Spires about the Trader Defendants' trading of the April Contract on March 19 or the May Contract on April 20, 2020

Through the meet and confer process (which lasted over a year's time), Vega and Spires tried to accommodate Mish's requests where it was feasible. For instance, at Mish's request and notwithstanding their objections, Vega and Spires searched for the term "ammo" or "ammunition" in communications about any futures contract between January 1, 2020 and April 30, 2020, and reported to Mish's counsel that the term was not found in any documents (aside from news articles). As a further compromise, Vega and Spires also offered to search for Mish's search terms in earlier periods when the terms did not impose a disproportionate burden, and ultimately offered to do so with respect to 11 of Mish's 15 search terms. Mish declined the offer. Vega and Spires therefore stood on their objections that applying the search terms outside the January-April 2020 time period and to other products besides the April and May Contracts will not lead to relevant evidence. Vega and Spires also stood on their objections that an unrelated transaction occurring a year after April 2020 was not relevant to showing anyone's conduct or intent in April 2020.

## **STANDARD OF REVIEW**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

## ARGUMENT

**I.  Vega and Spires Should Not Be Required to Apply the Search
     Terms in the Unreasonable and Burdensome Way Demanded by Mish**

Mish has demanded that Vega and Spires (i) apply Mish's broad search terms to communications from 2018 to 2019, (ii) search for communications regarding other contracts besides the April or May WTI Contracts referenced in the Second Amended Complaint, and (iii) search for communications not involving the Defendants in this case.  ECF 451-1 at 2-10.  Each of these arguments should be rejected.

### A.  Vega and Spires Should Not Be Required to Search
####    For Communications from 2018 through 2019

Communications from 2018 and 2019 are not relevant to Mish's claims, and their production is not proportional to the needs of this case.  Mish's claims relate to the trading of one product on one day in April 2020.  Vega and Spires have applied all of Mish's search terms to communications in a reasonable time period (January 1, 2020 through April 30, 2020) that gave Mish access to evidence needed to evaluate whether there was an effort to manipulate the market on April 20, 2020.   During oral argument, Mish's counsel acknowledged that "it's not necessary to go back to 2018," and conceded "nobody is gonna be talking about the April or May contract ahead of time.  You know, probably.  More than a month or two.  So it's pyrrhic to give a reasonable time period and limit it to the April and May contract."  ECF 454 at 5:20-23.  That explanation summarizes why communications from 2018 and 2019 will not be relevant to any claim or defense in the matter:  there is no reason to believe that anyone was communicating about the April or May WTI Contract in 2018 or 2019.

Nor will these communications be important to resolving the issues in the case. Compelling the production of communications from 2018 and 2019 would enmesh the Court in a

7

series of mini-trials as to whether there was allegedly market manipulation on days when Mish did not trade and has not asserted a claim. *MSP Recovery Claims, Series 44, LLC v. Zurich Am. Ins. Co.*, 2023 WL 5227396, at *19 (N.D. Ill. Aug. 15, 2023). Mish has already sought to create one mini-trial concerning the trading of the April WTI Contract on March 19, 2020. But the discovery already produced both by Vega and G.H. Financials showed that G.H. Financials did not send an alert from its trade surveillance system to Vega on March 19 or any subsequent day regarding the trading of the April WTI Contract by the Trader Defendants on NYMEX. When the productions from a reasonable period of time around the trading undercut Mish's belief there were "tip-offs" to Vega and Spires about improper trading, Mish should not be permitted to conduct a fishing expedition for communications from 2018 and 2019 in the hopes of finding "tip-offs" not present in 2020.

The Court should also consider the burden and expense that Vega and Spires would incur in applying Mish's search terms to communications from 2018 and 2019, particularly for those terms that resulted in the greatest number of hits. The four search terms that resulted in the greatest number of hits were: (i) "late!" (205,823 hits);[3] (ii) "aggress!" (34,229 hits); "manipulat!" (14,673 hits); and "thin" (7,376 hits). These words are frequently used in news articles and would impose substantial costs on Vega and Spires to review (likely in the hundreds of thousands of dollars in attorney time) with little-to-no expectation that this review would produce any document relevant to a claim or defense in this case.

---

[3] Mish wrongly states that "Vega and Spires refused to provide Plaintiff with additional hit counts for variations in the search terms for 'late.'" ECF 451-1 at 10. Vega and Spires provided Mish with hit counts for several variations of that term on August 4, 2023. As far as the proposal that Mish now lists on page 10 of its motion, Mish never made the proposal to Vega during the year that the parties met and conferred over these discovery disputes.

8

Mish argues that district courts "routinely permit discovery to go back two or more years before the start of the class period in antitrust cases." ECF 444 at 3. But there is no one-size-fits-all rule that dictates the scope of discovery in every case regardless of the context. Rule 26 requires the Court to consider "the needs of the case." *See also* Fed. R. Civ. P. 26(b)(1), 2015 comm. notes ("The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."). There is no mechanical right to receive discovery for a two-year period before the beginning of an alleged conspiracy regardless of the circumstances. The cases cited by Mish do not address a case where (1) the plaintiff's allegation is that there was a specific effort to manipulate a market on one day for a single product, (2) where the moving party survived a motion to dismiss based on a "critical" allegation that was shown to be based on a false inference and has received other discovery refuting other key allegations, and (3) where the party seeking discovery has had access to trading records as far back as 2019 but can only make conclusory allegations claiming that alleged unlawful conduct was repeated over and over. *See, e.g.*, ECF 451-1 at 5 (claiming without any elaboration that this was "merely the last in a very long line of manipulations which the [Vega Trader Defendants] undertook through Vega and Spires"). In these circumstances, expanding the time period back to 2018 is not proportionate to the needs of this case and would reward Mish with an unwarranted fishing expedition.

### B. Vega and Spires Should Not Be Compelled to Search for Communications Regarding Contracts Other Than the April and May WTI Contracts

Similarly, Vega and Spires should not be required to search broadly for communications involving contracts other than the April and May WTI Contracts. First, Vega and Spires already produced any trading alert received regarding any of the Trader Defendants for the first four

months of 2020, regardless of the contract or the product. As shown in Exhibit 5, ███████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████. The
production of these alerts gave Mish the opportunity to investigate any alerts issued concerning any futures contract and the Trader Defendants within a reasonable proximity to April 20, 2020. Moreover, in an effort to compromise during the meet-and-confer sessions, Vega and Spires also searched for the term "ammo" and "ammunition" in connection with any futures contract in 2020, and found no documents responsive to Mish's request.

The production of these alerts from 2020 have undercut Mish's arguments that there were warning signs or "tip-offs" given to Vega or Spires. For instance, the document productions from Vega and G.H. Financials confirmed for Mish that no trading alert was sent to Vega on March 19 (or thereafter) with respect to the April WTI Contract and that no trading alert was sent to Vega on April 20 with respect to the May WTI Contract.[4] ███████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████.
Ex. 5. Mish has received a reasonable opportunity to obtain evidence about supposed "tip-offs" and is dissatisfied that the evidence is not there (just like it was not there with respect to the position limits issue).

Given this fact-based context, Mish cannot justify a broad search and extensive review of communications regarding any futures contract traded by Trader Defendants for any time period. That is especially true when Mish received the trading records for all Vega traders (not just

---

[4] ████████████████████████████████████████████████████████████, but these trading alerts were all after-the-fact and cannot be construed as "tip-offs" to Vega and Spires on April 20.

Trader Defendants) for all contracts between January 1, 2019 and June 30, 2020. Notwithstanding this production, Mish has not been able to identify the existence of any allegedly manipulative trading regarding any specific contract, but simply continues to make conclusory allegations that there was a long series of efforts by Trader Defendants to manipulate the market "on a much larger scale than what they did on April 20." ECF 454 at 6:2-3. Mish should not be able to evade reasonable limits on discovery by relying on cryptic allegations about long-ago trading with no details or support.

### C. Vega and Spires Should Not Be Required to Search for Communications Not Sent or Received By Any of Defendants

Vega and Spires should not be required to search for communications not sent to or received by a Defendant in this case. Vega and Spires already produced communications in its possession between Defendants and anyone else between January 1, 2020 and April 30, 2020 that hit on one of Mish's search terms and that related to the April and May WTI Contract. These documents included communications that Adrian Spires or any of the Trader Defendants had with ▮▮▮▮▮▮▮, Vega's risk manager. Among other things, Vega and Spires also produced communications between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. 3, and communications between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. 2 and 4. Vega and Spires expect to take ▮▮▮▮▮▮▮ deposition in the United Kingdom, and Mish will have the opportunity to ask questions of ▮▮▮.

Mish argues that Vega and Spires should be compelled to produce any communications between a series of other people about the trading of futures contracts even when they were not communicating with any of Defendants. These individuals include (i) traders like ▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮ who did not trade the May WTI Contract in significant amounts and

11

whose actions are inconsistent with Mish's theory that there was a large conspiracy among traders associated with Vega; (ii) traders like ▓▓▓ and ▓▓▓ who were originally named in this lawsuit but were subsequently dismissed because Mish failed to state a claim against them; (iii) former owners of Vega such as ▓▓▓ and ▓▓▓; and (iv) various junior traders who were supervised by one of Defendants.

But expanding the scope of custodians in this context will not lead to relevant evidence. First, to the extent that Mish wants to question these individuals because they were allegedly on Facetime or had conversations with one of the Traders Defendants on April 20, Mish can seek to depose these individuals and obtain answers to its questions far more efficiently than it could by forcing Vega and Spires to review and produce unrelated documents involving those individuals. Second, Vega and Spires do not have possession, custody, or control of the mobile phones for any of those individuals or their text messages from that day. Text messages are the documents that Mish has used for the vast majority of its allegations in this case, and they are not in Vega or Spires' possession with respect to these individuals whose documents Mish is pursuing.

Third, most of the allegations about these individuals (which were made in a declaration by one of Mish's attorneys) do not suggest that these individuals have any relevant information to the case. ECF 451-3 at 3-6. These allegations include:

- some traders received money or engaged in transactions with one of the Defendants at some point in time in April 2020. *Id.* (▓▓▓).
- one of the individuals had a nickname ▓▓▓ founded Vega, "actively traded on April 20," and congratulated one of the Trader Defendants at the end of the day on April 20. *Id.* (▓▓▓).
- some of the traders made profits trading WTI Contracts on CME or other exchanges on April 20. *Id.* (▓▓▓).

12

- one of the individuals owned a company that Spires acquired a year later. *Id.* (█████)
- "importantly," Mish says, Spires "made at least one May WTI TAS trade on April 20, 2020 for ████████ and instructed the trade be transferred to ██ ██████ account." *Id.* at 5.

None of those allegations provide a basis to believe that relevant evidence would be found by searching through their emails (to the extent that Vega has them) or that the effort would be proportional to the needs of the case.

## II. Vega and Spires Should Not Be Required to Turn Over Documents Regarding Transactions That Occurred Long After April 20, 2020

Mish seeks the production of two categories of documents without regard to time. First, it seeks the production of documents related to any transactions between Vega or Spires and Futures Trading Facilities Ltd. ("FTF"), Defendant Paul Commins, ████████, or ██████ at any time. ECF 451-1 at 11-14. Mish's theory points to Spires' acquisition of FTF in April 2021 and speculates it might be evidence of a *quid pro quo* between Spires and one of the traders. ECF 451-1 at 14. Second, without any time limitation, Mish seeks the production of any agreement between Vega and Spires, on one hand, and Defendant Paul Commins, on the other, regarding a list of subjects including futures trading, the division of monies from futures trading, FTF, "or other financial business or business matters." ECF 451-6 at 12.

However, Vega has already produced documents relating to the contemporaneous transactions and/or understanding with the Trader Defendants at the time of the trading on April 20, 2020. It produced documents identifying the commissions that Vega earned from the traders in connection with the use of Vega's accounts. It produced information related to the oral agreement to share profits with two of the Traders. It has produced the Group Trader Agreement identifying ████████████████████████████████████. This information was

discussed in the Court's first decision on the motion to dismiss. ECF 117 at 16 (Feinerman, J.). Vega also produced financial documents from before and after the relevant time period to address Mish's speculation about how the Trader Defendants' accounts were funded and how the earnings from April 20th were distributed, including bank statements from 2017 through 2019 and commodity and financial statements from mid-2020 through 2021. To the extent Mish has further questions for Vega or Spires on these matters, it would be more efficient to raise them at Vega and Spires' deposition.

The information now sought by Mish – documents related to transactions well before or after April 20, 2020 – is not relevant to any party's claim or defense and is not proportionate to the needs of the case. For instance, Vega and Spires could not have been influenced on April 20, 2020 by an agreement about FTF that was reached a year later. Vega and Spires could not have been influenced on April 20, 2020 by indemnification payments that Defendant Paul Commins made to Vega years after 2020 as a result of Mish filing this lawsuit. Mish speculates the documents may show that "the alleged conspirators" are alienating or removing assets in an effort to stymie "any successful collection [of an adverse judgment] against them" in this case, ECF 451-1 at 13, but that argument does not add up. The money belongs to the Trader Defendants who are free to spend their money as they wish, and there is no legal basis for Mish to freeze their funds in the middle of discovery.

Moreover, with respect to FTF, there are no meaningful documents that can be compelled. There was no written agreement to transfer FTF to Spires. Spires Decl. at ¶ 3. Spires did not agree to send or receive any funds (other than a nominal British Pound) in connection with the acquisition of FTF. *Id.* In 2021, FTF was a company with no meaningful assets. *Id.* at ¶ 4. As of March 31, 2021, FTF had net assets of four British Pounds. *Id.* As of

September 30, 2021, FTF had a negative net asset value of GBP 1,661.  *Id.*  FTF was dissolved on March 1, 2022.  *Id.* at ¶ 5.

Finally, that courts have found financial transactions among alleged conspirators to be relevant in other cases does not mean the discovery sought is relevant or proportionate to the needs of this case. ECF 444 at 4-6.  Nor do the string of cases cited in the Motion – many of which involved post-conviction appeals – stand for Mish's broad proposition to the contrary.  *Id.*

## CONCLUSION

For the reasons discussed above, Defendants Vega Capital London Limited and Adrian Spires respectfully request that the Court (i) deny Plaintiff's Motion to Compel in its entirety and (ii) award any other relief it deems just and proper.

Dated: September 26, 2025

Respectfully submitted,

VEGA CAPITAL LONDON LIMITED
and ADRIAN SPIRES

By: */s/ Michael P. Kelly*

| | |
|---|---|
| Michael P. Kelly | Amy Graham Doehring |
| AKERMAN LLP | Shawn M. Taylor |
| 750 Ninth Street, N.W., Suite 750 | Lauren Goddard |
| Washington, DC 20001 | AKERMAN LLP |
| (202) 393-6222 | 71 S. Wacker Drive, 47th Floor |
| michael.kelly@akerman.com | Chicago, IL 60606 |
| | (312) 634-5700 |
| Joel S. Forman | amy.doehring@akerman.com |
| AKERMAN LLP | shawn.taylor@akerman.com |
| 1251 Avenue of the Americas, 37th Floor | lauren.goddard@akerman.com |
| New York, NY 10020 | |
| (212) 880-3800 | |
| joel.forman@akerman.com | |

*Attorneys for Vega Capital London Limited
and Adrian Spires*