UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MISH INTERNATIONAL MONETARY INC., on behalf of itself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>VEGA CAPITAL LONDON, LTD., et al.,<br><br>*Defendants.* | Case No. 1:20-cv-04577<br><br>Hon. Manish S. Shah<br><br>Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANTS' PARTIAL OPPOSITION TO PLAINTIFF'S MOTION SEEKING APPROVAL OF THE PLAN AND FORM OF NOTICE TO THE CLASS**

Defendants Vega Capital London Limited, Adrian Spires, Paul Commins, George Commins, Christopher Roase, Elliott Pickering, Aristos Demetriou, Connor Younger, James Biagioni, Henry Lunn, Paul Sutton, and Matthew Rhys Thompson (collectively, Defendants) submit this response in partial opposition to Plaintiff's Motion Seeking Approval of the Plan and Form of Notice to the Class. Although Defendants do not oppose many elements of Plaintiff's proposed notice plan, they urge the Court to require Plaintiff to take steps to (i) send individual notice to the ▇▇▇ accounts that Plaintiff has identified as falling within the class definition and (ii) ensure that direct notice is given to the putative class members within the ▇ accounts potentially alleging at least ▇▇▇▇▇▇ in damages.

**INTRODUCTION**

While Plaintiff's class notice plan may be reasonable and appropriate in many class action cases, it is not sufficient in a case that has ▇▇▇▇ identifiable accounts in the class and over ▇▇▇▇▇▇▇ in alleged damages. Class members with potentially valuable claims have a due process right to receive individual opt-out notices when those notices can be given with

1

reasonable effort commensurate with the stakes of the case. Here, there is a direct and practicable way to identify the ▇ accounts and provide notice to absent class members. Plaintiff can obtain the names and addresses for the account holders from CME Group Inc. ("CME") (or from futures commission merchants or clearing firms) either on a voluntarily basis or through the use of a subpoena authorized by the Court pursuant to Rule 23. And the effort is commensurate with the stakes in this case where there is over ▇ dollars of alleged damages and at least three of the ▇ accounts may allege losses over ▇ each. In addition to sending notice to the ▇ accounts, Defendants propose that Plaintiff be required to inquire of the accounts with alleged losses of ▇ or more (which amount to only ▇ of the ▇) whether the account is trading with its own funds or as a broker for customers. If it is the latter, Plaintiff should send direct notice to the class members who are trading through that particular broker.

While Plaintiff has proposed to "request" that futures commission merchants ("FCMs") and clearing firms forward the class notice or identify the class members, that carries too large of a risk that a class member with a substantial claim will not receive notice – either because they are not identified or notified by FCMs and clearing firms or because Plaintiff and Defendants will not know whether notice has been received by class members. In these relatively unique circumstances, the Court should authorize and require Plaintiff to issue subpoenas (if necessary) to ascertain the identity of class members and to serve individual notices on them.

## BACKGROUND

On June 24, 2025, the Court certified a class consisting of "[a]ll persons and entities that sold a May 2020 light sweet crude oil (WTI) futures contract ('May contract') traded on the New York Mercantile Exchange between 9:00 a.m. CST and 1:30 p.m. CST (inclusive) on April 20,

2020 (including by trade at settlement ("TAS")), to liquidate a long position in the May contract."[1] ECF 432 at 45. In its motion for class certification, Plaintiff asserted that "CME audit trail data for April 20 reflects ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." ECF 311 at 11. To support this statement, Plaintiff cited to the report of Dr. Craig Pirrong. ECF 312-1 at ¶ 396. Plaintiff acknowledged that "an individual Class member could have traded May contracts on April 20 through more than one account such that the number of unique accounts may not equal the number of individual Class members." ECF 311 at 11. Plaintiff also observed that one account may represent more than one Class member, including where an individual account reflects trading by a broker for more than one customer. ECF 425 at 16 n.10.

Early in the case, Trader Defendants served a subpoena on CME for the audit trail data. CME produced the data, but did not include the information needed to identify the traders or the futures commission merchants for those accounts. Plaintiff's expert used the audit trail data to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Trader Defendants met and conferred with CME, which ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Neither Plaintiff nor Defendants currently know the identity of the owners for the vast majority of the ▇▇▇ accounts.

With some exceptions, Plaintiff's proposed class notice plan would not send notices directly to the owners of the ▇▇▇ accounts, but instead would seek to send notices to large numbers of entities and/or individuals who are *not* class members in the hopes that this notice would make its way to companies or individuals that are class members. ECF 470 at 2-3.

---

[1] Plaintiff mistakenly requested that the class be certified based on Central Standard Time. However, on April 20, 2020, Central Daylight Time was the operative time zone. Defendants understand Plaintiff intends to submit a motion to correct the error.

Plaintiff proposes to serve direct mail notices only on: (i) large traders of NYMEX WTI crude oil futures contracts, (ii) NYMEX clearing firms and certain associated trading member firms, (iii) individuals and entities identified as potential Class Members by NYMEX clearing firms operating in April 2020; (iv) future commission merchants; and (v) owners and operators of Cushing, Oklahoma oil pipeline and storage facilities. *Id.* Plaintiff also proposes a "multi-faceted publication notice plan," including publication in the print edition of *Stocks & Commodities Magazine* and by electronic mail to the magazine's newsletter subscribers and the use of "banner ads" on the magazine's website. *Id*. at 4-5. Plaintiff seeks the approval of draft publication and draft mail notices and requests that AB Data be appointed as the Notice Administrator. *Id.* at 5.

Following the filing of Plaintiff's motion, the parties negotiated and reached an agreement about the content of the class notices and a sample opt-out form, which are attached as Exhibits 1, 2, and 3. Defendants also do not object to Plaintiff's proposals to (i) create a case-specific website; (ii) publish notices in the print edition of *Stocks & Commodities Magazine* and the electronic version of the magazine's newsletter to subscribers while using "banner ads" on the magazine's website; and (iii) appoint A.B. Data as the notice administrator.

## STANDARD OF REVIEW

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice "may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* Moreover, the notice "must clearly and concisely state in plain, easily understood language:

4

      (i)      the nature of the action;

      (ii)     the definition of the class certified;

      (iii)    the class claims, issues, or defenses;

      (iv)    that a class member may enter an appearance through an attorney if the member so desires;

      (v)     that the court will exclude from the class any member who requests exclusion;

      (vi)    the time and manner for requesting exclusion; and

      (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

## DISCUSSION

There is one major problem with Plaintiff's proposal – it fails to use the most direct method of identifying and notifying class members. In the relatively unique circumstances of this case (with a limited number of class members and claims amounting to ▮▮▮▮▮ in alleged damages), Plaintiff's proposed notice is not "the best notice that is practicable" because it does not provide individual notice to members who can be identified with reasonable effort commensurate with the stakes of the case.

**I.**    **Plaintiff Should Be Required to Identify the Holders of the ▮▮▮ Accounts and Send Individual Notices to Them**

Because the class has been certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). If class members can be identified with reasonable effort commensurate with the stakes, they are entitled to individual notice "even if it [is] very costly." *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 676 (7th Cir. 2013); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175

5

(1974) (requiring the mailing of individual notice where "the names and addresses of 2,250,000 class members are easily ascertainable, and there is nothing to show that individual notice cannot be mailed to each"). "When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted." *Hughes*, 731 F.3d at 677. However, courts should be mindful that "notice by publication involves a risk that a class member will fail to receive the notice and as a result lose his right to opt out of the class action— a right that can be valuable if his individual claim is sizable." *Id.* at 677.

The Supreme Court held in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978) that a plaintiff cannot use Fed. R. Civ. P. 26 as a basis to serve a discovery request seeking the names and addresses of class members. It reasoned that Fed. R. Civ. P. 23 "deals comprehensively with class actions, and thus is the natural place to look for authority for orders regulating the sending of notice." *Id.* In addition to Rule 23(c)(2)(b)'s direction to provide the best notice practicable to the class, Rule 23(d) grants power to district courts to issue orders that "require--to protect class members and fairly conduct the action--giving appropriate notice to some or all class members" of "any step in the action" or "deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1)(B)(i), (E). The Court has inherent authority to authorize the issuance of subpoenas necessary to discharge the responsibilities imposed on it by Rule 23.

After *Oppenheimer*, district courts have held that it can be a reasonable and necessary step to subpoena third parties to ensure that individual notice is provided to class members. *See, e.g.*, *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2021 WL 3929698, at *4 (E.D. Pa. Sept. 2, 2021) (denying motion for approval of class notice where plaintiff's attorneys failed to "pursue subpoenas issued to the top six pharmacy benefit managers, the ten largest TPPs, the top ten chain store pharmacies, and the top five mail

order pharmacies to request the production of records identifying purchasers of branded and generic Suboxone during the relevant time period"); *Lee v. Glob. Tel\*Link Corp.*, No. 2:15-CV-02495-ODWPLAX, 2017 WL 11272587, at \*9 (C.D. Cal. Dec. 6, 2017) ("Taking the second step of subpoenaing the telephone companies to identify the subscribers' physical and email addresses is reasonable and thus required by Rule 23(c)(2)."). These courts recognized that, in some circumstances, they cannot direct to class members the best notice that is practicable under the circumstances under Rule 23(c) if they cannot authorize the issuance of subpoenas to identify the potential class members.

Because this action involves a relatively small class and potentially sizable claims, it is practicable to identify class members with reasonable effort commensurate with the stakes. As an initial matter, Plaintiff acknowledges it can identify the total number of accounts for the members of the class (▬ accounts) from the CME audit data. ECF 311 at 11. Plaintiff does not dispute that the stakes are high, with it claiming damages of ▬ for those ▬ accounts. ECF 425 at 48 (citing to Dr. Terrence Hendershott's calculation of potential losses allegedly suffered in connection with the ▬ accounts).

In fact, Defendants understand that there is the potential for allegations of some extraordinarily large potential claims among some of the absent class members. The ▬ ▬ have been identified from the CME audit data as the following:

7



Since CME (as well as the futures commission merchants and clearing firms) possesses information about the identities of the account holders for these ▇▇▇ accounts, it is practicable to ascertain the identity of class members with reasonable effort. In earlier pretrial discovery, CME ▇▇▇

▇▇▇

▇▇▇

▇▇▇

▇▇▇

▇▇▇

▇▇▇

▇▇▇

▇▇▇

▇▇▇

▇▇▇

▇▇▇

CME presumably knows similar information for all ▇ accounts, and Plaintiff can either negotiate for the information or serve a subpoena for the information. Once Plaintiff has that information from CME, it can send subpoenas to the relevant futures commission merchant for the names and addresses of the ▇ account holders and then send individual notice to all ▇ account holders.

This is not a case where it is "impossible" to ascertain the identity of the class members. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (concluding that notice was "impossible" where the defendant "has no record of those customers whose financial information it gave the telemarketers but who did not buy anything from the latter"). Nor is it a case where "there is no indication that any member [of the class] has a damages claim large enough to induce him to opt out and bring an individual suit for damages." *Hughes*, 731 F.3d at 677 (holding that two stickers on an ATM in a bar, publication in a newspaper, and creation of a website was sufficient notice where the larger claims would be for $300). Because individual notice can be sent to the ▇ account holders with reasonable effort commensurate with the stakes, that is the best notice practicable under Rule 23, and Plaintiff should be required to identify the ▇ account holders (whether through subpoena or voluntary agreements) and serve individual notice to those account holders.

**II.      Plaintiff Should Also Take Steps to Identify and Send Individual Notices to the Customers of the Largest Account Holders (to the Extent the Holders are Brokers)**

There is one more step that Plaintiff should be required to take in the notice program. All of the parties agree that some of the ▇ account holders could be brokers for customers who are the class members. *See, e.g.*, ECF 425 at 16 n.10. For instance, ▇ may be one such example. *See, e.g.*, ▇ (describing itself as ▇ ▇) (last visited on November 21, 2025).

9

Defendants agree that it would be impracticable and not reasonable for Plaintiff to contact all ▓ account holders to inquire whether they are proprietary funds or brokers for other customers.

However, because the stakes in the case are so high, some effort should be undertaken to provide notice to the customers of the largest account holders who are only brokers. Based on the CME audit trail data, only ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓. Together, these ▓ accounts account for claims that amount to ▓▓▓▓▓▓▓ of the alleged losses. Inquiring of only ▓ account holders is not nearly as time-consuming as inquiring of ▓ account holders. If a class member has a potentially valuable claim for damages, and if that member's name and address is ascertainable through targeted discovery of ▓ brokers (at most), it is practicable and commensurate with the stakes for Plaintiff to conduct that discovery, obtain that information, and serve an individual notice directly on that class member so that class member can decide whether to opt out of the class.

### III. Plaintiff's Proposed Approach Raises a Risk That Ascertainable Class Members Will Lose Their Right to Decide Whether to Opt Out of the Class

There are two major dangers with Plaintiff's proposed approach of asking futures commission merchants or clearing firms or large trader firms to (i) forward the notice to class members or (ii) provide a list of names. First, without the use of subpoenas, there may be no reasonable assurance that the notice is sent to class members. Unless CME, futures commission merchants, or clearing firms voluntarily provide the list of the owners of the ▓ accounts to the parties, Plaintiff and Defendants will not know the identity of the class members, whether class members were sent the class notice, or whether notices were returned as undeliverable. Defendants will be prejudiced if they prevail in the case and class members later emerge to claim that their due process rights were violated because they never received the opt-out notice and that

10

they are not therefore bound by an adverse judgment against them. That problem is solved if Plaintiff is required to issue subpoenas to CME (and/or clearing firms and future commission merchants) and Plaintiff then directs its administrator to serve individual notice on the class members based on that information.

Second, there is no ability to conduct follow-up inquiries of brokers if Plaintiff and Defendants do not know the identity of the class members. If a customer of a broker has a potentially valuable claim and if that customer does not receive the opt-out notice from his or her broker, that presents the same due process problem described above. However, if Plaintiff and Defendants know the identity of class members and can ascertain that an account holder is a broker and not a beneficial owner, they have a basis to determine whether further discovery is needed to ensure that individual notice has been sent to the class members who allegedly have a claim. That is why Plaintiff should be required to use subpoenas and not rely on requests to obtain this information.

Finally, there is also the problem of inefficiency of sending the class notice to companies and individuals who are indisputably not class members – such as large traders of NYMEX crude oil contracts that do not possess one of the ▓▓▓▓ accounts or the owners and operators of pipelines or storage facilities in Cushing, Oklahoma. It will only create confusion and would serve no constructive purpose to spend the time and expense to inform companies and individuals of a certified class in which they are not a member.

Plaintiff's motion relies on a number of class notice programs approved by courts usually in the context of settlement. *See generally* Szot Decl. In most of those cases, the defendants in those cases did not raise concerns that the class members were ascertainable and should receive

individual notice.² Moreover, there was no outward indication in those cases that there were only ▇ accounts at issue or that some of those accounts could be alleging damages claims in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. One other factor should be noted: Plaintiff has already served subpoenas on 50 clearing firms with subpoenas demanding the production of "account names, identity of account owner(s), last known address or other contact information for each account owner(s)." *See, e.g.*, Exh. 4 at 7 (subpoena directed to Barclays Capital, Inc.). Plaintiff should finish the process and identify the owners of the ▇ accounts so that individual notice can be provided.

---

² In the vast majority of the cases cited by Plaintiff, the motion for approval of the class notice appears to have been unopposed, and courts did not have to wrestle with whether the particular circumstances of the case demanded specific notice to class members. *See, e.g.*, *In re Optiver Commodities Litig.*, Civ. Action No. 08-cv-6560, ECF 68 (S.D.N.Y. Jan. 7, 2015); *In re Crude Oil Commodity Futures Litig.*, Civ. Action No. 11-cv-3600, ECF 290, 293 (S.D.N.Y. June 8, 2015 and July 24, 2015); *In re Amaranth Natural Gas Commodities Litig.*, Civ. Action No. 07-6377, ECF 368 (S.D.N.Y. Dec. 16, 2011); *In re Rough Rice Commodity Litig.*, Civ. Action No. 11-cv-618, ECF 168 (N.D. Ill. March 5, 2015); *In re Dairy Farmers of America, Inc. Cheese Litig.*, Civ. Action No. 09-cv-3690, ECF 495 (N.D. Ill. March 17, 2014); *Kohen v. Pacific Investment Management Company, LLC*, Civ. Action No. 05-cv-4681, ECF 471 (N.D. Ill. Aug. 20, 2009).

**CONCLUSION**

Defendants respectfully request that the Court authorize and require Plaintiff (i) to use subpoenas to ascertain the identifies of the ▓ accounts and provide individual notice to class members; (ii) inquire of the ▓ account holders with the largest alleged losses and determine if any are brokers, to ascertain the names and addresses of the relevant customers if they are, and serve individual notice to the customers; and (iii) grant such other relief as may be appropriate.

Dated: November 24, 2025

Respectfully submitted,

By: */s/ Michael P. Kelly*
Michael P. Kelly
**AKERMAN LLP**
750 Ninth Street, N.W., Suite 750
Washington, DC 20001
(202) 393-6222
michael.kelly@akerman.com

Amy Graham Doehring
Shawn M. Taylor
Lauren Goddard
**AKERMAN LLP**
71 S. Wacker Drive, 47th Floor
Chicago, IL 60606
(312) 634-5700
amy.doehring@akerman.com
shawn.taylor@akerman.com
lauren.goddard@akerman.com

Joel S. Forman
**AKERMAN LLP**
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
(212) 880-3800
joel.forman@akerman.com

*Attorneys for Defendants Vega Capital London Limited and Adrian Spires*

/s/ Matthew L. Mazur
Roger A. Burlingame
Matthew L. Mazur
Ryan Dykhouse
**DECHERT LLP**
25 Cannon Street
London EC4M 5UB, United Kingdom
Telephone: +44 20 7184 7000
Roger.Burlingame@dechert.com
Matthew.Mazur@dechert.com

Steven E. Bizar
Michael S. Doluisio
Julia Chapman
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2222
Steven.Bizar@dechert.com
Michael.Doluisio@dechert.com
Julia.Chapman@dechert.com

*Attorneys for Defendants Paul Commins, George Commins, Christopher Roase, Elliott Pickering, Aristos Demetriou, Connor Younger, James Biagioni, Henry Lunn, Paul Sutton, and Matthew Rhys Thompson*

13