IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MISH INTERNATIONAL MONETARY, INC., On behalf of itself and all others similarly situated | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:20-CV-4577 ) Hon. Manish S. Shah |
| VEGA CAPITAL LONDON LTD, *et. al.* | ) ) |
| Defendants. | ) |

## NON-PARTY G.H. FINANCIALS, LLC'S OPPOSITION TO MOTION TO COMPEL

Non-Party G.H. Financials, LLC, through counsel, opposes the Motion of Defendants Paul Commins, George Commins, Christopher Roase, Elliott Pickering, Aristos Demetriou, Connor Younger, James Biagioni, Henry Lunn, Paul Sutton, and Matthew Rhys Thompson (the "Trader Defendants") to Compel G.H. Financials, LLC to produce documents pursuant to subpoena. ("Mot. to Compel").

**I.    Introduction**

In their Motion to Compel, Trader Defendants improperly gloss over the most critical aspect of its request – most of the information they seek to have this Court compel is not in the possession, custody or control of non-party, G.H. Financials, LLC, the U.S. entity that received the subpoena. Rather, the Trader Defendants have been aware since August 2024 that their subpoena was procedurally defective as the sought information is in the possession, custody, and control of G.H. Financials Limited, the U.K.-based parent company of G.H. Financials, LLC over which G.H. Financials, LLC does not have control.

Rather than issuing a subpoena to the proper entity or seek foreign discovery through the Hague Convention or some other method, the Trader Defendants come to this Court 15 months later with the meritless argument that since G.H. Financials Limited made a voluntary production

to the Plaintiff in 2023 with a full reservation of rights, and G.H. Financials, LLC made a very small, voluntary housekeeping production to the Trader Defendants that related to the prior voluntary production by G.H. Financials Limited, G.H. Financials, LLC must have possession, custody and control of the currently requested information. This argument is easily dispatched – G.H. Financials, LLC does not have such possession, custody or control, nor the ability or authority to control its foreign parent company to compel it to provide the additional documents Trader Defendants are seeking.

Furthermore, the Trader Defendants' relevance assertions are specious. Trader Defendants are demanding (1) trading surveillance alerts in the same market from one year before and one year after the trading in question in this case, and (2) trade surveillance alerts related to other customers who also traded the contract in question on the day at issue. However, the manner in which other market participants traded in the market a year before and year after has absolutely no bearing on the historic, pandemic-driven, once-in-a-lifetime trading in April 2020 and whether the Trader Defendants engaged in illegal market manipulation. There is no year-over-year benchmark for the extraordinary day at issue in this case. Additionally, how other G.H. Financials Limited customers traded in the subject contract and whether they received similar trading alerts to the Trader Defendants is wholly irrelevant to the critical question in this case – whether the Trader Defendants had the requisite intent to engage in market manipulation.

G.H. Financials Limited and G.H. Financials, LLC have already expended significant time and resources in this case as a non-party and should not be required to engage in more discovery. G.H. Financials, LLC cannot produce what it does not possess or otherwise control. Therefore, the Court should deny the Motion to Compel.

**II.      Factual Background**

G.H. Financials, LLC is a Futures Commission Merchant that is regulated by the Chicago Mercantile Exchange ("CME") as the Designated Self-Regulatory Organization ("DSRO") on behalf of the Commodity Futures Trading Commission ("CFTC"). *See* Declaration from Rebecca White, Exhibit A, ¶ 3. It is a wholly-owned subsidiary of G.H. Financials Limited, a U.K.-based company. *Id*., ¶ 5.

G.H. Financials, LLC clears trades for its customers in United States markets. *Id*., ¶ 4. When G.H. Financials Limited's customers want to execute trades in the U.S., G.H. Financials Limited routes the trades to G.H. Financials, LLC for execution and clearing. *Id*., ¶ 6. Thus, G.H. Financials Limited is G.H. Financials LLC's customer, and G.H. Financials Limited maintains customer relationships with its clients in the United Kingdom. *Id*. G.H. Financials, LLC does not maintain records about the customers of GH Financials Limited. *Id.*, ¶ 8. G.H. Financials, LLC has its own customers and has possession, custody and control over records related to its clients' trading. *Id*.

G.H. Financials Limited performs the necessary trade surveillance, generates reports, and reviews those reports in the United Kingdom. *Id*., ¶ 7. G.H. Financials, LLC does not have access, possession, custody, or control over G.H. Financials Limited's surveillance systems, files or historical trading records for non-G.H. Financials, LLC clients and cannot generate or run such reports. *Id*., ¶ 10. Only G.H. Financials Limited can do so. *Id.*

In response to a prior subpoena from Plaintiffs to G.H. Financials Limited, in August 2023, G.H. Financials Limited made voluntary productions of the Trader Defendants' trading files for the relevant futures contract (May 2020 WTI Contract) and other related documents, including e-mails and documents that hit certain search terms. G.H. Financials Limited made those voluntary

productions subject to a full reservation of rights regarding service, jurisdiction and other grounds. The voluntary productions included the trading spreadsheet the Trader Defendants refer to in their motion. *See* Mot. to Compel, Ex. 4. The voluntary productions were extensive, with thousands of pages produced, and took significant time and expense to review and produce.

Approximately one year later, on August 14, 2024, G.H. Financials, LLC received a subpoena from the Trader Defendants that forms the basis of the Motion to Compel. *See* Mot. to Compel, Ex. B. Although the notice of subpoena refers to "G.H. Financials, Ltd" the subpoena is issued to G.H. Financials, LLC, through its Delaware registered agent, not to the U.K.-based entity. *Id*.[1] The Trader Defendants have never issued a subpoena to G.H. Financials Limited or sought foreign discovery from it.

G.H. Financials, LLC made timely objections by e-mail on August 30, 2024. *See* Exhibit A. Those objections included notifying Trader Defendants that the requested documents are not in the possession, custody, or control of G.H. Financials, LLC, and that any responsive documents, to the extent that they exist, are in the possession, custody, or control of G.H. Financials Limited. *Id*. G.H. Financials, LLC also made five additional substantive objections. *Id*.

G.H. Financials, LLC reaffirmed all of these objections in correspondence on September 30, 2024. *See* Mot. to Compel, Ex. D. In that correspondence, G.H. Financials, LLC made a very small voluntary production with a full reservation of all previously made objections – the production originated with G.H. Financials Limited and was strictly based on the housekeeping

---

[1] Although the Trader Defendants assert that their requests in the subpoena were narrowly tailored and focus on three specific requests in their motion to compel, the subpoena's full list of requests was actually very broad and included "*[a]ny Communications* related to the alerts described in Requests 1, including any Communications with the CME," and "*[a]ny Documents* related to the alerts described in Requests 1, including the analysis of certain trades or trading patterns of the May Contract on April 20, 2020." *Id*., p. 14, requests 4-5 (emphasis added).

issues that were raised by the Trader Defendants that related to G.H. Financials Limited's prior production. For example, an attachment that was referenced in a previously produced e-mail but was not provided was produced. The documents were "provided for completeness purposes only as they were not part of the production previously made to the Plaintiff in this matter and are referenced within produced documents." *Id*.

## III. Argument

The Court should deny Trader Defendants' Motion to Compel for two reasons: (1) most of the documents are in the possession, custody and control of G.H. Financials Limited, a U.K. entity that G.H. Financials, LLC does not control and over which this Court has no jurisdiction, and (2) the information sought is not relevant to the case as it relates to trading in different years and/or by other market participants whose trading is not the subject of any allegations in the case.[2]

### A. A Non-Party is Afforded More Protection from Discovery Burdens Than Litigants and G. H. Financials Limited and G.H. Financials, LLC have Already Expended Significant Resources to Make Voluntary Productions

Non-parties are afforded significantly more protection from discovery requests than litigants. Rule 45 of the Federal Rules of Civil Procedure governs subpoenas directed at non-parties to litigation. "Under the Federal Rules of Civil Procedure, the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Rossman v. EN Engr., LLC,* 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020) (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). "Rule 45 also instructs courts that they 'must

---

[2] G.H. Financials, LLC also made objections that the information sought implicates trade secret and privacy issues. *See* Exhibit A. G.H. Financials, LLC does not waive or withdraw those objections, but understands and appreciates that any concerns related to these issues can be addressed by the Protective Order in this case if production is ordered. Trader Defendants assert that any trade secret value has "dissipated" after the 2020 trading, and G.H. Financials, LLC disputes this assertion because trade surveillance programs contain significant trade secrets that do not disappear after a trading event occurs.

protect' non-parties 'from significant expense resulting from compliance' with a subpoena." *Id.* (quoting Rule 45(d)(2)(B)(i) and (ii)).

"Courts have consistently held that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Id.* (collecting cases). "Non-parties are afforded this special consideration, because they have a different set of expectations than parties." *Id.* (quoting *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015). Thus, "the court should be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party." *Martin v. United States*, No. 13-CV-3130, 2015 WL 7783516, at *2 (C.D. Ill. Dec. 3, 2015) (internal quotation marks and citation omitted).

In this case, G.H. Financials Limited and G.H. Financials, LLC have engaged in extensive voluntary document productions at great cost and expense, and did so while reserving all timely asserted objections. *See* Exhibit A; Mot. to Compel, Ex. D. This was done in good faith and to avoid litigation over the issue, and G.H. Financials, LLC (and G.H. Financials Limited as well even though the Trader Defendants have not issued a subpoena to it) maintain those objections in connection with the current motion to compel. Non-parties G.H. Financials, LLC and G.H. Financials Limited already have been subjected to significant burden and cost in this case. Trader Defendants are now adding to the burdens and costs by forcing litigation over this Motion despite knowing they have subpoenaed the wrong entity for documents that are about the trading of other third-parties unrelated to this case.

There has to be an end to a non-party's participation in a case. The Court should deny the Motion to Compel because the previously provided documents and information satisfy any arguable requirements in this case. *See Barney v. Zimmer Biomet Holdings, Inc.*, No. 3:17-CV-

616-JD-MGG, 2020 WL 4368359, at *1, *11 (N.D. Ind. July 30, 2020) (court holding that a non-party had "already produced sufficient documentation of his compensation, especially his compensation related to his assistance with this case, as discussed above. Therefore, Dvorak need not produce any additional documents in response to Barney's subpoena.").

      **B.    G.H. Financials, LLC is Not in Possession, Custody or Control of the Requested Documents**

In order to compel the production of documents, this Court must have jurisdiction over the subject party. *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1144 (N.D. Ill. 1979). Additionally, that party must also have "possession, custody or control" over the documents. *Id.*; Federal Rule of Civil Procedure 45(a)(1)(A)(iii).

The Trader Defendants subpoenaed the wrong non-party and are now doubling down on that mistake before this Court. The party seeking production bears the burden of establishing that the third party has control over the documents. *In re Subp. To Huawei Techs. Co., Ltd.*, 720 F. Supp. 2d 969, 972 (N.D. Ill. 2010). Trader Defendants have not done so.

Trader Defendants insist without support or authority that because G.H. Financials Limited and G.H. Financials LLC previously voluntarily produced documents subject to a full reservation of rights, G.H. Financials, LLC thereby has control over its foreign parent company's business records. However, this is just not true.

The Trader Defendants were customers of G.H. Financials Limited, not G.H. Financials, LLC. G.H. Financials Limited does the trade surveillance for its customers, generates trade surveillance reports, and reviews those reports in the United Kingdom. *See* Exhibit A, ¶ 7. G.H. Financials, LLC has no relationship with the customers of G.H. Financials Limited and does not have possession, custody, or control over G.H. Financials Limited's surveillance systems, files or historical trading records for non-G.H. Financials, LLC's clients. *See* Exhibit A, ¶ 9. Nor can

G.H. Financials, LLC obtain such trade surveillance information without making a request of G.H. Financials Limited, which G.H. Financials Limited evaluates pursuant to its sole discretion. *See* Exhibit A, ¶ 10.

Furthermore, the Trader Defendants state that "[i]ndeed, G.H. Financials possesses the complete alert dataset; it demonstrated this when it produced a filtered version." Mot. to Compel, p. 11. However, this is plainly incorrect – the document came from G.H. Financials Limited and G.H. Financials, LLC does not have the power to compel its foreign parent company to provide any records regarding non-G.H. Financials, LLC customers. *See* Exhibit A, ¶ 10. Thus, that data regarding customers of G.H. Financials Limited is outside of the control of G.H. Financials, LLC. *In re Subp. To Huawei Techs. Co., Ltd.*, 720 F. Supp. at 972 ("the Seventh Circuit has warned against an overly expansive reading of the term 'control,' noting that 'the fact that a party could obtain a document if it tried hard enough, does not mean that the document is in its possession, custody, or control . . . .") (quoting *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993)).

Trader Defendants ask the Court to disregard corporate separateness and to treat a U.S. subsidiary as an access conduit to a foreign parent's files. Rule 45 does not permit such an end-run. *See Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) ("Although parent corporations have been required to produce documents held by their subsidiaries, the converse is not true. A subsidiary, by definition, does not control its parent corporation.") (internal citations omitted); *Chung v. Tarom, S.A.*, 990 F.Supp. 581, 584 (N.D. Ill. 1998) ("Clearly, '[t]he mere existence of a parent-subsidiary relationship is insufficient to establish the close ties necessary for a subsidiary to be deemed a parent's agent for the service of process.'") (internal citations omitted). The requests for G.H. Financial Limited's records have always been

beyond the jurisdiction of this court, a fact Trader Defendants completely fail to address in their motion to compel.

### C. The Information Sought by Defendants is Irrelevant

In addition to failing to identify any mechanism by which the Court can compel the production of the requested documents by a foreign non-party that has not been served with a subpoena or similar document, Trader Defendants have failed to establish the relevance of the information sought.

Trader Defendants assert that additional confidential trading data of parties unrelated to this litigation regarding the May 2020 WTI contract must be produced. Trader Defendants fail to demonstrate how unrelated trading alerts from other clients are relevant to their claims. Simply wanting the documents does not make them relevant for purposes of seeking compulsion from a non-party. Whether other customers triggered alert thresholds is irrelevant to whether the Trader Defendants themselves engaged in manipulative conduct.

Trader Defendants' relevance claim rests on a speculative and illogical benchmarking theory that more alerts by others on April 20, 2020, and fewer on other days, would negate inferences about Trader Defendants' conduct. But their requests indiscriminately capture all alerts for all G.H. Financial Limited's clients, regardless of trading strategies (i.e. calendar spread trades or single month contracts) and account types, and seeks to transform non-party surveillance flags into market-wide exculpatory proof. However, the Trader Defendants' conduct and intent—as opposed to the activities of other market participants—are the relevant elements for a price manipulation analysis. *CFTC v.* Kraft, 153 F.Supp.3d 996, 1020 (N.D. Ill. 2015) ("Intent is what separates 'lawful business conduct from unlawful manipulative activity'" and "To establish intent, 'it must be proven that *the accused acted* . . . with the purpose or conscious object of causing or

effecting a price or price trend in the market that did not reflect [] legitimate forces [].'") (emphasis added) (internal citations omitted).

Furthermore, as Trader Defendants acknowledge in their Motion, an alert is merely "an automated surveillance notification generated by a surveillance system when trading activity reaches pre-established quantitative thresholds," that requires "human review and further analysis," therefore on its face, an alert is not proof of anything other than trading that hit a pre-established threshold. Mot. to Compel, p. 4. These statements by Trader Defendants confirm the irrelevancy of alerts related to other customers.

Furthermore, the three cases cited by Trader Defendants regarding the relevance of non-party data, *see* Mot. to Compel, p. 10, dealt with two significantly different types of markets and a unique procedural issue that is not present in this case. Thus, on a threshold basis, Trader Defendants' cases are distinguishable and do not support the relief sought.

For example, *Dale v. T-Mobile US, Inc.*, No. 22-CV-3189, 2025 WL 1994340, at *1 (N.D. Ill. July 17, 2025) related to a class action of wireless telephone customers as a result of a merger involving another company and the relevance of non-party wireless companies' plans but had no substantive discussion as to why that third-party data may be relevant –the Court simply made a general statement that "the activities of other competitors in the wireless services market may also be relevant to the claims and defenses in this case," which is not instructive to this case. Similarly, *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, No. 13-1054, 2014 WL 12733590, at *8 (C.D. Ill. Jan. 8, 2014) dealt with a comparison of health insurance plans and actually goes against Trader Defendants' argument – in *Methodist* the Court denied the motion to compel as it related to any claims or payments regarding any specific employee, individual or beneficiary in a specific health plan, calling it "little more than a fishing expedition" and only ordered the production of

the offered health care plans themselves. *Id.* Thus, the Trader Defendants' request for individual non-party customer trading alerts is not supported by *Methodist* as all that Court did was order the production of health plan documents not any individual payments which would be analogous to G.H. Financials, LLC providing its compliance manual regarding the alert system but not the individual alerts requested.

Finally, although *CFTC v. Parnon Energy, Inc.*, No.11 Civ. 3543 WHP, 2013 WL 5882921, at *3 (S.D.N.Y. Oct. 25, 2013), aff 'd, 593 F. App'x 32, 36 (2d Cir. 2014) did involve alleged manipulative trading in a crude oil market, that case dealt with the interplay between a CFTC enforcement investigation and discovery in a class-action lawsuit, specifically the fairness of production of documents by the CFTC to the Defendant and not the Plaintiff, which was a factor in producing the documents to the Plaintiff – "Plaintiffs would be substantially prejudiced if they were excluded from viewing the same documents Parnon will use to mount this defense." *Id.*, *3. Furthermore, *Parnon Energy* involved a monopolization theory, thereby making the substitutability of other grades a central issue, something that is not present in this case.

Critically, the issue in this case is whether the Trader Defendants engaged in manipulation and that analysis largely rises and falls on intent which is necessarily an individualized analysis of facts pertaining to those specific defendants. Thus, other alerts for other traders will be of no value in assessing potential manipulation by Trader Defendants. Also, alerts about other customers will be meaningless without context – e.g., how much they were trading, whether the trading was for the specific month or a multi-month spread trade, what other trading activity were they doing, how does the amount or pattern compare to the overall account size, what were their historical trading patterns and practices over time, what if any information did those other customers provide to G.H. Financials Limited, whether those alerts were escalated, as well as other factors. Thus, the alerts

themselves related to other customers are of little or no value. Requiring the production of information to simply enable Trader Defendants to say "others got alerts too" does not prove or disprove anything.

Importantly, Trader Defendants' relevancy argument has no limiting principles. If trade surveillance alerts for other market participants are relevant and subject to production by non-parties, then Trader Defendants could issue subpoenas for such information to all firms that executed or cleared trades in the relevant contract on the requested days. Of course, that should not be permitted. Yet, for Trader Defendants' flawed benchmarking theory to have any value, they would need to undertake those very steps. Taking data from a sliver of the market does not constitute a benchmark. Presumably the Court does not want to issue an opinion suggesting that Trader Defendants can cure that logical defect by compelling other firms to provide the same data.

The Trader Defendants argue that they need the additional alerts because of how Plaintiffs' expert is using the alerts that have been produced. Mot. to Compel, p. 1. However, Trader Defendants can hire their own experts and make their own arguments about the import of documents and trading records and reports issued by G.H. Financials Limited, which they have already done in the Motion to Compel – *see, e.g.,* Mot. to Compel, p. 5-6; Exhibit F. A non-party should not be required to jump in and out of the fray of a litigation for which is has no stake after it has already made significant voluntary productions because one party makes certain arguments about the information provided when counter-arguments are available and can be made by the Trader Defendants. *See Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 183 (N.D. Ill. 2013) ("Discovery pursuant to a Rule 45 subpoena is not unlimited. Under Rule 45, a court is required to squash a subpoena under various circumstances, including . . . when the subpoena subjects the recipient to undue burden.") (internal citations omitted).

With respect to the Trader Defendants' request for an additional two years' of data of transactions of private parties completely unrelated to any of their activities, they make the perplexing argument that the day in question was historically anomalous, while also asserting that standalone data from completely different trading years is somehow relevant. As the Trader Defendants are no doubt aware, trading tends to be a function of market dynamics at a particular moment in time, and such dynamics and future prices in different years are totally irrelevant and unilluminating when trying to answer the question of whether Defendants engaged in market manipulation on the day in question.

In 2019 global oil demand was normal and more predictable, and in 2021 the pandemic demand was more normalized and predictable, thus there is no actual benchmark in this case. The Trader Defendants acknowledge this in their motion – "[t]o defend against Plaintiff's claims, Trader Defendants intend to establish that extraordinary, COVID-driven market volatility resulted in large price movements on April 20, 2020, which in turn resulted in a large number of trading alerts being generated on that day." Mot. to Compel, p. 6. There is no benchmark for this event which demonstrates that the sought information from 2019 and 2021 is irrelevant.

Finally, the Trader Defendants were not clients of G.H. Financial Limited in 2021, so requesting that data is particularly attenuated and irrelevant. Such attenuated and speculative assertions are insufficient to compel the production of this information. *Cruz v. Guevara*, No. 23 C 4268, 2024 WL 4871369, at *10 (N.D. Ill. Nov. 22, 2024) ("'possible relevance' or 'relevance in its broadest and weakest sense,' is not the standard for enforcing subpoenas."). The Court should therefore deny the motion to compel.

## IV. Conclusion

For the reasons stated herein, G.H. Financials respectfully requests that the Court deny Trader Defendants' Motion to Compel.

Dated: January 6, 2026

G.H. FINANCIALS, LLC

/s/ *Nolan Leuthauser*

_____
Nolan Leuthauser
Norton Rose Fulbright US LLP
1045 W. Fulton Market, Suite 1200
Chicago, Illinois 60607
P: 312 964 7781
F: 312 964 7799
nolan.leuthauser@nortonrosefulbright.com

Of Counsel:

Kevin Harnisch
Brian Stolarz
Norton Rose Fulbright US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
P: 202-662-0200
F: 202-662-4643
kevin.harnisch@nortonrosefulbright.com
brian.stolarz@nortonrosefulbright.com

*Counsel for Third-Party G.H. Financials, LLC*

*Pro Hac Vice Motions to be Filed*

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the CM/ECF system on January 6, 2026 will be sent electronically to registered participants as identified on the Notice of Electronic Filing.

*/s/ Nolan Leuthauser*
Nolam Leuthauser