UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MISH INTERNATIONAL MONETARY INC.,
On behalf of itself and all others similarly situated,

*Plaintiff*,

v.

VEGA CAPITAL LONDON, LTD., *et al.*,

*Defendants*.

Case No. 1:20-cv-04577

Hon. Manish S. Shah

**TRADER DEFENDANTS' MOTION FOR LEAVE
TO SUBPOENA G.H. FINANCIALS LIMITED (UK)**

Defendants Paul Commins, George Commins, Christopher Roase, Elliott Pickering, Aristos Demetriou, Connor Younger, James Biagioni, Henry Lunn, Paul Sutton, and Matthew Thompson (collectively, the "Trader Defendants") respectfully move this Court for leave to serve a subpoena duces tecum on G.H. Financials Ltd. (UK) ("Limited") through its wholly-owned U.S. subsidiary, G.H. Financials LLC ("LLC" and, together with Limited, "G.H. Financials"), a Futures Commission Merchant ("FCM") and CME clearing member, or through Limited's U.S. based counsel. The proposed subpoena seeks the same unredacted spreadsheet of all surveillance alerts generated by the trading of G.H. Financials customers on April 20, 2020 that was the subject of the Trader Defendants' earlier motion to compel directed at LLC (ECF No. 487).[1] To the extent that the Court intended its minute order, dated January 13, 2026 (ECF No. 506), as a ruling that the requested surveillance alerts generated on April 20 by the trading of G.H.

---

[1] The proposed subpoena does not request benchmark data from one year prior or one year after, which the Court ruled "not persuasive." ECF No. 506.

1

Financials customers not associated with Vega Capital London Ltd. ("Vega") are not relevant to the claims and defenses in this case, the Trader Defendants would not want to burden non-party G.H. Financials with a further subpoena. Accordingly, before serving the subpoena, they respectfully request that the Court either grant them permission to serve the subpoena or clarify its earlier ruling to state that the April 20, 2020 surveillance alerts are not relevant.

## BACKGROUND

G.H. Financials, including both Limited and LLC, played a central role in the transactions that are the basis of Plaintiff's claims. Vega was a customer of Limited in the United Kingdom, and each of the Trader Defendants traded on NYMEX through a Vega sub-account at Limited, which sent each and every one of the NYMEX trades on April 20, 2020 to its U.S. subsidiary, LLC, for execution and clearing. *See* Decl. Rebecca White (ECF No. 500-2) ¶ 6 (explaining that "G.H. Financials Limited sends trades to G.H. Financials, LLC for execution and clearing. Thus, G.H. Financials Limited is G.H. Financials LLC's customer in the United States."). Furthermore, shortly after April 20, G.H. Financials corresponded with Vega concerning the Trader Defendants' trades on NYMEX, which correspondence the Court cited as an example of "class-wide evidence" in its decision on class certification. ECF No. 432 at 29.

In response to two subpoenas that Plaintiff served, one on LLC and one on Limited, G.H. Financials "voluntarily" produced over 1,000 documents—over 25,000 pages, all marked with the Bates stamp "GHFLTD"—including a partial spreadsheet of surveillance "alerts" generated on April 20, 2020. *See* ECF No. 489-2 at Ex. C; Opp. Mot. to Compel at 8; Tr. 1/13/26 at 6:17-19. Plaintiff and its expert have relied extensively on the alerts as evidence of market manipulation. *See* Second Am. Compl. ¶ 119, ECF No. 129; Pl.'s Class Cert. Mem. at 2, ECF No. 311 (citing Pirrong Rep. ¶ 161).

2

The requested discovery at issue here is the complete Excel spreadsheet of alerts generated on April 20, 2020 by G. H. Financials customers. The spreadsheet produced by G.H. Financials in response to Plaintiff's subpoena contains only those alerts triggered by trading that involved at least one trader associated with Vega. However, the non-sequential numbering of the NYMEX alerts listed in the spreadsheet suggests that there were literally hundreds of other alerts generated on April 20 that did not involve any of the Vega traders. *See, e.g.*, ECF No. 489-2 at Ex. C (NYMEX tab identifying alerts with non-sequential numbers). As explained at the status conference on January 13, 2026, these additional alerts are relevant because they would both (a) undermine Plaintiff's claim that the surveillance alerts generated by the Trader Defendants' trading are evidence of manipulation, and (b) help to show that the downward price movement on April 20, 2020 caused normal trading to appear as potentially manipulative. Tr. 1/13/26 at 5:18-6:11.

## ARGUMENT

The Court's denial of the motion to compel LLC to produce the full spreadsheet of alerts leaves the Trader Defendants in an intolerable position. It cannot be that Plaintiff and its experts will be allowed to rely on the partial spreadsheet that G.H. Financials produced "voluntarily" in response to the two subpoenas that Plaintiff served, while the Trader Defendants and their experts are left without the necessary facts to show that Plaintiff's reliance is misplaced. While the Court ruled that "[i]nferences from the unusual market events at issue in the case can be effectively developed from existing sources; [and] plaintiffs' analysis can be undermined without G.H. Financials providing more information" (ECF No. 506), such arguments will be far less powerful than proof that potentially hundreds or thousands of the same types of surveillance alerts were generated based on trading that had nothing to do with Vega. Without the remainder

3

of the spreadsheet, Defendants may not be able to prove how many additional alerts were generated on April 20 or whether they were the same type of alerts on which Plaintiff relies.

Given the Court's ruling denying the motion to compel, the Trader Defendants now seek leave to serve a subpoena on Limited for the remainder of the spreadsheet already produced to Plaintiffs. As explained below, Limited is subject to subpoena in this district through LLC or its U.S. counsel, Norton Rose Fulbright US LLP.

The Trader Defendants are mindful of the Court's statements in its minute order that surveillance data possessed by LLC "is not significant to the theories at issue in this case and while not burdensome to produce, would be unnecessary" and that "[i]nferences from the unusual market events at issue in the case can be effectively developed from existing sources; [and] plaintiffs' analysis can be undermined without G.H. Financials providing more information" (ECF No. 506). To the extent that the Court intended these statements as a ruling that the requested records are not relevant to the claims and defenses in this action, the Trader Defendants would not wish to burden a non-party with a further subpoena. In that case, the Trader Defendants would instead respectfully request clarification of the Court's ruling to make clear that surveillance alerts generated on April 20, 2020 are not relevant.

### A. LLC Has "Control" Over the Requested Documents Held by Limited

The Court could have ordered LLC to produce the remainder of the spreadsheet over G.H. Financials' objection that the records were held by Limited because LLC had the practical ability to produce the records. The extensive production made to Plaintiff is the best evidence of that. *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 23-CV-00818, 2023 WL 8935006, at *3 (N.D. Ill. Dec. 27, 2023) ("The fact that L'Oréal U.S.A. has produced documents from L'Oréal S.A. . . . is a strong indicator of closeness" required to show that the domestic

4

subsidiary has control over the foreign parent's documents, and that finding is clearer when "the parent company provided these documents in response to a discovery request." (cleaned up)). As the Trader Defendants asserted in the Motion to Compel: "any claim by G.H. Financials that the data is not in its possession, custody, or control because it is in the United Kingdom is belied by the very spreadsheet and hundreds of other documents it has already produced." ECF No. 489 at 10-11. Furthermore, as counsel explained at the hearing, "the test in this Circuit for whether a domestic company has control over documents held by a foreign affiliate is not whether the domestic entity has the legal power to *compel* the foreign affiliate to produce documents but whether, as a practical matter, it has the ability to obtain the documents." Tr. 1/13/26 at 7:18-23 (emphasis added).

Here, both the "voluntary" productions to Plaintiff and the fact that Limited executes and clears trades through LLC make clear that LLC could have produced the requested records. *See Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2020 WL 2219060, at *4 (N.D. Ill. May 7, 2020) (compelling domestic subsidiary to produce responsive documents held by foreign parent based on "shared work on the product at the heart of this litigation and past exchange of documents"). Indeed, it is inconceivable that LLC, a registered futures commission merchant, lacks the ability to produce trade surveillance records relating to trades it executed and cleared on a regulated U.S. exchange because it has an express legal obligation to maintain such documents. *See* 17 C.F.R. § 1.35 (requiring FCMs to "[k]eep full, complete and systematic records (including all pertinent data and memoranda) of all transactions relating to its business of dealing in commodity interests").[2]

---

[2] Counsel for G.H. Financials conceded during argument that the U.S. entity, LLC, "does, in fact, have the ability to require Limited, its parent company, to provide trade surveillance information that it has with respect to L.L.C.'s own clients, which are, as we understand it, a very small

5

The publicly available records counsel cited at the hearing on January 13 demonstrate that—as Limited states in the financial statements filed with U.K. Companies House—G.H. Financials "functions as an integrated enterprise, with interdependencies in governance, operations, and risk oversight."  Ex. A at 6 (G.H. Financials Ltd. and Subsidiaries Financial Statements for the Year Ended 31 March 2025).  G.H. Financials also advertises its global services on a single website, which lists both Limited and LLC's addresses.  *See* GH Financials, https://ghfinancials.com/ (last visited Jan. 30, 2026).  The website describes G.H. Financials as a collective "team," without specifying which team members belong distinctly to Limited and to LLC.  Ex. D ("About: Our Team," ghfinancials.com/about/team).  Its Israeli owner, Gedon Hertshten, owns both Limited and LLC.  Ex. B at 3 (NFA BASIC Report for G.H. Financials LLC) (listing Hertshten and Limited as owners of LLC).  And Limited and LLC have overlapping directors and management, including the Chief Executive Officer of LLC, Julian William O'Leary, who is also a director and Chief Operating Officer of Limited.  Ex. C (U.K. Companies House report of G.H. Financials Officers); Ex. D ("About: Our Team," ghfinancials.com/about/team).

Consequently, application of the "control" test applied by courts in this Circuit shows that LLC has "control" over the requested records.  *See In re Subpoena to Huawei Tech. Co., Ltd.*, 720 F. Supp. 2d 969, 977 (N.D. Ill. 2010) (cited at Opp'n Mot. Compel. 7, ECF No. 500) (citing

---

fraction of the overall, as to what we're dealing with." Tr. 1/13/26 at 4:1-5.  As stated in the declaration by Limited's compliance officer, however, when "Limited sends trades to [LLC] for execution and clearing," "[Limited] is [LLC's] customer in the United States." Decl. Rebecca White (ECF No. 500-2) ¶ 6.  LLC must therefore be able to obtain trade surveillance information with respect to NYMEX trading, for which Limited relies on LLC for execution and clearing as LLC's customer.

6

7-factor test for "control" of documents); *see also* Tr. 1/13/26 at 8:2-23.[3] The test—which is the same for purposes of "control" under Rule 34 and Rule 45—focuses on the "corporate closeness" between the domestic company and the foreign affiliate. *Hair Relaxer*, 2023 WL 8935006, at *2. Where, as here, a domestic subsidiary and its foreign corporate parent have common ownership, overlapping directors and management, jointly market their services, exchange documents in the ordinary course of business, and were both involved in the transactions at issue in the litigation, the subsidiary has "control" over pertinent documents held by its parent. LLC therefore has "control" over the documents relating to trading on NYMEX held by Limited. *See id.* at *3 (holding that L'Oreal U.S.A. was in control of the pertinent documents possessed by L'Oreal S.A., based on the facts that L'Oreal U.S.A. was a wholly owned subsidiary of L'Oreal S.A., the two entities had directors and officers in common and shared marketing, L'Oreal S.A. secured the patent for the products at issue developed and sold by L'Oreal U.S.A., and L'Oreal U.S.A. produced documents from the possession of L'Oréal S.A."); *Life Spine*, 2020 WL 2219060, at *4 ("Weighing the relevant factors and considering the context of Defendant and L&K's shared work on the product at the heart of this litigation and past exchange of documents, the court finds that Plaintiff has met its burden of showing that Defendant's relationship with L&K is sufficiently close to give it the ability to obtain responsive information currently in L&K's possession."); *In re Subpoena Duces Tecum to Ingeteam, Inc.*, No. 11-MISC-36, 2011 WL 3608407, at *2 (E.D. Wisc. Aug. 16, 2011) (granting motion to compel non-party domestic subsidiary to produce documents held by its foreign parent).

---

[3] That LLC did not "possess" the surveillance data (ECF No. 506) does not mean it lacked "control" over the documents in the relevant sense.

### B. G.H. Financials Limited is Subject to Subpoena in this District

G.H. Financials Limited is subject to subpoena in the Northern District of Illinois because it is doing business here, including by executing and clearing trades in this district through its subsidiary LLC. While regulated in the United Kingdom, Limited is also registered with the National Futures Association as a foreign exempt broker in the United States, which is required because it solicits U.S. customers. *See* Ex. E (NFA BASIC Report for G.H. Financials Limited at 1); 17 C.F.R. § 30.10. Given the thousands upon thousands of trades it routes to this district for execution and clearing, there is arguably general jurisdiction over Limited here. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) ("a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State" (cleaned up)); *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Courts look for continuous and systematic general business contacts, . . . and inquire whether the business was sufficiently substantial and of such a nature as to permit the exercise of personal jurisdiction" (cleaned up)); *see Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 530 F. Supp. 2d 1008, 1016 (N.D. Ill. 2008) (finding general jurisdiction over foreign entity where the foreign entity had maintained "continuous and systematic contacts with the U.S. primarily through its five reinsurance contracts with U.S. entities" along with its "relationship with its [domestic] parent company").

Regardless, there is clearly specific personal jurisdiction over Limited because the proposed subpoena relates directly to trades by Limited's customers on NYMEX, which Limited routed to this district for execution by its subsidiary LLC. *See Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 324 (S.D.N.Y.), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) (holding that foreign banks'

8

maintenance of "multiple correspondent accounts with New York banks . . . used to facilitate international wire transfers on behalf of the [foreign] Banks' customers" counseled in favor of a finding of specific personal jurisdiction in the context of a Rule 45 subpoena); *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, 381 F. Supp. 3d 37 (D.D.C.), *aff'd sub nom. In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019) (same); *Pfaff v. Deutsche Bank AG*, No. 20 MISC. 25 (KPF), 2020 WL 3994824, at *1,*9 (S.D.N.Y. July 15, 2020) (holding that the Court had specific personal jurisdiction over foreign entities Deutsche Bank AG and DZ Bank AG and could order them to produce documents relating to alleged silver and silver derivatives transactions between them because their "trading activity at COMEX in New York provide[d] a sufficient basis for this Court to exercise personal jurisdiction over them").

### C. Service on Limited through LLC or its U.S. Counsel Is Proper

Limited has declined to accept service of a subpoena duces tecum from the Trader Defendants voluntarily (even though it had previously accepted one from Plaintiffs). The Trader Defendants therefore seek leave to serve the attached subpoena on Limited, either by serving a copy on Limited's wholly-owned subsidiary, LLC, which executed and cleared the NYMEX trades at issue, or through its U.S. counsel, Norton Rose Fulbright US LLP.

Rule 45 does not describe how to serve a corporate 'person' with a subpoena. To resolve this problem, courts look to Rule 4. *In re Subpoena to Huawei Tech. Co., Ltd.*, 720 F. Supp. 2d at 971-72. "Service on a corporation is accomplished by following the state law where the district court is located or where service is made; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *In re Application of High Point SARL for*

*an Ord. to Conduct Discovery for Use in a Foreign Legal Proc. Pursuant to 28 U.S.C. 1782*, No. 11 C 1892, 2011 WL 2297657, at *3 (N.D. Ill. June 8, 2011) (citing Fed. R. Civ. P. 4(h)(1)). Illinois allows service on a corporation by "leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State." *Id.* (citing 735 ILCS § 5/2–204). Illinois courts permit service through a domestic subsidiary when the parent sufficiently "controls" the subsidiary such that the latter becomes an involuntary agent of the parent for service of process. *Id.*; *Huawei*, 720 F. Supp. 2d at 973 (listing factors).

Here, LLC is wholly owned by Limited, and LLC's "main purpose" is to provide the Group, including Limited with "access to U.S. Exchanges as well as facilitating the Group's U.S. clients." Ex. A at 4 (G.H. Financials Ltd. and Subsidiaries Financial Statements for the Year Ended 31 March 2025). Moreover, G.H. Financials "functions as an integrated enterprise, with interdependencies in governance, operations, and risk oversight." *Id.* at 6. LLC is listed on G.H. Financials' consolidated financial statements for the year ended March 2025, along with Limited and all other subsidiaries that Limited has "control over." *Id.* at 29 (G.H. Financials Ltd. and Subsidiaries Financial Statements for the Year Ended 31 March 2025). "Control" for the purpose of the consolidated financial statements requires "all three of the following elements [to be] present: power over the investee, exposure to variable returns from the investee and the ability of the investor to use its power to affect those variable returns." *Id.*

The factors described in Section A, *supra*, demonstrating that G.H. Financials functions as a single, global operation, only reinforces the conclusion that Limited sufficiently controls LLC such that LLC should be deemed its agent for service of process. *See King v. Perry & Sylva Mach. Co.*, 766 F. Supp. 638, 639-640 (N.D. Ill. 1991) (finding that, because the foreign parent did business in the U.S. through, and conducted regular board meetings with, its domestic

subsidiary, the facts were sufficient to establish that the domestic subsidiary was the foreign corporation's "involuntary agent for service of process in the U.S.") (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706-07 (1988), which found that the Illinois long-arm statute recognized foreign service on a wholly-owned U.S. subsidiary).

In the alternative, the Trader Defendants respectfully request that the Court allow Limited to be served through its U.S. based counsel at Norton Rose Fulbright U.S. LLP.[4] Alternative service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief," but simply one means of enabling service of process on an international defendant. *Porter v. Scott Sports SA*, No. 23 C 1328, 2023 WL 8190381, at *1 (N.D. Ill. Nov. 27, 2023) (allowing alternative service because "service by letter rogatory would have been unduly expensive and time-consuming"); *see* Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action"). Here, Limited has already produced documents through its U.S. counsel, such that service through counsel is certain to make Limited aware of the subpoena, even if it has not authorized acceptance of the subpoena in this manner. *See 1025 W. Addison St. Apartments Owner, LLC v. Grupo Cinemex, S.A. de C.V.*, No. 20-CV-06811, 2021 WL 2136073, at *8 (N.D. Ill. May 26, 2021) (finding that service on foreign corporation's U.S. counsel was a proper form of alternative service under Federal Rule of Civil Procedure 4(f)(3), given that the foreign corporation had learned of the lawsuit and thus the plaintiff's "method of service was reasonably certain to make" the foreign corporation "apprised of the service made") (internal quotation

---

[4] Undersigned counsel for the Trader Defendants conferred again with counsel for G.H. Financials on January 27, 2026, in anticipation of the instant motion. Counsel for G.H. Financials stated that they were not authorized to accept service of a subpoena addressed to Limited.

marks and citations omitted). Without being able to serve either LLC or Norton Rose, the Trader Defendants would be forced to utilize the more burdensome processes for international service, or perhaps seek letters rogatory to the courts of the United Kingdom, simply to obtain the remaining data from a partial spreadsheet that has already been produced.

## CONCLUSION

For the foregoing reasons, the Court should grant leave to serve a subpoena for the remainder of the spreadsheet on Limited, either by serving it on LLC or through its U.S. counsel, or, to the extent the Court intended its earlier order to be a ruling on the relevance of the requested records, the Court should clarify its ruling to provide that April 20, 2020 surveillance alerts are not relevant.

Dated: January 30, 2026

Respectfully submitted,

/s/ Matthew L. Mazur
Matthew L. Mazur
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: +1 212 698 3899
matthew.mazur@dechert.com

Mike Doluisio
Wilfred T. Beaye, Jr.
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
michael.doluisio@dechert.com
wilfred.beaye@dechert.com