**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

MISH INTERNATIONAL MONETARY INC.,
On behalf of itself and all others similarly situated,

*Plaintiff*,

v.

VEGA CAPITAL LONDON, LTD., *et al.*,

*Defendants*.

Case No. 1:20-cv-04577

Hon. Manish S. Shah

**TRADER DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S**
**MOTION AND CROSS-MOTION FOR ADDITIONAL DEPOSITIONS**

The Trader Defendants respectfully oppose Plaintiff's request for additional depositions

for the purpose of questioning them about (a) alleged trading based on non-public information and

(b) the single entity defense.[1] Plaintiff pressed this Court for early depositions of the Trader

Defendants, including before class certification. The Court allowed up to four of them, warning

that "Plaintiff will not be allowed to take a second deposition of any defendant it elects to depose

now, so plaintiff will have to decide whether taking any of these depositions at this stage is worth

it." Dkt. No. 271. Plaintiff proceeded to take all four permitted depositions before class

certification, and when fact discovery reopened, in September 2025, Plaintiff immediately noticed

the remaining six Trader Defendant depositions so they could be completed before year-end. Dkt.

No. 439, at 1-2.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in
the Trader Defendants' Motion for Leave to Amend Answers.

1

The reason for Plaintiff's haste was simple: it wanted to draw hoped-for adverse inferences from assertions of the Fifth Amendment. Knowing in advance that the Trader Defendants would be taking the Fifth, at each Trader Defendant deposition, Plaintiff used almost the full seven hours to ask hundreds of questions designed to elicit Fifth Amendment assertions. Indeed, Plaintiff has not taken a single non-party deposition in this case, preferring to rely on adverse inferences and its expert, rather than any direct evidence of what occurred in the crude oil markets on April 20, 2020.[2]

***The Single Entity Defense.*** The Trader Defendants' proposed amendments to their Answers do not provide occasion to reopen their depositions. Not surprisingly, many of Plaintiff's questions at the Trader Defendants' depositions were aimed at establishing that the Trader Defendants operated as a trading "team" or "group," including questions about the "Group Trader Agreement" among Vega, FTF (an entity owned by Paul Commins), and the Trader Defendants. *See* Def.'s Mot. at 5, Dkt. No. 556. Likewise, at the two-day deposition of Vega and its principal, Adrian Spires, Plaintiff asked hundreds of additional questions about the GTA. *Id.* ▮▮▮▮

▮▮▮▮▮▮▮▮

*See id.* at 7. The record is therefore replete with evidence concerning the relationships among the Defendants, their trading arrangements, and the reasons why they had those arrangements.[3] There is no reason to reopen depositions to retread ground Plaintiff has already covered.

Nor are the proposed amendments something that counsel debated, "Hamlet like," whether to disclose. Pl.'s Cross-Mot. at 3, Dkt. No. 565. They merely conform to the evidence already in

---

[2] This week, Plaintiff noticed the deposition of ▮▮▮▮▮▮▮▮

[3] Plaintiff's claim that Adrian Spires used the word "group" first and counsel only used the word "group" as a "term of convenience" makes no sense; the operative agreement is called the "Group Trader Agreement." Pl.'s Cross-Mot. at 3-4.

the record—including the evidence Plaintiff affirmatively elicited—on an element of a Section 1 Sherman Act claim that Plaintiff must prove. As explained in the Trader Defendants' motion, the decision to seek amendment arose from the discovery of Seventh Circuit caselaw that loosely described the "single entity" defense as an "immunity." Def.'s Mot. at 8. But that label, which Plaintiff repeats throughout its motion and cross-motion, is misleading. No caselaw holds that single entity is the kind of immunity that constitutes an affirmative defense. True immunity excuses otherwise-established liability. For instance, it applies where the elements of a claim are satisfied but the defendant is shielded as a matter of law or privilege, as with qualified or sovereign immunity. The single entity defense is nothing of the kind—if the Trader Defendants are a single entity, then there can be no Section 1 liability because an essential element of the violation cannot be established. *See Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 n.14 (9th Cir. 2005).

Plaintiff fails to show good cause to reopen depositions because (i) it has always had the burden to prove an unlawful agreement involving more than one entity, and (ii) it is hard to imagine any question Plaintiff has not already asked about the FTF group—and Plaintiff has suggested none. Rule 30(d)(1) limits a deposition to one day of seven hours and requires the court to "allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent." Fed. R. Civ. P. 30(d)(1) (emphasis added). The party seeking to reopen an examination "is expected to show good cause to justify such an order." Fed. R. Civ. P. 30(d), Advisory Committee's Note to 2000 Amendment. Applying this standard, courts in this District reopen a completed deposition only on a showing of genuine need. *See In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1995 WL 613126, at *2 (N.D. Ill. Oct. 17, 1995) (noting that "depositions, once taken,

will not be reopened except for good cause shown," and denying reopening where plaintiffs "do not identify … any documents that may warrant further deposition questioning").

Deposing the Trader Defendants—who live and work in London and Dubai—a second time is as unnecessary as it is burdensome. *See Beverly v. Watson*, No. 14 C 4970, 2016 WL 11943340, at *2–6 (N.D. Ill. June 27, 2016) (finding the need for additional deposition "is greatly outweighed by the burden and expense" where movant "already had the opportunity to thoroughly question" witnesses). Plaintiff already has ample documents evidencing the trading arrangements, testimony from Vega witnesses concerning the trading arrangements, and the Trader Defendants on record taking the Fifth concerning all aspects of their trading, including whether they traded as a group or a team. Plaintiff has also identified evidence that it claims to be "contrary" to the single entity defense, namely that the Trader Defendants traded independently of each other. Mot. 14 n.5.[4] Significantly, Plaintiff does not even bother to identify any questions it would have asked but did not ask the Trader Defendants at their depositions.

Plaintiff's authorities do not support additional depositions here. *Ruderman v. McHenry County*, No. 22-CV-5015, 2024 WL 6935927 (N.D. Ill. Nov. 8, 2024), on which Plaintiff repeatedly relies, involved what the court referred to as an "obscure" Derivative Sovereign Immunity claim, devoid of any dispute that it was an immunity and thus an affirmative defense, that was offered well after fact discovery was closed. *Id.* at *4 (repeatedly describing as the "new affirmative defense"). That is just not our case, on every dimension: not an immunity, not an affirmative defense, and not new, in addition to being offered nearly a month before the close of fact discovery.

---

[4] As noted in Trader Defendants' Motion to Amend Answers, independent trading does not preclude single entity status because a single entity may have traders acting independently, as demonstrated in non-party Vitol's submissions opposing Vega's discovery requests. *See* Trader Def.'s Mot. at 7.

In Plaintiff's other authority from this circuit, good cause was conceded, and the new discovery was voluminous, leaving only scope and length in dispute. *See Guster-Hines v. McDonald's USA*, 20-cv-117, 2024 WL 5457437, at *7-8 (N.D. Ill. July 11, 2024).

Plaintiff's other cited authorities all featured specific reasons why the prior examination was inadequate—a deponent who gave incomplete answers, *see Clark v. Hickory Treatment Ctr.*, 25-cv-00029, 2026 WL 1328527, at *4-5 (N.D. Ind. May 13, 2026), a defense the movant had never had occasion to explore, *see O'Connor v. Cory*, 16-cv-1731, 2018 WL 5016291, at *2 (N.D. Tex. Oct. 16, 2018), or a stipulation among the parties, *see Sears v. Cnty. of Butte*, 15-cv-0589, 2018 WL 2734897, at *2-3 (E.D. Cal. June 7, 2018). No such showing can be made here, where the factual and legal bases for the single entity defense have been covered extensively already.[5] Even Plaintiff's proposal to take three depositions first and then allow the remaining Trader Defendants to avoid depositions if they confirm that their answers would be the same—which would be hard to imagine unless they all take the Fifth—demonstrates that the discovery Plaintiff seeks could be obtained by other, far less burdensome means. *See* Pl.'s Cross-Mot. at 1.

***The CME Disciplinary Notices***. Plaintiff also seeks to take six additional depositions about CME disciplinary notices concerning alleged trading on non-public information on dates other

---

[5] Plaintiff's remaining authorities are in the same boat. Good cause to reopen was found in *Kress v. Price Waterhouse Coopers*, solely because the movant articulated specific, "important issues related to allegations" that had never before been addressed, *see* No. CIV S-08-0965, 2011 WL 5241852, at *3 (E.D. Cal. Nov. 1, 2011); in *In re Heraeus Kulzer GmbH for an Ord. Pursuant to 28 U.S.C. 1782 to Take Discovery Pursuant to the Fed. Rules of Civ. Proc. for Use in Foreign Proc.*, specifically because the new, "smoking gun evidence" was not only discovered soon *after* the deposition, but as a result of testimony *at* the deposition, *see* No. 3:09-CV-530, 2011 WL 6012926, at *1-2 (N.D. Ind. Dec. 1, 2011) (emphases added) (noting also that the request to reopen came eight days after the new evidence was produced); and in *In re Fedex Ground Package Sys., Inc., Emp. Pracs. Litig.*, because it was "impossible for the Plaintiffs" to have explored the issue previously, *see* No. 3:05-MD-527, 2008 WL 11513248, at *1-2 (N.D. Ind. Aug. 21, 2008). As shown, none of that is true here.

than April 20, 2020. But the disciplinary notices issued in February and March are neither new nor relevant. Plaintiff has known about this collateral and immaterial issue since at least March 25, 2026, when it stated in the Joint Status Report that it "may also pursue (depending on Defendants' responses to Plaintiff's Rule 34 requests) additional deposition time with the six Trader Defendants concerning the new matters revealed by the recent NYMEX disciplinary actions." Dkt. 518 at 3. Subsequently, in the Joint Status Report filed on April 29, 2026, Plaintiff described only "subpoenas seeking documents" and "information from non-parties in connection with earlier subpoenas Plaintiff served," without any mention of a need for additional party depositions. Dkt. 548 at 2. In other words, Plaintiff apparently decided that it needed additional depositions only after the Trader Defendants sought to amend their Answers.

Plaintiff concedes that it seeks to reopen the six depositions, not to develop evidence of the conduct alleged to have occurred on April 20, 2020, but to obtain evidence of other bad acts that it would seek to admit under Federal Rule of Evidence 404(b)(2). Mot. 5. While the evidence Plaintiff seeks to develop is both irrelevant and unduly prejudicial, Plaintiff also has failed to demonstrate that the requested discovery is needed. In fact, Plaintiff has already utilized less burdensome methods of obtaining the evidence it seeks, including document requests to the parties, ███████████████████████████████████████████████████████ ███████████████ and 200 separate requests for admission to the Trader Defendants. Mot. 13 n.4. Plaintiff has not shown any legitimate reason why, in addition to this mountain of party and third-party discovery already taken, it must also reopen the Trader Defendant depositions to develop evidence on this issue.

Plaintiff knew when it decided to depose the Trader Defendants early in fact discovery that it might learn something later that it wished it had asked questions about. It decided to pursue the

6

depositions anyway, and the Court made clear the consequences, namely that "Plaintiff will not be allowed to take a second deposition . . . ." Similarly, Plaintiff's repeated reference to the fact that Trader Defendants did not produce all of their communications in this litigation cannot justify additional depositions. Mot. 3, 9, 12, 13. Plaintiff has known since March 2, 2023—more than three years ago—that the Trader Defendants were "invoking their Fifth Amendment privilege not to be witnesses against themselves, including through the act of production," as a basis to withhold documents. Ex. 1 (Trader Def.'s Resp. & Obj. to Pl.'s Second Req. for Produc. No. 3, Mar. 3, 2023) at 9.[6] In these circumstances, it was almost inevitable that some information that was not known to Plaintiff at the time of the Trader Defendants' depositions would later come to light, but this inevitability does not justify a second bite at the apple.

The Court should therefore deny Plaintiff's request for additional depositions of the Trader Defendants.

Dated:  June 8, 2026

Respectfully submitted,

*Matthew L. Mazur*
Matthew L. Mazur
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: +1 212 698 3899
matthew.mazur@dechert.com

---

[6] Plaintiff has also known since 2023 that the Trader Defendants unsuccessfully challenged orders issued by the UK Financial Conduct Authority compelling them to produce documents over their Fifth Amendment objections, which is public. Tom Fish, *Traders Lose Bid To Challenge FCA Subpoenas For US Probe*, LAW360 (Nov. 2, 2022, 8:04 PM), https://www.law360.com/articles/1545957/traders-lose-bid-to-challenge-fca-subpoenas-for-us-probe.

Michael S. Doluisio
Wilfred T. Beaye, Jr.
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
michael.doluisio@dechert.com
wilfred.beaye@dechert.com